**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **GRADUATION SOLUTIONS LLC,** | ) | |
| **Plaintiff** | ) | **Case No.: 3:17-cv-01342 (VLB)** |
| | ) | |
| **v.** | ) | |
| | ) | <u>**Jury Demand**</u> |
| | ) | |
| **ACADIMA, LLC and ALEXANDER** | ) | |
| **LOUKAIDES,** | ) | |
| **Defendants.** | ) | **October 27, 2017** |

<b>AMENDED COMPLAINT</b>

Plaintiff, Graduation Solutions, LLC d/b/a GraduationSource ("Graduation Solutions" and/or "Plaintiff"), by and through its undersigned attorneys, Dorf & Nelson LLP, hereby brings its amended complaint against Acadima, LLC ("Acadima") and Alexander Loukaides ("Loukaides") (collectively "Defendants") and alleges as follows:

<u><b>INTRODUCTORY STATEMENT</b></u>

1.      This is an action for: (1) copyright infringement under 17 U.S.C. § 101, *et. seq.*; (2) trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); (5) violation of Connecticut's common law prohibition against unfair competition; and (6) unjust enrichment.   Plaintiff seeks injunctive relief, compensatory damages, punitive damages, costs, and attorneys' fees.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the Copyright claims and Lanham Act claims as set forth herein pursuant to 28 U.S.C. §§ 1331 and 15 U.S.C. 1125(a), because this action arises in part under the Copyright Act, 17 U.S.C. § 501, *et seq.*, and under the Lanham Act, 15 U.S.C. 1051, *et seq.*.  This Court has jurisdiction over the Connecticut State law and common law claims under the doctrine of supplemental jurisdiction.

3.      Personal jurisdiction over Defendants is vested and venue is proper in the United States District Court for the District of Connecticut under: (1) C.G.S.A. §52-59(b)(a)(1) because they transact business within the state and/or (2) C.G.S.A. §52-59(b)(a)(3) because the Defendants committed tortious acts outside the state causing injury to person or property within the state, and each of the Defendants (A) regularly does or solicits business, or engages in another persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

4.      Defendants have knowingly and purposefully directed their infringing acts to this District, and/or against Plaintiff knowing that Plaintiff would suffer injuries from Defendants' conduct in this District, and that Plaintiff has in fact suffered the injuries as a result of Defendants' wrongful acts in this District.

5.      Upon information and belief, Defendants regularly transact business in this District.

6.      Venue is proper in this district under 28 U.S.C. 1400(a) and 28 U.S.C. § 1391(b), because Plaintiff resides and is located in this district and is transacting business in this district.

## THE PARTIES

7.      Plaintiff Graduation Solutions is a Nevada limited liability company with a principal place of business located at 200 Pemberwick Road, Greenwich, CT, 06831.  Graduation Solutions is a leader in the design, marketing, and sale of premium graduation apparel and accessories.  Graduation Solutions' products are recognized and sold through Graduations Solutions' online store.

8.      To promote its products and to inform prospective clients of where to purchase Graduation Solutions' products, Graduation Solutions created the Graduation Solutions website which it owns and operates.  This website is located at https://Graduationsource.com, ("the GS Website"), and on the GS Website, Plaintiff offers apparel and accessories for graduations.   As set forth below, Graduation Solutions' original works of authorship, including, without limitation, its graphic designs, photographs, and website design have been registered with the United States Copyright Office.

9.      Traffic to the GS Website is in part driven by analytics performed by search engines.

10.     Among the factors that search engines consider are the time that viewers spend on a site and whether customers purchase from a site.

11.     Upon information and belief, defendant Acadima is a Texas Limited Liability Company with a principal place of business located at 14241 Dallas

Parkway, Suite 650, Dallas, TX 75254.  Acadima owns and operates the website that is located at https://Acadima.com, (the "Acadima Website") and offers apparel and accessories for graduations.

12.     Upon information and belief, defendant Acadima owns and operates the website that is located at http:/www.gradshop.com (the "GradShop Website") and offers apparel and accessories for graduations.

13.     According to filings on the Texas Secretary of State's database, Acadima was formed on October 26, 2015.

14.     According to filings on the Texas Secretary of State's database, Loukaides is the "Owner" of Acadima.

15.     Pursuant to the Texas Secretary of State's database, Loukaides is the sole managing member of Acadima.

16.     The Whois.com database identifies Loukaides as the registrant contact, the administrative contact, and the technical contact for the Acadima Website.

17.     Upon information and belief, Loukaides has addresses of 3207 Cole Avenue, Dallas, Texas 75204 and 900 Alpha Drive #410 Richardson, Texas 75081.

18.     Upon information and belief, Loukaides is a dominant and active force of Acadima and Acadima's activities in conjunction with the development and maintenance of the Acadima Website.

