**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| Graduation Solutions LLC,  )  <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> Acadima, LLC and Alexander ) <br> Loukaides, ) <br> ) <br> Defendants. ) <br>_____) | No. 17 Civ. 01342 (VLB) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Acadima, LLC ("Acadima" or the "Company") and Defendant Alexander Loukaides ("Mr. Loukaides") submit this memorandum of law in support of their motion to dismiss for lack of personal jurisdiction.  Plaintiff's untimely Amended Complaint alleges that Acadima has a principal place of business in Dallas, Texas.  ¶11.[1]  Plaintiff further alleges that the sole owner of the Company, Mr. Loukaides, has addresses in Dallas and is "a dominant and active force of Acadima and Acadima's activities in conjunction with the development and maintenance of the Acadima Website."  ¶¶18-19.  The Amended Complaint also alleges that Mr. Loukaides has stated that "My main business is actually manufacturing and I'm in china [sic] most of the year." ¶86.

Accepting these allegations as true, the Court lacks personal jurisdiction – by way of either specific or general jurisdiction – over the Company and Mr. Loukaides.  The Court lacks specific jurisdiction because Plaintiff has failed to allege any special Connecticut-related design, of advertising in Connecticut or marketing aimed at Connecticut in particular.  The Court lacks general jurisdiction because, even accepting Plaintiff's allegation as true, defendants are "at home" in Dallas – *i.e.*, the Northern District of Texas – not Connecticut.

Defendants now move to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, move to strike the Amended Complaint as untimely and in violation of the Court's Order on Pretrial Deadlines (Dkt. #3).

---

[1] ¶__ refers to the paragraphs of the Amended Complaint filed on October 27, 2017 (Dkt. #19). As explained below, the Amended Complaint primarily adds paragraphs 45-50 and paragraphs 83-88 but otherwise is similar to the original complaint in allegations.

1

**I.     PROCEDURAL HISTORY**

Plaintiff Graduation Solutions filed its Complaint on August 9, 2017 (Dkt. #1).  On the same day, the Court issued its Order on on Pretrial Deadlines:

> Amended Pleadings due by 10/8/2017.
> Motions to Dismiss due on 11/09/2017.
> Discovery due by 2/8/2018.
> Dispositive Motions due by 3/10/2018.

(Dkt. #3).

On September 30, 2017, the Company and Loukaides moved to dismiss the complaint for lack of personal jurisdiction (Dkt. #14-15).  Plaintiff did not file an amended complaint by October 8, 2017, the deadline for filing amended pleadings (Dkt. #3).  Plaintiff's response to the motion to dismiss, as specifically stated on the docket, was due three weeks after the filing of the motion:  October 21, 2017 (Dkt. #14-15).  Plaintiff, however, did not respond by October 21, 2017.

On October 23, 2017, counsel for Plaintiff, Nathaniel Gentile contacted the undersigned counsel by email and stated:  "I am assisting Laura-Michelle Horgan with the Acadima matter. We need a few more days to finalize our response to your motion to dismiss. Will you consent to an extension to and including October 27?"  Counsel for Defendant gave their consent to the extension.

The next day, Plaintiff Graduation Solutions filed its motion for an extension to respond to Defendants' motion to dismiss until October 27, 2017.  The Court granted the uncontested motion for an extension to respond (Dkt. #19).

On October 27, 2017, Graduation Solutions did not file a memorandum of law in opposition to Defendant's motion to dismiss.  Instead, Plaintiff filed an Amended Complaint

(Dkt. #19). Plaintiff filed this Amended Complaint even though the Court had made clear that all amended pleadings were due by October 8, 2017.

## II. BURDEN OF PROOF ON A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff bears the burden of pleading factual allegations demonstrating that the court has personal jurisdiction over each defendant individually. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Plaintiff must plead legally sufficient allegations of personal jurisdiction in the Complaint. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). While a court should assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, it should "not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

## III. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff has failed to meet its burden to allege sufficient factual allegations establishing that the Court has personal jurisdiction over either Defendant. Personal jurisdiction involves the scope of a court's constitutional authority over an out-of-state defendant under the Due Process Clauses of the Constitution's Fifth and Fourteenth Amendments.[2] There are two types of personal jurisdiction: general and specific. *See infra* Part III.A-B.

