# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| Graduation Solutions LLC, | ) | No. 17 Civ. 01342 (VLB) |
| Plaintiff | ) | |
| v. | ) | |
| Acadima, LLC and Alexander Loukaides, | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT
## OF THE MOTION TO DISMISS BY ACADIMA LLC

Defendant Acadima LLC submits this Memorandum of Law in support of it motion to dismiss the claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the doctrine of equitable mootness bars Plaintiff from receiving <u>any</u> relief from this Court because any such order from this Court will cause the re-emergence of the debtor, Acadima LLC, as a revitalized corporate entity even though it has gone through Chapter 7 bankruptcy. Moreover, Plaintiff has failed to pursue with diligence all available remedies to obtain a stay of execution of the final bankruptcy order in the Northern District of Texas and is barred from seeking relief, including a lifting of the stay, for that reason alone.

## I.   BRIEF BACKGROUND ON CORPORATE BANKRUPTCIES

The Bankruptcy Code is found in Title 11 of the United States Code, which is organized by chapter. Businesses may file bankruptcy under Chapter 7 (11 U.S.C. §§ 701-84) to liquidate assets, or they may file under Chapter 11 (11 U.S.C. §§ 1101-74) in an attempt to reorganize thereby allowing future earnings to pay off creditors in a limited manner.[1] In comparison and contrast, individual people may also use Chapter 7 to liquidate or they may file under Chapter 13 for

---

[1] **Chapter 11 cases may be converted to liquidations. *See In re BGI, Inc.*, 772 F. 3d 102, 105 (2d Cir. 2014) ("After filing its February 2011 petition, Borders attempted to reorganize as a going concern, but those efforts were unsuccessful, and in July 2011, the Bankruptcy Court authorized Borders to proceed under Chapter 11 to liquidate substantially all of its assets and completely close the chain of stores"); *see also Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n.2 (2008).**

reorganization – *i.e.*, adjust their debts if they have a regular income (11 U.S.C. §§ 1301 to 1330).

Individual people who go through Chapter 7 or Chapter 13 bankruptcy receive "discharges" of debt to achieve the proverbial fresh start in their life. The Bankruptcy Code makes it, however, clear that a corporate debtor cannot qualify for a discharge of its debts and, thus, cannot begin anew. *See* 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless—(1) the debtor is not an individual . . . ").

The Bankruptcy Code prevents corporations from being discharged in liquidation cases because "corporations are not in the same situation as individual debtors, and the discharge of a corporation promotes trafficking in corporate shells, a form of bankruptcy fraud." S. Rep. No. 95-989, at 7 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5793.

Since discharges are not available in a business bankruptcy, all assets of the company in a Chapter 7 bankruptcy (whether it be a corporation or LLC) are gathered to sell and the proceeds distributed among its creditors according to priority of timely claims. When the debtor company files a bankruptcy, all property becomes property of the bankruptcy estate. A trustee is appointed to take control of and sell the assets. The trustee is also responsible for examining the debtor and the financial condition of the newly formed estate.

The purpose of a Chapter 7 bankruptcy for a company is "to distribute any assets equitably among existing creditors before laying the defunct corporation to rest." *In re Blanton*, 105 B.R. 811, 824 (W.D. Tex. 1989). Far from getting the

"fresh start" that individual people are said to receive, courts have described corporations after Chapter 7 bankruptcy as being "defunct." *In re Liberty Trust Co.*, 130 B.R. 467, 471 (W.D. Tex. 1991).

Indeed, courts have held that a Chapter 7 corporate debtor does not have an existence outside of the bankruptcy estate. *Id.* at 478. Courts "assum[e] that 'defunct' depicts a status akin to that of a dissolved corporation or partnership." *Id.* at 471 (citing *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1185 (7th Cir. 1980)). These courts have elaborated that defunct status signals the *de facto* end of the corporation. *See United States Dismantlement Corp. v. Jeffrey M. Brown Assocs.*, No. 97-1309, 2000 U.S. Dist. LEXIS 5347, at *5-6 (E.D. Pa. April 13, 2000); *see also id.* at *8 (noting that Black's Law Dictionary defines "defunct" as "dead; extinct" ad defines "extinct" to mean "no longer in existence.").

