UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| Graduation Solutions LLC,<br><br>    Plaintiff<br><br>    v.<br><br>Acadima, LLC and Alexander Loukaides,<br><br>    Defendants. | No. 17 Civ. 01342 (VLB) |

MEMORANDUM OF LAW
IN SUPPORT OF THE MOTION TO DISMISS BY
DEFENDANTS ALEX LOUKAIDES

**Defendant Alexander Loukaides submits this Memorandum of Law in support of his motion to dismiss the claims against him pursuant to Rule 12(b)(6) and Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Federal Rules"). Loukaides moves to dismiss the claims against him for three reasons.**

*First*, as conceded by Plaintiff, Loukaides has not owned membership interests in Acadima LLC since 2016. Thus, even if the corporate veil of Acadima LLC could be pierced, Loukaides would not be liable because he is not a current member (*i.e.,* owner). *Second,* even if one assumed for the sake of argument that Loukaides was a member of Acadima LLC, Plaintiff has failed to allege facts in its most recent Complaint that plausibly shows the corporate veil may be pierced under Texas law.[1] *Third,* Plaintiff has failed to allege facts that allow this Court to assert personal jurisdiction over him under either Connecticut's long-arm statute or the U.S. Constitution.

I. **RELEVANT PROCEDURAL BACKGROUND**

On November 16, 2017, Plaintiff's counsel filed the Joint Report of Rule 26(f) Meeting (Dkt. #22). This report made it clear that Acadima LLC planned on filing for bankruptcy. Page 5 of the report states, "Defendants anticipate that Acadima LLC will be filing a bankruptcy petition in the next two weeks as Acadima LLC has already retained a bankruptcy lawyer in Dallas, Texas." Dkt. #22 at 5.

Four days later, on November 20, 2017, Acadima filed its petition for bankruptcy in the Northern District of Texas. Compl. ¶103. The petition was filed

---

[1] The most recent complaint is the Second Amended Complaint (Dkt. #31). It is referred to as "Complaint" and cited as "Compl." in this Memorandum of Law.

1

by Frank Seviane. *See id.* Scott M. Seidel was appointed to act as an impartial trustee pursuant to 11 U.S.C. §§ 701, 704. A meeting of creditors was scheduled to take place on December 19, 2017 at 10:40 a.m. Noticed was then sent to multiple people and companies as creditors including:

> Gradution Solutions LLC, c/o Nathan Gentle, Pullman & Comley, LLC, 850 Main Street, P.O. Box 7006, Bridgeport CT 06601-7006; and
>
> Alexander Loukaides, 6F Jintai Business Building, 571# Qingtai Street Shangcheng District, Hangzhou, China 310009[2]

Attached Exhibit at 2.[3]

At the creditors meeting, Frank Seviane testified that he had purchased Acadima for $10,000 in the Spring of 2016 – one and a half years before this lawsuit was commenced. Compl. ¶108. Despite having received notice of the bankruptcy petition in multiple ways (including first class mail and email), counsel for Graduation Solutions LLC elected not to contest any issue raised by Acadima LLC's Chapter 7 bankruptcy.

The trustee filed his report with the bankruptcy court affirming that he had made a diligent inquiry into the financial affairs of Acadima LLC. The report states in full:

---

[2] As Plaintiff has alleged, Mr. Loukaides has stated that he is in China. ¶111 ("My main business is actually manufacturing and I'm in china."). Notably, Frank Seviane's attorney also sent Loukaides's notice of the bankruptcy to Hangzhou, China.

[3] **Also available as Docket Entry Number 4 at https://ecf.txnb.uscourts.gov/cgi-bin/iqquerymenu.pl?457311** (PACER docket for In re Acadima, No. 3:2017bk34346 (N.D. Tex.)).