19.     Upon information at belief, defendant Acadima owns, and defendant Loukaides is the dominant and active force behind the "Gradshop Website and the following other websites:  www.graduationcapandgown.com (the "Graduation Cap

and Gown Website"); www.graduationapparel.com (the "Graduation Apparel Website"); www.churchgoers.com (the "Churchgoers Website"); and www.churchings.com ("the Churchings Website"). Collectively the Acadima Website, the Gradshop Website, the Graduation Cap and Gown Website, the Graduation Apparel Website, the Churchgoers Website, and the Churchings Website are the "Defendants' Websites."

20.     According to the webpage https://www.acadima.com/valedictorian-graduation-medal, at least some of defendant Acadima's orders are fulfilled by the operators of the Gradshop Website.

21.     According to filings on the Texas Secretary of State's database, "Gradshop" is an "assumed name" of Acadima.

22.     The Whois.com database shows that defendant Loukaides is the administrative contact, registrant, contact, and technical contact of the Gradshop Website.

23.     According to https://www.sslshopper.com/ssl-checker.html#hostname=gradshop.com, defendant Acadima owns and operates the website www.gradshop.com.

24.     The website www.gradshop.com bears a copyright notice of 2017:



.

25.     Upon information and belief, Defendants published or republished their website www.gradshop.com in 2017.

26.     The Whois.com database shows that defendant Loukaides is the administrative contact, registrant, contact, and technical contact of www.graduationapparel.com.

27.     The website www.graduationapparel.com bears a copyright notice of 2017:

Copyright© 2017 Graduationcapandgown.com. All Rights Reserved. 14241 Dallas Pkwy, Suite 650, Dallas, TX 75254

28.     According               to               https://www.sslshopper.com/ssl-checker.html?hostname:www.   graduationapparel.com,     Acadima   owns   and operates the Graduation Apparel Website.

29.     Upon information and belief, Defendants published or republished their website www.graduationapparel.com in 2017.

30.     According to the Whois.com database, Loukaides is the administrative contact, registrant, contact, and technical contact for the Churchgoers Website.

31.     According               to               https://www.sslshopper.com/ssl-checker.html?hostname:www.churchgoers.com, Acadima owns and operates the Churchgoers Website.

32.     According to the Whois.com database, Loukaides is the administrative contact, registrant, contact, and technical contact for the Gradshop Website.

33.     According               to               https://www.sslshopper.com/ssl-checker.html?hostname:www.gradshop.com, Acadima owns and operates the Gradshop Website.

34.     According to the Whois.com database, Loukaides is the administrative contact, registrant, contact, and technical contact for the Graduation Cap and Gown Website.

35.     According            to            https://www.sslshopper.com/ssl-checker.html?hostname:www.graduationcapandgown.com , defendant Acadima LLC owns and operates the Graduation Cap and Gown Website.

36.     According to the Whois.com, Loukaides is the administrative contact, registrant, contact, and technical contact for the Churchings Website.

37.     According            to            https://www.sslshopper.com/ssl-checker.html?hostname:www. churchings.com, Acadima owns and operates the Churchings Website.

38.     It is clear that Defendants are expressly targeting customers across the United States, including in Connecticut.

39.     The Acadima Website provides a toll-free number -- (800) 994-0708 -- for customers to contact defendant Acadima to place orders for merchandise.  The Acadima Website also provides "Domestic Shipping Rates" for orders placed within the United States including, but not limited to, customers from Connecticut. Furthermore, on the "Product Samples" page of the Acadima Website, potential customers can request "Product Samples," a "Free Planning Kit," and a "Free Graduation E-Book."   To Request a "Planning Kit," customers must enter their address.  The site allows customers to "Select a State or Province" through a drop down menu that includes "Connecticut" from which the Defendants can provide Connecticut customers with product samples, planning kits, and information

generally about the merchandise for sale on the Acadima Website.  The Acadima Website also promises "fast shipping" from "2 warehouses worldwide" and, upon information and belief, ships merchandise to customers in Connecticut.

40.     Defendants' other websites also target customers in Connecticut.  For example, the GradShop Website owned by Defendants allows users to "search graduation products from your city."  The website then provides a drop down menu allowing users to select "Connecticut."   The users then can select one of the following cities in Connecticut: Bridgeport, New Haven, Hartford, Stamford and/or Waterbury through GradShop's drop down menu.

41.     Also, like the Acadima Website, the GradShop Website provides a toll free number -- (855) 719-4723 -- for customers to contact defendant Acadima by its "assumed name" of GradShop to place orders for merchandise.   Furthermore, visitors to the GradShop website can request free samples and a free "Planning Kit."   The GradShop Website allows customers to "Select a State or Province" through a drop down menu that includes "Connecticut" and from which the Defendants can provide Connecticut customers with product samples, planning kits, and information generally about the merchandise for sale on the GradShop website.