---

[2] The Court must also have statutory authority. The relevant statute here is Conn. Gen. Stat. § 52-59b (entitled "Jurisdiction of courts over nonresident individuals, foreign partnerships and foreign voluntary associations."). Since "in enacting § 52-59b, the legislature used New York Civil Practice Law § 302 as a model," Connecticut courts "find pertinent the judicial

Plaintiff alleges that it owns a website (https://graduationsource.com) that offers apparel and accessories for graduations. ¶8. Plaintiff asserts "upon information and belief" that Acadima, an LLC based in Dallas, Texas, owns www.gradshop.com, ¶11. "Upon information and belief, defendant Loukaides, as the alter ego of Acadima and Defendants' Websites, is directly and vicariously liable for" the claims asserted against the Company. ¶73.[3] Plaintiff further alleges – without even a single factual allegation – that: "Upon information and belief, Defendant Loukaides, Defendant Acadima and Defendants' Websites under various 'assumed names' are all operating as a single economic entity with funds commingled amongst Loukaides, Defendant Acadima and Defendants' Websites." ¶74. Again, without any stated reasons or facts, Plaintiff baldly alleges: "It appears that Acadima and Defendants' Websites are nothing more than a façade for defendant Loukaides." *Id.*

The crux of Plaintiff's claims are that Acadima has copied some text from its website as well as trade dress (*i.e.*, the "look and feel" of Plaintiff's website) and that the corporate veil should be pierced to reach Louikaides on an alter ego basis.

Plaintiff has asserted in both its original complaint and Amended Complaint the follow allegations for personal jurisdiction:

> 3. Personal jurisdiction over Defendants is vested and venue is proper in the United States District Court for the District of Connecticut under: (1) C.G.S.A. §52- 59(b)(a)(1) because they transact business within the state and/or (2) C.G.S.A. §52- 59(b)(a)(3) because the Defendants committed tortious acts outside the state causing injury to person or property within the state, and each of the Defendants (A) regularly do or solicit business, or engage in another persistent course of conduct, or derive substantial revenue from goods used or consumed or services

---

interpretation given to that New York statute." *Zartolas v. Nisenfeld*, 184 Conn. 471, 440 A.2d 179, 180-81 (1981).

[3] There are no factual allegations supporting this allegation, which is made solely on "information and belief."

>rendered, in the state, or (B) expect or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.
>
>4. Defendants have knowingly and purposefully directed their infringing acts to this District, and/or against Plaintiff knowing that Plaintiff would suffer injuries from Defendants' conduct in this District, and that Plaintiff has in fact suffered the injuries as a result of Defendants' wrongful acts in this District.
>
>5. Upon information and belief, Defendants regularly transact business in this District.

¶3-5.  Paragraph 3 is a conclusory allegation regarding the Court's statutory authority under Connecticut law.  Paragraphs 4 and 5 are conclusory allegations respectively regarding specific and general jurisdiction.

Plaintiff also alleged in both its original and Amended Complaint that:  "It is clear that Defendants are expressly targeting customers *across the United States*, including in Connecticut."  ¶38 (emphasis added).  "The Acadima Website provides a toll-free number -- (800) 994-0708 -- for customers to contact defendant Acadima to place orders for merchandise. The Acadima Website also provides "Domestic Shipping Rates" for orders placed *within the United States* including, but not limited to, customers from Connecticut."  ¶39 (emphasis added). In addition, customers can enter their address into the website for free product samples and they may select Connecticut as a State of residence (along with the other 49 States, of course).  *Id.* Defendants' alleged other websites pffer "a drop down menu allowing users to select "Connecticut."  ¶40; *see also* ¶41.  "Upon information and belief, Defendants' Websites also ship merchandise to customers in Connecticut."  ¶42.

"Defendants also have 'sales representatives' across the United States. Upon information and belief, these 'sales representatives' conduct business in this District."  ¶43.  Moreover,

5

"Upon information and belief, individuals in Connecticut access Defendants' Facebook page." ¶44.

Finally, the majority of the new allegations in the Amended Complaint are found in paragraphs 45-50 and paragraphs 83-88. Paragraphs 45-50 allege alleges that Plaintiff's CEO – not Defendants' CEO or Mr. Loukaides – lives in Connecticut and that *three* years ago Mr. Loukaides emailed him as well as talked with him on the phone about their businesses. ¶¶46-50. Paragraphs 83-88 allege that an employee of Plaintiff unilaterally contacted Mr. Loukaides who in turn wanted to talk to him about a potential job. ¶¶83-88.