"The filing of a chapter 7 creates a defunct corporation. In other words, the corporation ceases to operate or own any assets, but, may be technically a *de jure* corporation by virtue of its certificate of incorporation from the state." *In re Tri-R Builders, Inc.*, 86 B.R. 138, 140-41 (Bankr. N.D. Ind. 1986)). Nonetheless, the company is "de facto a dissolved corporation" as every putative asset is in the Trustee's possession and the corporation is not around to take them back. *In re Liberty Trust Co.*, 130 B.R. at 472. After a Chapter 7 bankruptcy, companies are

3

useless for all practical purposes. The final, formal step is dissolution under state law in order to fully close the affairs of the defunct corporation.[2]

## II.    PLAINTIFF'S CLAIMS FOR RELIEF ARE BARRED

As Plaintiff recognizes, "the Bankruptcy Case has been closed." Dkt. 32 at 1 (Notice of Dismissal [sic] of Bankruptcy Case). Plaintiff did not, however, file any claims with the trustee or appear at the confirmation hearing. Nor has Plaintiff not sought a stay of the final order or even appealed it. For the reasons below, Plaintiff's request for any relief from this Court pertaining to Acadima LLC, including a lift of the stay, is barred by the doctrine of equitable mootness. The only action the Court should take is to dismiss Plaintiff's claims with prejudice for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

## A.    The Equitable Mootness Doctrine

Equitable mootness is a "pragmatic" doctrine, one that is "grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief . . . becomes impractical, imprudent, and therefore inequitable." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir.

---

[2] Given this case law, Plaintiff statement that the automatic stay should be lifted because "Acadima did not receive a discharge [under Chapter 7] as a result of the Bankruptcy Case" makes no sense. Dkt. #32 at 1. The fact is that companies never receive discharges under Chapter 7. Rather, as one court has succinctly stated, "the corporation becomes defunct and the issue of dischargeability irrelevant." *In re: Matter of Federal Insulation Development Corp.*, 14 B.R. 362, 364 (Bankr. S.D. Ohio 1981).

2005) (quoting *MAC Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). [3]

In *In re BGI, Inc. f/k/a/ Borders Group, Inc.*, 772 F. 3d 102 (2d Cir. 2014), the Second Circuit held that the doctrine of equitable mootness applies to liquidations. In that case, Borders filed a petition for voluntary reorganization in February 2011, and the Bankruptcy Court set June 1, 2011 as the bar date for filing proofs of claim. In June 2011, the Bankruptcy Court authorized Borders to liquidate under Chapter 11. In November 2011, Borders filed its plan. None of the appellants before the Second Circuit filed claims by the bar date, or objected to the plan, or appeared at the confirmation hearing.

In December 2011, the Bankruptcy Court issued an order confirming the plan, which was to be effectuated on January 12, 2012. Shortly thereafter, on January 4, 2012, the appellants sought to file untimely proofs of claim, arguing that they had received inadequate notice of the bankruptcy proceedings and the bar date. The appellants did not seek a stay of the plan pending determination of their claim.

The Bankruptcy Court denied the creditors' requested relief in August 2012. Among other things, the Bankruptcy Court held that appellants' failure to file timely proofs of claim was not "excusable neglect," in part because, by the time of its ruling in August 2012, the plan had already been substantially

---

[3] While sharing a similar name, constitutional mootness is a different doctrine because it is derived from Article III of the U.S. Constitution, which limits the jurisdiction of federal courts to actual cases or controversies and, in furtherance of the goal of conserving judicial resources, precludes adjudication of cases that are hypothetical or merely advisory.

consummated. On appeal, the District Court dismissed the appeals as equitably moot.

The Second Circuit held that the doctrine of equitable mootness applies in Chapter 11 liquidations as well as reorganizations. The Court saw no principled reason not to extend the doctrine to a Chapter 11 liquidation where affected parties had devoted time and resources toward the liquidation and judicial resources were also consumed. Moreover, as in the reorganization context, the parties involved also hold an interest in preventing the disruption of a confirmed and substantially consummated plan.

The Court also held, however, that, as in reorganizations, the presumption of equitable mootness may be rebutted in a liquidation by demonstrating that the five factors articulated in *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944 (2d Cir. 1993), are all satisfied. The Second Circuit found that appellants had failed two of the five required factors, which included failing to show that they pursued with diligence all available remedies to obtain a stay of execution of the objectionable order.