2

> **Chapter 7 Trustee's Report of No Distribution:**
>
> **I, Scott M. Seidel, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Meeting held and concluded. Debtor appeared. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned: $ 12144.00, Assets Exempt: $ 0.00, Claims Scheduled: $ 81575.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 81575.00. (Seidel, Scott).**

Available at https://ecf.txnb.uscourts.gov/cgi-bin/iqquerymenu.pl?457311 (PACER docket for In re Acadima, No. 3:2017bk34346 (N.D. Tex.)).  As stated therein: "Claims [were] scheduled to be discharged without payment."

One month later, on January 22, 2018, the court approved the report and relieved Scott Seidel as trustee. *See id.* The Court then closed the bankruptcy case.

On February 5, 2018, Graduation Solutions LLC filed its Second Amended Complaint against Acadima LLC and Alexander Loukaides (Dkt. #31). Defendant Loukaides now moves to dismiss.

3

## II. PLEADING STANDARD UNDER RULE 12(B)(6) AND RULE 12(B)(2) OF THE FEDERAL RULES

Under *Iqbal* and *Twombly*, plaintiffs must plead facts that give rise to a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. While a plaintiff is not required to provide "detailed factual allegations" in the complaint, plaintiff must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Plaintiff also bears the burden of pleading factual allegations demonstrating that the court has personal jurisdiction over each defendant <u>individually</u>. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Plaintiff must plead legally sufficient allegations of personal jurisdiction in the Complaint. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). While a court should assume the truth of all well-pleaded factual allegations that support personal jurisdiction, it should "not draw 'argumentative inferences' in the plaintiff's favor." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quotation marks and citation omitted).

4

### III. THE CLAIMS AGAINST LOUKAIDES SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Plaintiff's Complaint does not plead factual allegations that make it plausible that (1) Loukaides owns Acadima LLC or, (2) even if he did, that the corporate veil should be pierced under Texas law.

#### A. Defendant Loukaides Is Not An Owner of Acadima LLC

As Plaintiff recognizes in its Complaint, Loukaides is not an owner of Acadima LLC because in the spring of 2016 (approximately 16 months prior to this lawsuit) Loukaides sold his membership interests in Acadima LLC to Frank Seviane. Compl. ¶¶101, 103, 107, 109. Thus, even if the corporate veil were to be pierced, Loukaides would not be liable because he is not an owner.

Plaintiff attempts to overcome this obvious obstacle by casting doubt on this transaction. Plaintiff alleges: "Even if Mr. Seviane's testimony under oath was accurate, Mr. Seviane did not pay fair consideration for any purported acquisition of Acadima." Compl. ¶109. To bolster this allegation, Plaintiff also states: "Incredibly, Mr. Seviane further represented to the Chapter 7 Trustee at the creditors' meeting that although Acadima generated nearly $2.5 million in revenue up until the time it filed for bankruptcy, he paid a mere $10,000.00 to acquire it in the Spring of 2016." Compl. ¶108.

Putting aside the fact that Plaintiff has no standing to challenge this transaction in this Court, the other problem with Plaintiff's argument is that it confuses revenue with net profit. In common parlance, revenue is the top line

5

while net profit is the bottom line. That is, net profit is the amount of income that remains after accounting for all expenses, debts, and operating costs.

Consider, for example, J.C. Penney's. "For the fiscal year ended January 28, 2017, JCPenney's (JCP) revenue was $12.55 billion." Claire Boyte-White, "What is the difference between revenue and profit?," *Investopedia* (May 12, 2017).[4] Its net profit, however, was only <u>one million dollars</u> for the fiscal year. See id. Indeed, the prior two years, J.C. Penney's lost money even though it had over <u>$12 billion in sales</u> each year. *See id.*

Indeed, there is a good reason why Frank Seviane would have been able to buy the company for $10,000 even if it had millions in sales: The Company was either losing money or barely making a profit. A company's value is based on its profit, not its revenue. Moreover, the trustee, an independent party, made a diligent inquiry into the financial affairs before submitting his report to the Court. Plaintiff offers no reason to doubt his inquiry.

Under Texas law, "an assertion of veil piercing or corporate disregard does not create a substantive cause of action[;] . . . such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability." *In re JNS Aviation, LLC*, 376 B.R. 500, 521 (Bankr. N.D. Tex. 2007). Because Loukaides is not the owner of Acadima LLC, he may not be held liable under an alter ego theory and the Court should dismiss him as a defendant from the case.