42.     The GradShop Website also states that Gradshop will "ship to a US-based shipping address and you will always save on shipping costs if you can arrange for a US-based address to receive the shipment."   Upon information and belief, Defendants' Websites also ship merchandise to customers in Connecticut.

43.     Defendants also have "sales representatives" across the United States.    Upon information and belief, these "sales representatives" conduct business in this District.

44.     Defendants also maintain a GradShop Facebook page.  The Facebook page contains comments and complaints from customers located across the United States.   Upon information and belief, individuals in Connecticut access Defendants' Facebook page.

45.     The Chief Executive Officer of Plaintiff Graduation Solutions LLC is Matthew Gordon.  Mr. Gordon lives in Connecticut.  During the relevant time period, Mr. Gordon worked in both Connecticut and New York.

46.     On numerous occasions, Defendant Loukaides contacted Mr. Gordon by electronic mail and by telephone to discuss their mutual business of selling graduation gowns and other school regalia.

47.     For example, on March 2, 2014, Defendant Loukaides contacted Mr. Gordon through a messaging system on the website www.LinkedIn.com.   In his message to Mr. Gordon, Mr. Loukaides advises Mr. Gordon that Defendants "run and distribute graduation products through our ecommerce site Gradshop.com." Then, referring to his "US based operation," he suggests to Mr. Gordon that "it may be worth the two of us jumping on the phone and having a chat and seeing if there are any type of business possibilities there may be between us.  If anything, just a meet and greet.  That is if course if you feel comfortable doing so."  Defendant Loukaides' email to Mr. Gordon is plainly an attempt to see whether their two companies could do business together.   Again, Mr. Gordon lives and works in

Connecticut and his company, Graduation Solutions, does substantial business here.

48.     In another example, on March 10, 2014, Defendant Loukaides sent Mr. Gordon an email regarding Graduation Solutions' manufacturer, OSBO, and notified Mr. Gordon that OSBO had "2 websites in the graduation industry that I know of www.graduationmall.com and www.graduationgownshop.com . . ."  Mr. Loukaides further advised Mr. Gordon that "[t]hese sites only make Gradshop and GraduationSource look bad not only because they offer lower pricing but also claim to be the manufacturer of GraduationSolutions and of other reputable companies which is not the case.  My staff in the US have told me that they get numerous phone calls throughout the year asking to price match against them which is something almost impossible to do as they are drop shipping everything from China and they don't have the overhead or the foundation to create a reputable company in the US."

49.     In the March 10, 2014 email, Mr. Loukaides then suggests to Mr. Gordon that since his company, Graduation Solutions, had "full control over [OSBO]" he "could have their doors closed in one night if you left them.  They are only around 45 people and about 70-80% of their production is GraduationSource. They have built their business on the back of you guys."  Incredibly, Mr. Loukaides then suggests in his March 10, 2014 email to Mr. Gordon that "[i]f we can't find a way of getting [OSBO] to close down these sites it may be the case that we might just have to put up a site similar to theirs so we can compete on pricing."

50.     By his email, Mr. Loukaides is suggesting that they do to a Chinese competitor exactly what Defendants have done to Graduation Solutions, i.e. set up a "site similar to theirs so we can complete on pricing."   This email demonstrates Defendants' intent to copy competitor websites in order to unfairly compete against them.   Given that Mr. Loukaides is directing his communications to Mr. Gordon, who lives and works in Connecticut, it was certainly foreseeable to them that Defendants' tortious acts against competitors would have consequences in Connecticut.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

I.      **The GS Website**

51.     Plaintiff owns and operates the GS Website and has itself and through one or more predecessors in interest owned the domain graduationsource.com since 2005.  The GS Website contains original works of authorship that are protected under the copyright laws of the United States.

52.     Through the GS Website, Plaintiff sells and offers for sale apparel and related goods to customers in interstate commerce throughout the United States.  The "Terms and Conditions" and "Privacy Policy" on the GS Website contain notifications to the public that the copyrights, trade dress, and/or other intellectual properties contained therein are owned, controlled, and/or licensed by Plaintiff.

53.     The GS Website has been registered with the United States Copyright Office and bears registration number TXU 2-026-975 (the "'975

Copyright Registration").  Plaintiff is the owner of all rights, title, and interest to the rights registered in the '975 Copyright Registration.  A true and correct copy of the '975 Copyright Registration is attached hereto as <u>Exhibit A</u>, and incorporated herein by reference.

54.    On June 5, 2017, the United States Copyright Office issued a Supplemental Registration that bears registration number TXu1-374-011 (the "'011 Copyright Registration").  Plaintiff is the owner of rights, title and interest to the rights registered in the '011 Copyright Registration.  A true and correct copy of the '011 Copyright Registration is attached hereto as <u>Exhibit B</u>, and incorporated herein by reference (collectively the '975 Copyright Registration and the '011 Copyright Registration are the "Copyright Registrations.")