### A. The Court Lacks Specific Jurisdiction

Courts may exercise specific or "case-linked" jurisdiction over an out-of-state defendant only if the claims at issue "arise out of or relate to" the "defendant's suit-related conduct," and only when such conduct creates "a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 & n.6 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion).

A court has specific jurisdiction only when "the defendant has 'purposefully directed' his activities at residents of the forum" state, and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In other words, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden*, 134 S. Ct. at 1121. For example, Oklahoma courts lacked personal jurisdiction over a lawsuit against a New York auto distributor after the plaintiffs, New York residents, bought the subject vehicle in New York, and were injured in

6

Oklahoma during a cross-country trip.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-98 (1980).

The Supreme Court has refused to accept "the proposition that state lines are irrelevant for jurisdictional purposes." *Id.* at 293.  Isolated sales in the forum state are not sufficient to confer personal jurisdiction – such sales must be accompanied by "'something more' than simply placing 'a product in the stream of commerce,'" even if a defendant is aware that "'the stream may or will sweep the product in to the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888-89 (2011) (quoting *Asahi Metal Indus. Co. v. Sup. Court of Cal.*, 480 U.S. 102, 111, 112 (1987). "Something more" includes, *inter alia*, "special state-related design, advertising, advice, marketing, or anything else," and evidence of "something more" may include evidence that a defendant "'purposefully avail[ed] itself of the privilege of conducting activities'" within the forum state. *Id.* at 889 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The "unilateral activity of another party or a third person is not an appropriate consideration" in the determination of whether a defendant has minimum contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). The requisite minimum contacts must be "contacts that the 'defendant himself' creates with the forum State," and these contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475) (emphasis removed).

As Justice Breyer held in his controlling concurrence, there must be "special state-related design, advertising, advice, marketing, or anything else," which would support specific

7

jurisdiction. *Nicastro*, 564 U.S. at 889 (Breyer, J., concurring).[4] "Combined with the high court's emphasis on state sovereignty as setting the bounds of personal jurisdiction and its refusal to accept the proposition that state lines are irrelevant for jurisdictional purposes, the consistent direction of the specific jurisdiction doctrine is that a defendant's suit-related conduct must especially focus on or target the forum state." David Holman, *Specific Personal Jurisdiction: The Unanswered Question*, Law360 (July 14, 2017) (quotation marks and citation omitted).[5]

Nothing in Plaintiff's complaint asserts that the Company, much less Mr. Loukaides, engaged in "special state-related design, advertising, advice, marketing, or anything else." *Nicastro*, 564 U.S. at 889 (Breyer, J., concurring). The sole allegation in paragraph four of the Complaint is an insufficient legal conclusion: "Defendants have knowingly and purposefully directed their infringing acts to this District, and/or against Plaintiff knowing that Plaintiff would suffer injuries from Defendants' conduct in this District, and that Plaintiff has in fact suffered the injuries as a result of Defendants' wrongful acts in this District." ¶4.

---

[4] Justice Breyer's concurrence in *Nicastro*, a case in which no majority opinion was issued, is controlling. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .") (citation omitted). In *Nicastro*, six justices agreed that there was no personal jurisdiction over a British manufacturer that directed marketing and sales efforts at the United States through a U.S. distributor, but whose only direct contact with the forum state, New Jersey, was the fact that one of its machines was sold into New Jersey and injured a resident of that state. *Nicastro*, 564 U.S. at 887-88. In his concurrence, Justice Breyer concluded that without a showing that the defendant had engaged in a "regular course of sales" in the forum state, or a showing of "something more," such as "special state-related design, advertising, advice, marketing or anything else" that would show a "specific effort" by the defendant to sell in the forum, the exertion of personal jurisdiction over the manufacturer would violate due process. *Id.* at 889 (Breyer, J., concurring and joined by Justice Alito).

[5] Available at https://www.law360.com/articles/944094/specific-personal-jurisdiction-the-unanswered-questions

Plaintiff's new allegations merely allege that three years ago Plaintiff's CEO and Mr. Loukaides briefly discussed their businesses and, more recently, Plaintiff's employee unilaterally contacted Mr. Louikades, who in turn offered that person a potential job. This is a far cry from alleging that "the defendant's suit-related conduct [created] a substantial connection with the forum state." *Walden*, 134 S. Ct. at 1121. Moreover, the Supreme Court's "precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Nicastro*, 564 U.S. at 889 (Kennedy, J.) (plurality opinion). Plaintiff has failed to allege a single action that supports any of their *legal* claims that was directed at Connecticut. Emails and brief phone calls about business from three years ago do not support the copyright and trademark claims, and they are not sufficient for specific jurisdiction.