The Second Circuit left for "a future panel of our Court the question whether a district court may also invoke equitable mootness in the context of a Chapter 7 liquidation." *In re BGI, Inc.,* 772 F. 3d at 109 n.13. At the same time, the court noted that several sister circuits – the First, Fourth and Ninth Circuits – had applied the doctrine to a Chapter 7 liquidation. *See id.* at 109 n.10 (citing *Drawbridge Special Opportunities Fund, L.P. v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.),* 125 Fed. Appx. 466, 469-70 (4th Cir. 2005) (applying equitable

mootness analysis in a Chapter 7 liquidation proceeding); *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 48-49 (1st Cir.1998) (same); *Fitzgerald v. Ninn Worx Sr., Inc. (In re Fitzgerald)*, 428 B.R. 872, 881 (9th Cir. BAP 2010) (same)).


**B.      Equitable Mootness Bars Lifting the Stay or Ordering Any Relief**

The doctrine of equitable mootness applies here and it bars Plaintiff's claims against a now-defunct company. As repeatedly explained in the cases cited above, including the Second Circuit in *In re BGI, Inc.,* equitable mootness is flexible doctrine. Its application depends on, and varies according to, the specific factors presented in a particular case. *See MAC Panel*, 283 F.3d at 625 ("[The doctrine's] application does not employ rigid rules."). Moreover, "equitable mootness is not limited to appeals of orders confirming reorganization plans." *Cadle Company II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, No. 06 Civ. 1935 (SJF), 2008 WL 199457, *5 (E.D.N.Y. Jan. 17, 2008) (collecting cases). Finally, there is no principled reason to distinguish between liquidation under Chapter 7 and liquidation under Chapter 11 of the Bankruptcy Code given that the equitable doctrine applies in a variety of contexts.[4]

For these reasons, the Court should hold that this doctrine applies to Chapter 7 liquidations just as it applies to Chapter 11 liquidations and,

---

[4] *See, e.g., Captain Hani Alsohaibi v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, Nos. 13 Civ. 5755 (SAS), 13 Civ. 5756 (SAS), 2014 WL 46552, at *5 (S.D.N.Y. Jan. 6, 2014) (explaining that the doctrine of equitable mootness "has been applied in a variety of contexts") (footnotes omitted).

furthermore, that the doctrine bars Plaintiff from seeking any relief from this Court including a lifting of the automatic stay.

"Only if all five *Chateaugay* factors are met, and if the [party] prevails on the merits of its legal claims, will relief be granted." *In re Charter Commc'ns*, 691 F.3d at 482. Those five factors are:

> 1. The court can still order some effective relief;
>
> 2. Such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
>
> 3. Such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;
>
> 4. The parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
>
> 5. The appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Chateaugay*, 10 F.3d at 952–53 (internal quotation marks omitted).

There is no relief that the Court can order that will not affect (indeed, require) the re-emergence of Academia LLC as a revitalized corporate entity. As detailed above, courts have repeatedly held that Chapter 7 signals the end of the company. The company is "*de facto* a dissolved corporation" as everything is in the Trustee's possession and the corporation no longer exists. *In re Liberty Trust Co.*, 130 B.R. at 472; *see also ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 367 B.R. 84, 96 (S.D.N.Y. 2007) (dismissing case

as equitably moot where the "Debtors have been liquidated and effectively cease to exist").

If the Court lifts the stay, for instance, Acadima LLC could not respond to any discovery demands – only the trustee could but he can only respond on behalf of the estate. Likewise, even if Acadima LLC defaulted on the judgment, no court would have the power to order Acadima LLC to satisfy it because the company has ceased to exist.

All five factors must be satisfied in order for equitable mootness not to apply, so Plaintiff's inability to demonstrate the first and second factor are satisfied requires the Court to bar Plaintiff from seeking relief from it. However, it bears mentioning that Plaintiff <u>also</u> failed to pursue with diligence all available remedies to obtain a stay of execution of the bankruptcy order. Indeed, Plaintiff did not file any claims or attend the confirmation hearing, much less request a stay of execution. This failure to satisfy this factor alone is also sufficient for the Court to hold that Plaintiff is now barred by the doctrine of equitable mootness.

### III.     CONCLUSION

Equitable mootness bars Plaintiff from seeking relief from this Court. Plaintiff's claims against Acadima LLC should be dismissed with prejudice for failure to state a claim upon which relief can be granted.


**Date: February 20, 2018**


**/s/ Kathryn R. Sylvester**
**Kathryn R. Sylvester**
**L.O. of Kathryn R. Sylvester, L.L.C.**
**P.O. Box 5076**
**Woodbridge, CT 06525**
**Counsel for Defendants**

**10**

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, a copy of the foregoing motion and memorandum of law was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

<u>/s/ Kathryn R. Sylvester</u>
Kathryn R. Sylvester