---

[4] **Available at https://www.investopedia.com/ask/answers/122214/what-difference-between-revenue-and-profit.asp.**

**B.     Plaintiff has not alleged sufficient facts to pierce the corporate veil**

As the Court held in its previous decision, Plaintiff's First Amended Complaint "fail[ed] to allege facts sufficient to establish liability based on an alter ego theory." Dkt. #27 at 1-2. Plaintiff's Second Amended Complaint fares no better, particularly because Texas has some of the strictest statutes against piercing the corporate veil in the country. Even if one assumes that Loukaides is a member of the LLC (despite Plaintiff's own allegations to the contrary), Plaintiff has still not alleged facts that plausibly show that the corporate veil can be pierced under an alter ego theory.

A limited liability company formed under the laws of Texas, like the LLCs in every other state, is a creature of statute and is legally separate and distinct from its members and managing members. The LLC, and not its members, is liable for its own contracts, debts and torts.

Thus, Section 101.114 of the Texas Business Organizations Code states in unambiguous terms: "Except as and to the extent the company agreement specifically provides otherwise, <u>a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court</u>." Tex. Bus. Orgs. Code Ann. § 101.114 (emphasis added); *see also McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.-Houston [1st Dist.] 2007, pet. denied).[5]

---

[5] Furthermore, Section 101.113 states that "[a] member of a limited liability company may be named as a party in an action by or against the limited liability company <u>only if</u> the action is brought to enforce the member's right against or liability to the company." *Id.* at § 101.113 (emphasis added).

7

There were once multiple exceptions to this rule. As the Fifth Circuit explained in *Spring Street Partners-IV, LP v. Lam*, 730 F. 3d 427 (5th Cir. 2013), in 1986, the Texas Supreme Court set forth six grounds on which the corporate form could be disregarded. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). The alter ego doctrine was one theory that the court in *Castleberry* recognized. Id.; *see also Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.- Dallas 2007, no pet.). That theory applied if there was a unity between the corporation and the individual to the extent the corporation's separateness has ceased, and holding only the corporation liable would be unjust.

However, in reaction to *Castleberry*, the Texas legislature superseded and circumscribed the case by legislative enactment effective Sept. 1, 1997, 75th Leg., R.S., Ch. 375, § 7, 1997 Tex. Gen. Laws 1522, 1522-23. Then, in 2011, the Texas legislature added a new section 101.002 to Title 3 of the Texas Business Organizations Code, to make it crystal clear that the code provisions restricting veil piercing (Tex. Bus. Orgs. Code §§ 21.223 and 21.224) apply to LLCs and their members. *See* Act of Apr. 20, 2011, 82d Leg., R.S., ch. 25, §§ 1-2, 2011 Tex. Gen. Laws 45, 45 (identifying an effective date of September 1, 2011).

Section 21.223(b) now contains the exception for veil piercing: The veil may be pierced for contract-related claims if plaintiff shows that the defendant shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder." Tex. Bus. Orgs. Code § 21.223(b). Thus, Section 21.223 requires showing of <u>actual fraud</u> on plaintiff to pierce the corporate veil. *See*

8

*Kwasneski v. Williams (In re Williams), Adv.*, No. 10-05077, 2011 WL 240466, at *3, 2011 Bankr. LEXIS 266, at *7 (Bankr. W.D. Tex. Jan. 24, 2011).[6]

Actual fraud under Texas law is defined as "the misrepresentation of a material fact with intention to induce action or inaction, reliance on the misrepresentation by a person who, as a result of such reliance, suffers injury." *Trs. of the N.W. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994) (quotation marks and citation omitted). The elements of actual fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010).