55.    Plaintiff has invested significant time and resources in creating and developing content for the GS Website.

56.    Plaintiff has invested significant time and resources in compiling, selecting, coordinating and arranging content for the GS Website.

57.    The GS Website incorporates a distinctive trade dress (collectively the "GS Trade Dress") that has become readily identifiable by the consuming public as originating from Graduation Solutions.

58.    Plaintiff has invested significant time and resources in creating and developing a unique look and feel for the GS Website.

59.    The unique look and feel of the GS Website is due to the combination of the follow elements (the "GS Trade Dress Elements"):

- **Contrasting horizontal color bars and backgrounds, including blurred images that span the width of the webpage;**

- **Regions of texts between elements of horizontal bars and pictures;**

- **The use and arrangement of two sets of three two dimensional icons at different locations; and**

- **A horizontal bar that with a graduation cap and a promotion of the quantity of sales.**

60.    **The GS Trade Dress Elements of the GS Website combine to form a unique impression in the purchasing public and have acquired distinctive and secondary meaning that are recognizable by the purchasing public as identifying the Plaintiff's entity, and the goods and services recited therein and the quality thereof.**

61.    **The GS Trade Dress Elements are individually and collectively non-functional for the GS Trade Dress.**

II.    **The Defendants' Unlawful Activities**

62.    **Upon information and belief, the Defendants' Websites are viewable across the United States without restrictions, and Defendants utilize the Defendants' Websites for the purposes of promoting and engaging in interstate commerce.**

63.    **Upon information and belief, Defendants intentionally copied original works of authorship and the look and feel of the GS Website that are protected by**

copyright law and trade dress law when setting up, publishing and republishing the Acadima Website.

64.     Among the evidence of Defendants' intentional copying is the verbatim lifting of language from the GS Website, including a spelling error (emphasis added):

**Table 1**

| EXCERPT FROM THE GS WEBSITE (https://www.graduationsource.com/) | EXCERPT FROM THE ACADIMA WEBSITE (https://www.acadima.com/) |
|---|---|
| *Educator Resources*<br><br>**The Tools You Need to Hold a Successful Ceremony Are All Here, Right at Your Fingertips. Today you take your first steps toward holding the greatest ceremony your <u>schoolls</u> ever held** | *Helpful Resources*<br><br>**The Tools You Need to Hold a Successful Ceremony Are All Here, Right at Your Fingertips. Today you take your first steps toward holding the greatest ceremony your <u>schoolls</u> ever held.** |

65.     Table 2 provides additional examples of other elements that Defendants copied to their Acadima Website"

**Table 2**





66.    **Table 3 provides an example of elements that Defendants copied to their Graduation Apparel Website.**

**Table 3**

| EXCERPT FROM THE GS WEBSITE | EXCERPT FROM THE GRADUATION APPAREL WEBSITE |
|---|---|



67.     Table 4 provides an example of Defendants' bad faith and unauthorized use of the GS Website for their GradShop Website:

**Table 4**

| EXCERPT FROM THE GS WEBSITE | EXCERPT FROM THE GRADSHOP WEBSITE |
|---|---|

68.     As Table 4 makes clear, Defendants have engaged in a continuing course of conduct by which they intentionally used elements of the Plaintiff's GS

Website for Defendants' improper activities.  Defendants even inserted their logo "GradShop," which uses the same one-word style as "GraduationSource" on their Websites.

69.     Upon information and belief, Defendants also intentionally copied text from the GS Website without authorization and attempted to obfuscate its copying by creating unauthorized derivative works based on that text, by minor rearranging of words or clauses in the descriptions of Defendants' products.

70.     Upon information and belief, without authorization, Defendants copied, transmitted and publicly displayed, works to and through their Acadima Website that were derived from Plaintff's copyrighted works of authorship, including those located on the following webpages of Plaintiff:

- **https://www.graduationsource.com/college/bachelors.html**

- **https://www.graduationsource.com/college/masters.html**

- **https://www.graduationsource.com/caps-and-gowns/college-university.html**

- **https://www.graduationsource.com/college/doctorate.html**

- **https://www.graduationsource.com/college/doctorate.html**; and

- **https://www.graduationsource.com/caps-and-gowns/college-university.html**.

71.     According to filings on the Texas Secretary of State's database, Loukaides is the "Owner" of Acadima and its various "assumed name" websites such as the GradShop website.

72.     Upon information and belief, Defendants have engaged in and are continuing to engage in the above conduct willfully, deliberately, and with an intent

to profit from Plaintiff's intellectual property rights and to misappropriate Plaintiff's goodwill.