Because specific jurisdiction only exists only where a defendant has purposefully directed his activities at residents of the forum state, and the litigation results from alleged legal injuries that arise out of or relate to those activities, the Court lacks specific jurisdiction.

### B. The Court Lacks General Jurisdiction

When a court has general or "all-purpose" jurisdiction over an out-of-state defendant, the Constitution allows the court to "hear any and all claims against" that defendant. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal quotation marks and brackets omitted). For general jurisdiction to apply, the defendant's affiliations with the forum state must be "so constant and pervasive as to render it essentially at home." *Id.* Thus, a corporate defendant will be subject to general personal jurisdiction only in its state of incorporation and/or principal place of business. *Id.*

9

For example, *Bristol Myers Squibb Co.* arose out of a prescription drug, Plavix, used to inhibit blood clots and help prevent heart attacks. A large number of plaintiffs from other states joined with 84 California residents to file suit in California state court against Bristol Myers—the manufacture of Plavix—and McKesson Corporation, one of many distributors for the drug. They all alleged personal injuries, principally internal bleeding, from Plavix. California residents bought nearly $1 billion of Plavix to during the relevant time period. But even a billion dollars in sales was insufficient for a California court to have general jurisdiction over the defendants.[6]  *See* 1 Cal.5th 783 (2016).

Accepting the allegations as true, the Company is "at home" in Dallas – *i.e.*, the Northern District of Texas – not Connecticut. Mr. Loukaides is at home in Dallas (or perhaps China according to the allegations). Put simply, the state of Connecticut does not have general jurisdiction over either of them.

The Supreme Court has repeatedly emphasized that the primary concern in assessing personal jurisdiction is the burden on the defendant. Plaintiff seeks to sue two defendants that it alleges are from Dallas. For this reason alone, Plaintiff's complaint in Connecticut should be dismissed.

## IV. THE AMENDED COMPLAINT IS UNTIMELY

In the alternative, the Court should find that Plaintiff's Amended Complaint is untimely. On August 9, 2017, this Court issued its Order on Pretrial Deadlines:

> Amended Pleadings due by 10/8/2017.
> Motions to Dismiss due on 11/09/2017.
> Discovery due by 2/8/2018.

---

[6] The U.S. Supreme Court subsequently held that these allegations, even when coupled with a nationwide marketing campaign that caused harm both in California and elsewhere, were insufficient for specific jurisdiction as well. See *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, *San Francisco Cty.*, 137 S. Ct. 1773 (2017).

>Dispositive Motions due by 3/10/2018.

(Dkt. #3).

Plaintiff did not file an amended complaint by October 8, 2017, the deadline for filing amended pleadings (Dkt. #3).  Instead, on October 23, 2017, counsel for Plaintiff, Nathaniel Gentile contacted the undersigned counsel by email and stated:  "I am assisting Laura-Michelle Horgan with the Acadima matter. We need a few more days to finalize our response to your motion to dismiss. Will you consent to an extension to and including October 27?"

Although Defense counsel gave consent, nothing in Plaintiff's counsel's email indicated that Plaintiff was seeking to amend the complaint.  Indeed, given the deadlines for filing an amended pleading were over two weeks earlier, it would have been unreasonable for Defense counsel to assume that the request for more time to respond was a request to amend the complaint, rather than merely file an opposition brief that was already untimely.  Given the Court's clear order (Dkt. #3), Plaintiff's Amended Complaint is untimely and should be striken.

## III.   CONCLUSION

The Court should dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In the alternative, the Court should strike the Amended Complaint as untimely and find that it lacks jurisdiction over the original complaint.

Date:  November 15, 2017

/s/ *Kathryn R. Sylvester*
Kathryn R. Sylvester
L.O. of Kathryn R. Sylvester, L.L.C.
P.O. Box 5076
Woodbridge, CT 06525
Counsel for Defendants

Brian Lehman<br>
Lehman LG LLC<br>
244 5th Ave., Suite B258<br>
New York, NY 10001<br>
Counsel for Defendants<br>
Admission as Visiting Attorney Pending

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2017, a copy of the foregoing motion and memorandum of law was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Kathryn R. Sylvester<br>Kathryn R. Sylvester