Plaintiff is not asserting contract-related claims, and Plaintiff's Complaint contains no factual allegations that satisfy any of these elements for actual fraud. *See In re JNC Aviation, LLC*, 376 B.R. 500, 527 (Bankr. N.D. Tex. 2007), *aff'd*, 418 B.R. 898 (Bankr. N.D. Tex. 2009) (stating that to "to determine if the members of an LLC are liable under the asserted veil-piercing theories, the Court must analyze both the question of whether the facts satisfy any of the asserted veil-

---

[6] Moreover, the Legislature has further provided that an owner of a corporation is not liable for any corporate obligation on grounds that the corporation failed "to observe any corporate formality." Tex. Bus. Orgs. Code at § 21.223(a)(3).

9

piercing strands and the question of whether any of the members caused the LLC to be used for the purpose of perpetrating and did perpetrate an actual fraud on the plaintiff primarily for the direct personal benefit of the considered defendant.").

Rather, Plaintiff merely alleges: "Upon information and belief, Loukaides is the alter ego of Acadima and its various websites and he has used the corporate form of Acadima to perpetrate a fraud." Compl. ¶¶ 89-121. Of course, the Supreme Court in *Twombly* squarely rejected pleading by merely stating a conclusion on "information and belief." 550 U.S. at 550-51. There, the complaint alleged an agreement in conclusory terms based upon information and belief because, as plaintiffs emphasized to the Court, they did not have any proof yet. *See id.* Nonetheless, this allegation did not satisfy the Federal Rules. See id.

In fact, "information and belief" is not mentioned in the Federal Rules of Civil Procedure and at least one court has repeatedly held that "information and belief" "is not a recognized pleading device." *Delphix Corp. v. Actifo Inc.*, No. 13 Civ. 4613, at *2 (N.D. Cal. Mar. 19, 2014) (Seeborg, J.). Moreover, "in some circumstances it gives rise to an inference that the pleader lacks knowledge of underlying facts to support the allegations made, and is instead engaging in speculation to an undue degree." *Id.*; *see also* Frederick A. Brodie, *Challenging Your Beliefs About "Information and Belief,"* 21 Westlaw J. Intell. Prop. (Aug. 20, 2014).

Finally, even if an alter ego theory could be applied here despite the Texas statutes severely limiting corporate veil piercing, Plaintiff has not alleged facts to

10

show: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his or her personal use; (4) inadequate capitalization; (5) whether the corporation has been used for personal purposes; and (6) other failure to keep corporate and personal assets separate. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990). For this reason alone, Loukaides should be dismissed from the case.

## IV.     THE COURT LACKS PERSONAL JURISDICTION OVER LOUKAIDES

Plaintiff has also failed to allege facts that would allow this Court to exercise personal jurisdiction over Loukaides. In assessing whether personal jurisdiction is authorized, the court must conduct a two-part inquiry. *First*, the court must look to the statutes of the forum state and determine whether the plaintiff has shown that Connecticut law would confer upon its courts the jurisdiction to reach the defendant under the long-arm statute. If the exercise of jurisdiction is appropriate under a state statute, the court must decide whether such exercise comports with the requisites of due process. *See Metro. Life Ins.*, 84 F.3d at 567. Personal jurisdiction is determined individually, rather than as a group. *See Whitaker v. Amer. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

**A.    The Court lacks statutory authority to assert jurisdiction**

Paragraph 3 of the Complaint alleges that C.G.S.A. §52-59(b)(a)(1) gives the Court jurisdiction because Loukaides "transacted business" within the state. Compl. ¶3. Plaintiff alleges one phone call and one email made by Loukaides to the Chief Executive Officer of Graduation Solutions LLC, Matthew Gordon, on March 2, 2014 and March 10, 2014 – that is, well over two years ago. Compl. ¶¶46-48.

The term "transacts business" as used in C.G.S.A. §52-59(b)(a)(1) is "not broadly interpreted in Connecticut." *Goudis v. Am. Currency Trading Corp.*, 233 F.Supp.2d 330, 334 (D. Conn. 2002). The negotiation of contracts, standing alone, does not constitute "transacting business" in Connecticut. *Id.* Nor does the transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction constitute the transaction of business in a forum state. *See Bross Utils. Svc. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1371-72 (D. Conn. 1980); *see also Greene v. Sha-Na-Na*, 637 F. Supp. 591, 596 (D. Conn. 1986) (nonresident's telephone call, telegram and letter to Connecticut plaintiff did not constitute transaction of business within the meaning of § 52-59b(a)(1)).