73.     Upon information and belief, defendant Loukaides is the alter ego of Acadima and Defendants' Websites.  Acadima and Defendants' Websites all appear to be exclusively controlled by Loukaides and appear to be mere instrumentalities of their sole managing member and owner, Loukaides.

74.     Upon information and belief, Defendant Loukaides, Defendant Acadima and Defendants' Websites under various "assumed names" are all operating as a single economic entity with funds commingled amongst Loukaides, Defendant Acadima and Defendants' Websites.  It appears that Acadima and Defendants' Websites are nothing more than a façade for defendant Loukaides.

75.     As set forth herein, there is an overall element of injustice and unfairness to the acts of defendant Loukaides' operation of Acadima and Defendants' Websites including, but not limited to, direct copying of Plaintiff's copyrighted material and trade dress and unfair competition as set forth above, which is purposefully intended to divert customers from Plaintiff's website, unfairly poach sales from Plaintiff and trade upon Plaintiff's goodwill.

76.     Indeed, it is clear that defendant Loukaides, as sole managing member of defendant Acadima and the related websites, expressly directed Defendant Acadima and Defendants' Websites to target Plaintiff's customers and to improperly trade upon Plaintiff's goodwill.  Among other things, it is clear that Defendants purchased the Google Adwords "graduation source" to divert customers from Plaintiff and trade on its goodwill.  The top website advertised when a Google

search for the words "graduation source" is performed is Defendants' GradShop website, which is then followed by a listing for Plaintiff's GS Website.  Similarly, it is clear that Defendants purchased key words from Bing so that the top website advertised when a search on www.bing.com is performed is Defendants' other website, www.graduationapparel.com, which is then followed by a listing for Plaintiff's GS Website.

77.    Furthermore, the direct copying, infringement and unfair competition alleged with specificity above are indicative of an overall element of injustice and unfairness to the acts of defendant Loukaides' operation of Acadima and Defendants' Websites.  Defendants are engaged in the sale of the same product as Plaintiff, have copied Plaintiff's intellectual property in order to unfairly compete with Plaintiff, and is selling product in the same channels as Plaintiff, *i.e.* on the internet in the United States.  Defendants' conduct in this regard is willful and in bad faith.

78.    Upon information and belief, defendant Loukaides, as the alter ego of Acadima and Defendants' Websites, is directly and vicariously liable for Defendants' copyright infringement upon Plaintiff's copyrighted material, Defendants' trade dress infringement, Defendants' unfair competition with Plaintiff, Defendants' false advertising and Defendants' violations of Connecticut's Unfair Trade Practices Act.

79.    Upon information and belief. Defendant Loukaides, as the sole managing member of Acadima and Defendants' Websites is also liable for

contributory infringement upon Plaintiff's copyrighted material and Plaintiff's trade dress.

80.    These acts have caused and will continue to cause damages and irreparable harm to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

81.    The granting of an injunction is compatible with the equities in this case.  Without the issuance of an injunction, Plaintiff will suffer irreparable harm. Such harm includes, but is not limited to, loss of goodwill and prospective goodwill and customer confusion and future customer confusion, and loss of control of its copyrights.

82.    For the reasons set forth herein in detail, Plaintiff demonstrates a likelihood of success on the merits.

83.    On April 26, 2016, an employee of Graduation Solutions, Kristoff Albanese, who is the Director of eCommerce and who works in Connecticut, contacted Defendant Loukaides by email and advised him that Defendants were copying Plaintiff's websites and using images stolen from Plaintiff's websites.  Mr. Albanese specifically states "[s]ending you this message directly because your development team is actually using 'GraduationSource' branded images… As an owner I think you need to come down on them pretty hard . . ."

84.    Several days later, on May 4, 2016, Defendant Loukaides writes back to Mr. Albanese in Connecticut and asks him to "call me."  The next day Mr. Albanese writes to Defendant Loukaides and says "Hi Alex, Do you want to set up a specific day & time to chat on the phone?"  Mr. Albanese further notes that since he first

contacted Defendant Loukaides on April 26, 2016, "[i]t appears that [Loukaides'] team removed the copyrighted material."   Of course, removing the copyrighted material after Plaintiff notified Defendants that they were aware of the violations is a tacit admission by Defendants that they were in fact infringing upon Plaintiff's copyrighted material and engaging in acts of unfair competition.  It was foreseeable by Defendants that their wrongful acts would have an effect upon Plaintiff and its CEO, Matthew Gordon, in Connecticut.

85.    After these email exchanges, Defendant Loukaides continued to communicate with Plaintiff's employees in Connecticut regarding their respective websites.  For example on January 18, 2017, Defendant Loukaides wrote to Mr. Albanese at Graduation Solutions in response to another email from Mr. Albanese regarding Defendants wrongful use of Plaintiff's copyrighted material and stated "Not sure I see the similarities but I am pleased that you had the opportunity to visit our sites and admire our work."