C.G.S.A. §52-59(b)(a)(3), the other statutory provision asserted by Plaintiff, Compl. ¶3, does not apply because Plaintiff has not alleged that Loukaides "commit[ed] a <u>tortious act</u> outside the state causing injury to person or property within the state . . . ." Id. (emphasis added). Rather, Plaintiff has alleged that Acadima, LLC violated various federal and state laws and the corporate veil of the limited liability company should be disregard so as to reach the owner. But under

12

Texas law, alter ego liability is not a tort.  Rather, alter ego liability is "an assertion of veil piercing or corporate disregard does not create a substantive cause of action[;] . . . such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability." *In re JNS Aviation, LLC*, 376 B.R. at 521. Because alter ego liability is not a "tortious act," §52-59(b)(a)(3) does not apply.

**B.  The Court lacks constitutional authority to assert jurisdiction**

The Court also lacks power under the Constitution to exercise personal jurisdiction over Loukaides. The court clearly lacks general or "all-purpose" jurisdiction over Loukaides as the Constitution does not allows the court to "hear any and all claims against" him.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal quotation marks and brackets omitted).  For general jurisdiction to apply, the defendant's affiliations with the forum state must be "so constant and pervasive as to render it essentially at home."  *Id.*

One phone call and one email from two years ago do not satisfy the substantial connection with Connecticut that is required by principles of due process. *See Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [the defendant], a Massachusetts resident, to litigate in a New York forum on the basis of one telephone call."); *Heinfling v. Colapinto*, 946 F. Supp. 260, 264 n.2 (S.D.N.Y. 1996)

13

("Nor can the alleged single phone call [defendant] made to Plaintiff . . . provide the basis for long-arm jurisdiction over [defendant].").

Finally, this Court lacks specific or "case-linked" personal jurisdiction over Loukaides because Plaintiff has not allege any Connecticut-based conduct that "arise[s] out of or relate[s] to" the "defendant's suit-related conduct" concerning Loukaides's alleged alter ego liability, and the few contacts Loukaides had with Connecticut do not create "a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 & n.6 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *Grunberger Jewelers v. Leone*, No. Civ. 303CV647, 2004 WL 1393608, at *4 (D. Conn. June 18, 2004) (holding that two phone calls from the defendant's office to the plaintiff in Connecticut did not constitute a "connection with the forum [s]tate such that [the defendant] should [have] reasonably anticipated being haled into court [in Connecticut].").

Even if Plaintiff were to properly allege facts plausibly giving rise to alter ego liability, such conduct would be aimed at an LLC located in Dallas, Texas – not Connecticut. For this reason, the District Court in the Northern District of Texas may be able to exercise personal jurisdiction over Loukaides (assuming a plaintiff offered sufficient allegation of alter ego liability), but this Court cannot exercise such jurisdiction in a manner consistent with the Constitution.

## V.     CONCLUSION

Alexander Loukaides respectfully submits that the Court grant his motion to dismiss under Rule 12(b)(6) or Rule 12(b)(2) or both. Even if the corporate veil of Acadima LLC could be pierced, Loukaides would not be liable because he is not a current member (i.e., owner). Moreover, Plaintiff has failed to allege facts that plausibly show the corporate veil may be pierced under Texas law. Finally, Plaintiff has failed to allege facts that allow this Court to assert personal jurisdiction over Loukaides.

**Date: February 20, 2018**

<u>/s/ Kathryn R. Sylvester</u>
**Kathryn R. Sylvester
L.O. of Kathryn R. Sylvester, L.L.C.
P.O. Box 5076
Woodbridge, CT 06525
Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, a copy of the foregoing motion and memorandum of law was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Kathryn R. Sylvester
Kathryn R. Sylvester