86.    In a further communication with Mr. Albanese of Graduation Solutions in Connecticut on January 22, 2017, Defendant Loukaides brushed off Plaintiff's complaints about copyright violations by saying "[t]o be honest I don't really watch over the it side that much.  My main business is actually manufacturing and I'm in china most of the year."

87.    Then, as if it was not bad enough that Defendants were already copying Plaintiff's copyrighted works, in his email dated January 22, 2017, Defendant Loukaides tries to poach Mr. Albanese from Graduation Solutions. Defendant Loukaides wrote "All jokes aside, I could use someone with your talents

if you were ever interested."  Now, Defendants are attempting to recruit Plaintiff's employee from Connecticut.

88.     Thereafter, Defendant Loukaides continued his efforts to recruit Mr. Albanese, Plaintiff's employee in Connecticut.   On January 25, 2017, Defendant Loukaides wrote Mr. Albanese and asked "[d]o you do any consulting?" to which Mr. Albanese responded "[y]es, I do a lot of consulting."  Defendant Loukaides then asked "[w]hat is the best way of going about using you to spend some time with my staff?"  Mr. Albanese responds that "[u]fortunately there's a conflict of interest.  I don't think it's something that could work out."  Months later, Defendant Loudaides still does not give up and, on March 17, 2017, he tells Mr. Albanese "I think you could help with aspects that aren't a direct conflict in graduation."  Finally, Mr. Albanese tells him "[t]o be frank, I have zero interest in consulting and/or helping you with any of your ventures . . . Your ventures specifically will always have a sour taste in my mouth due to the fact that you have directly copied and modeled your graduation ventures off GraduationSource."

## FIRST CLAIM FOR RELIEF
## <u>COPYRIGHT INFRINGEMENT</u>

89.     Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth in full.

90.     Plaintiff owns and operates the GS Website and has itself and through its predecessor in interest owned the domain graduationsource.com since 2005.

91.     Plaintiff is the owner the copyright rights that are the subject of the Copyright Registrations.

92.     The Copyright Registrations cover text, photographs, artwork; and the compilation, selection, coordination and arrangement of text art, and photographs in the website.

93.     The Copyright Registrations are evidence of Plaintiff's ownership rights.

94.     The Copyright Registrations are evidence of the validity of Plaintiff's copyright rights.

95.     The works that are the subject of the Copyright Registrations are original to the authors and possess creativity.

96.     Plaintiff has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and secured the exclusive rights and privileges in and to the copyrights of the above-referenced works.

97.     Plaintiff has been and remains the sole proprietor of all rights, title, and interest in and to the copyrights in their respective works as referenced above.

98.     Defendants have directly and/or contributory infringed upon Plaintiff's Copyright rights that are the subject of the Copyright Registrations.

99.     Without authorization, Defendants have reproduced copyrighted works that are owned by Plaintiff.

100.    Without authorization, Defendants have prepared derivative works based on copyrighted works that are owned by Plaintiff.

101.    Without authorization, Defendants have transmitted and publicly displayed works based on copyrighted works that are owned by Plaintiff.

102.    Through Defendants' unauthorized actions, they have created, displayed, and transmitted the Acadima Website and the Graduation Apparel Website, which contain elements that are the same as or substantially similar to original works of authority within of the GS Website that are the subject of the Copyright Registration.

103.    Through Defendants' unauthorized actions, they have created and displayed Acadima's Website, which infringes upon Plaintiff's rights that are the subject of the Copyright Registrations.

104.    Defendants' conduct violates the exclusive rights belonging to Plaintiff as owners of the copyright rights that are the subject of the Copyright Registration under 17 U.S.C. § 106.

105.    Defendants unauthorized copying, creating derivative works, transmitting and publicly displaying works is an infringement of Plaintiff's copyright rights.

106.    On information and belief, Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with fraud, and malice, and in conscious disregard of the rights of Plaintiff.

107.    Defendants have caused Plaintiff to lose customers and sales.

108.    Upon information and belief, Defendants have negatively affected Plaintiff ranking in commercial search engine analytics.

109.    Pursuant to 17 U.S.C. §§ 504(b), Plaintiffs seek an award of its actual damages and any profits of Defendants that are attributable to the infringement damages.

110.    Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiffs in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving the Plaintiffs with no adequate remedy at law.

111.    Pursuant to 17 U.S.C. § 502, Plaintiff seeks an injunction to preclude Defendants from infringing Plaintiff's copyright rights and to compel Defendants to take down the Acadima Website, the Graduation Apparel Website and all other infringing material.

## SECOND CLAIM FOR RELIEF
## TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION UNDER LANHAM ACT

112.    Paragraphs 1 through 111 are realleged and incorporated by reference as if set forth in full.

113.    In addition to creating and acquiring new and original content that appears on the GS Website, Plaintiff has developed the GS Trade Dress, which provides a unique look and feel for the GS Website.

114.    The GS Trade Dress Elements and the GS Trade Dress are nonfunctional. The GS Trade Dress Elements are widely recognized by consumers and have become a valuable indicator of the source and origin of the information provided, which in turn, drives Plaintiff's sales, and positions Plaintiff as a leader in the field.  Combined, they constitute Plaintiff's commercial trade dress.

115.    The GS Trade Dress is unique, recognizable, and has acquired secondary meaning.

116.    Upon information and belief, the Defendants intentionally copied the GS Trade Dress and the GS Trade Dress Elements.

117.    The Acadima Website is confusingly similar to the GS Trade Dress, and is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or as to the origin, sponsorship, or approval of the Defendants' services, information, or commercial activities with those of Plaintiff.

118.    On information and belief, Plaintiff alleges that actual and potential customers of Plaintiff have relied upon this likely confusion, mistake and/or deception and such reliance has economically impacted Plaintiff's business.

119.    On information and belief, Plaintiff alleges that at all times herein mentioned, Defendants exercised ownership and control over the Defendants' Website, and/or intentionally induced and encouraged the infringement of Plaintiff's trade dress and related rights under 15 U.S.C. §1125(a).

120.    Defendants' acts infringe the GS Trade Dress are in violation of 15 U.S.C. § 1125(a).

121.    Because the Acadima Website infringes on the GS Trade Dress, Defendants have caused damage to Plaintiff.  The deception resulting from this infringement is material, in that it is likely to influence the purchasing decisions of potential customers.  Plaintiff has been injured as a result of the Defendants' acts, either by direct diversion of customers from Plaintiff to Defendants, or by the lessoning of the good will that Plaintiff has built and enjoyed in the marketplace.

122.    Defendants have caused Plaintiff to lose customers and sales.

123.    On information and belief, Defendants have negatively affected Plaintiff ranking in commercial search engine analytics.

124.    Plaintiff has been adversely affected by Defendants' acts.  As a direct and proximate result of Defendants' violation of the GS Trade Dress and Defendants' engagement in unfair trade practices, Plaintiff has suffered and continues to suffer great and irreparable injury to its profits, sales and business for which Plaintiff has no adequate remedy at law.

125.    Pursuant to 15 U.S.C. § 1116, Plaintiff requests injunctive relief restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in further unlawful acts and from reaping any additional commercial advantage from their trade dress infringement.

126.    As a result of Defendants' violations, Plaintiff is entitled to recover Defendants' gains, profits, advantages and the damages that have been sustained by Plaintiff, as well as the costs of this action, and attorneys' fees under 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
## FALSE ADVERTISING UNDER LANHAM ACT

127.    Paragraphs 1 through 126 are realleged and incorporated by reference as if set forth in full.

128.    The Acadima Website recites: "WE OUTFIT OVER 500,000 GRADUATES A YEAR."

129.    The number 500,000 is identical to the number recited on the GS Website.

130.   Upon information and belief, the assertion by Defendant of outfitting over 500,000 Graduates a year is either literally false or is misleading or deceptive to the public, and it is likely to deceive a substantial segment of potential customers.

131.   Defendants' statement is material and is likely to influence a consumer's purchasing decision.

132.   Defendants willfully and with knowledge of its misleading nature made this statement in interstate commerce and sell their products in interstate commerce.

133.   Plaintiff, a competitor of Defendant is injured by and is likely to continue to be injured by Defendants' misstatement, because the misstatement causes the false impression in potential customers as to Defendants' experience and penetration in the marketplace.

134.   Defendants' acts are in violation of 15 U.S.C. § 1125(a).

135.   Due to Defendants' actions constituting trade dress infringement, Plaintiff has suffered and continues to suffer great and irreparable injury for which Plaintiff has no adequate remedy at law, and pursuant to 15 U.S.C. § 1116, Plaintiff requests injunctive relief.

136.   As a result of Defendants' violations, Plaintiff is entitled to recover Defendants' profits, the damages that have been sustained by Plaintiff, the costs of this action, and attorneys' fees under 15 U.S.C. § 1117.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**

137.    Paragraphs 1 through 136 are realleged and incorporated by reference as if set forth in full.

138.    Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of C.G.S.A. § 42-110a *et seq.*

139.    Each of Defendants' violations of Plaintiff's rights under the Lanham Act constitutes violations of Plaintiff's rights under the Connecticut Unfair Trade Practices Act.

140.    Pursuant to C.G.S.A. § 42-110g(a), Plaintiff seeks actual damages in an amount to be determined at trial.

141.    Defendants knowingly and intentionally violation Plaintiff's rights under the Lanham Act.

142.    Pursuant to C.G.S.A. § 42-110g(a), Plaintiff seeks punitive damages in an amount to be determined at trial.

143.    Defendants' acts have caused and continue to cause irreparable harm to Plaintiff.  Plaintiff seeks equitable relief in order to address these harms.

144.    Pursuant to C.G.S.A. § 42-110g(d), Plaintiff seeks costs and reasonable attorneys' fees and injunctive relief.


**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF CONNECTICUT COMMON LAW OF UNFAIR COMPETITION**

145.    Paragraphs 1 through 144 are realleged and incorporated by reference as if set forth in full.

146.   Each of Defendants' violations of Plaintiff's rights under the Lanham Act constitutes a violation of Plaintiff's rights under Connecticut common law of unfair competiton.

147.   In violating Plaintiff's right under the Lanham Act, Defendants diverted sales that otherwise would have gone to Plaintiff, negatively affected Plaintiff's search engine optimization, and negatively affected Plaintiff's reputation and goodwill.

148.   Defendants knowingly and intentionally violated Plaintiff's rights.

149.   For these violations, Plaintiff seeks actual damages in an amount to be determined at trial, as well as costs, attorneys' fees, and punitive damages in an amount that the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
## <u>UNJUST ENRICHMENT</u>

150.   Paragraphs 1 through 149 are realleged and incorporated by reference as if set forth in full.

151.   Defendants' creation and operation of the Acadima and other websites in a manner that looks and feels the same as Plaintiff's website benefitted Defendants by allowing them to attract Plaintiff's customers, to launch Defendants' Website without investing in its creation, and to improve their search engine optimization.

152.   Defendants unjustly did not pay Plaintiff for these benefits.

153.   Defendants' failure to pay Plaintiff for these benefits was to Plaintiff's detriment.

154.    Plaintiff seeks recovery in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief against Defendants and respectfully requests this Honorable Court:

1.      Find that the Defendants have engaged in copyright infringement in violation of 17 U.S.C. § 501 *et seq.*;

2.      Find that the Defendants have engaged in trade dress infringement and unfair competition in violation of 15 U.S.C. § 1125(a);

3.      Find that the Defendants have committed false advertising;

4.      Find that the Defendants violated Plaintiff's rights under CUTPA.

5.      Find that the Defendants committed unfair competition under Connecticut common law.

6.      Find that the Defendants were unjustly enriched.

7.      Find that the Defendants have willfully infringed and violated Plaintiff's rights with full knowledge of Plaintiff's use of and rights;

8.      Enter judgment for Plaintiff on all Counts of the Complaint;

9.      Issue injunctive relief against Defendants, and order that Defendants, their agents, representative, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with they, be enjoined and restrained from copying, posting, or making any other infringing use or distribution of any of Plaintiff's protected materials and they must take down all webpages that contain or were derived from any of

Plaintiff's copyrighted work or information, text, graphics, photographs, selection, arrangement or compilation that can be traced back to the GS Website; and

10.    Order Defendants to pay Plaintiff's general, special, actual and punitive damages as follows:

      A.    Actual damages or Defendants' profits pursuant to 17 U.S.C.§504.

      B.    Actual damages, costs and attorneys' fees pursuant to 15 U.S.C. §1117.

      C.    Actual damages, costs, attorneys' fees and punitive damages pursuant to C.G.S.A. 42-110(g)(a) and for violations of Connecticut common law of unfair competition.

      D.    The amount the Defendants have been unjustly enriched.

11.    Order Defendants to pay Plaintiff's costs and attorneys' fees.

12.    Order such other and additional relief as is just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial.

**DATED:** **Bridgeport, CT**
    **October 27, 2017**

       **Respectfully Submitted,**

       **/s/ Monte E. Frank**
       **Monte E. Frank (ct13666)**
       **Nathaniel J. Gentile (ct28860)**
       **Pullman & Comley LLC**
       **850 Main Street, P.O. Box 7006**
       **Bridgeport, CT 06601-7006**
       **T: (203)330-2240**
       **F: (203) 576-8888**
       **mfrank@pullcom.com**
       **ngentile@pullcom.com**

       **OF COUNSEL:**
       **Jonathan B. Nelson (*pro hac vice* forthcoming)**
       **Scott Locke, Esq. (*pro hac vice* forthcoming)**
       **Laura-Michelle Horgan (*pro hac vice* forthcoming)**
       **Dorf & Nelson, LLP**
       **555 Theodore Fremd Avenue**
       **Rye, NY 10580**
       **T: (914) 381-7600**
       **F: (914) 381-4608**
       **jnelson@dorflaw.com**
       **slocke@dorflaw.com**
       **lhorgan@dorflaw.com**