## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GRADUATION SOLUTIONS LLC,** | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | )     **No.: 3:17-cv-01342 (VLB)** |
| | ) |
| **ACADIMA, LLC and ALEXANDER LOUKAIDES,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
## ALEXANDER LOUKAIDES' THIRD MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................i

PRELIMINARY STATEMENT .........................................................2

STATEMENT OF FACTS ...............................................................3

PROCEDURAL HISTORY...............................................................5

ARGUMENT ..................................................................................10

    I.     THERE IS NO BASIS FOR DISMISSAL OF PLAINTIFF'S
         CLAIMS AGAINST DEFENDANT LOUKAIDES...........................10

    II.    PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO HOLD
         DEFENDANT LOUKAIDES PERSONALLY LIABLE FOR
         THE TORTIOUS MISCONDUCT ALLEGED IN THE SECOND
         AMENDED COMPLAINT) .............................................................14

    III.   PLAINTIFF HAS SUFFICIENTLY ALLEGED PERSONAL
         JURISDICTION OVER DEFENDANT LOUKAIDES .....................18

         A. Plaintiff Has Sufficiently Alleged that Defendant Loukaides
            Committed Tortious Acts Causing Injury to Graduation
            Solutions in Connecticut .......................................................20
         B. Plaintiff Has Sufficiently Alleged that Defendant Loukaides
            Transacts Business in Connecticut.....................................24
         C. An Exercise of Personal Jurisdiction Over Loukaides by
            This Court Does Not Offend Constitutional Due Process...27

CONCLUSION................................................................................29

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGE**

*ACS Investors, Inc. v. McLaughlin,*
943 S.W.2d 426 (Tex. 1997) .................................................................. 17

*Costello v. Wells Fargo Bank Nat'l Assoc.,*
No. 16-cv-1706, 2017 WL 3262157 (July 31, 2017)............................. 6

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.,*
722 F.ed 81, (2d Cir. 2013) ................................................................... 19

*Eades v. Kennedy, PC Law Offices,*
799 F.3d 161, (2d Cir. 2015) ................................................................. 19

*Gore v. Scotland Golf, Inc.,*
136 S.W.3d 26 (TX Ct of App. 2003) ................................................... 17

*Franco v. Ideal Mortg. Bankers, Ltd.,*
No. 07-CV-3956(JS)(SKT), slip op. (E.D.N.Y. Nov. 9,2017) ................. 6

*Horniatko v. Riverfront Associates, LLC, Superior Court, judicial district of
Hartford,*
Docket No. CV–04–4000332, 2005 WL 1671543 June 21, 2005,
39 Conn. L. Rptr. 566 ........................................................................... 22

*Huff v. Harrell,*
941 S.W.2d 230, 234 (Tex. App. – Corpus Christi-Edinburg 1997) .............. 11

*In re Platinum and Palladium Antitrust Litigation,*
No. 1:14-cv-9391-GHW, 2017 WL 1169626, (S.D.N.Y. Mar. 28, 2017) ............ 23

*In re Tamoxifen Citrate Antitrust Litigation,*
429 F.3d 370, 384 (2d Cir. 2005) .......................................................... 13

In re Williams, Adv.,
10-05077, 2011 WL 240466, Bankr. W.D. Tex. Jan. 24, 2011 .......................... 15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
732 F.3d 161 (2d Cir. 2013) .................................................................. 19

*Love v. State of Texas,*
972 S.W.2d 114 (Tex. App. -  Houston 1998) ...................................... 11

*Marine Midland Bank v. Miller,*
664 F.2d 899, 904 (2d Cir. 1981) ...................................................... 24

*McCarthy v. Dun & Bradstreet Corp.,*
482 F.3d 184, 191 (2d Cir. 2007*)* ...................................................... 13

*McCullough v. World Wrestling Entertainment, Inc.,*
172 F.Supp.3d 528, 543 (D. Conn. 2016) ................................................ 12,14,19

Nadler v. Grayson Construction Co.,
No. CV020190015S, 2003 WL 1963158,  (Sup. Ct. of Conn., Stamford-Norwalk,
April 15, 2003) .................................................................................. 25

*Olson v. Accessory Control & Equipment, Superior Court, judicial district
of Hartford/New Britain at Hartford,*
Docket No. 525839 (April 13, 1995) ................................................ 20

*Oppenheim v. Erwin, Superior Court, judicial district of New Haven,*
Docket No. CV–00–0441611, 2001 WL 419236 (April 10, 2001)
29 Conn. L. Rptr. 562 ...................................................................... 23

*Pavers & Road Builders Dist. Council Welfare Fund v.*
*Core Contracting of N.Y., LLC,* 536 B.R. 48 (Bankr. E.D.N.Y. 2015) ............... 7

*Queenie, Ltd. v. Nygard Int'l,*
321 F.2d 282, 287 (2d Cir. 2003)............................................................6

*Rios v. Fergusan,*
51 Conn. Supp. 212 (Sup. Ct. of Conn. 2008) ........................................... 20,22

*Seaside Indus., Inc. v. Cooper,*
766 S.W.2d 566, 568-69 (Tex. App. – Dallas 1989) ......................... 11

*Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC,*
No. 16 Civ. 6805 (JSR), slip op. at 9 (S.D.N.Y. Nov. 22, 2017).) ...................... 7

*Standard Tallow Corp. v. Jowdy,*
190 Conn. at 48, 52, 459 A.2d 503 (1983) .......................................... 28

*Southern New England Distributing Corp. v. Berkeley Finance Corp.,*
30 FRD 43 (D.Conn.1962) ............................................................ 21

*Tabacinic v. Frazier,*
372 S.W.3d 658, 669 (TX Ct. of Appeals 2012) ................................. 18

iii

*Tryco Enterprises, Inc. v. Robinson,*
390 S.W.3d 497, 507 (Tex. App. - Houston 2012) ............................................ 12

*Visual Sciences, Inc. v. Integrated Communications Inc.,*
660 F.2d 56 (2d Cir. 1981) ....................................................................... 24

## STATUTES AND RULES

11 U.S.C. § 362 ........................................................................................ 6

11 U.S.C. §727 ......................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................ 12

Conn. Gen. Stat. §52-59(b) ....................................................................... 20

Tex. Bus. Orgs. Code § 21.223(b) .............................................................. 15

## PRELIMINARY STATEMENT

Plaintiff Graduation Solutions LLC ("Plaintiff" or "Graduation Solutions") brought this action against Acadima, LLC ("Acadima") and Alexander Loukaides ("Loukaides") (collectively "Defendants") for copyright infringement, trade dress infringement, false advertising, violation of Connecticut's common law prohibition against unfair competition and unjust enrichment.[1] The action stems from Defendants Acadima and Loukaides taking copyrighted works from Plaintiff's website in order to conduct and promote their own business and various other websites run by Loukaides. Defendant Loukaides is the dominant and active force behind Acadima and its various websites. (Sec. Am. Compl., ¶¶ 18-37, 73-79.) According to state filings in Texas, Loukaides is or was the sole managing member and owner of Acadima. (*Id.*, ¶¶ 18-37.)

Plaintiff submits this this memorandum of law in opposition to Loukaides' third motion to dismiss the claims against him personally filed on February 20, 2018 (the "Loukaides' Motion to Dismiss").[2] That same day, Loukaides' company, Defendant Acadima, filed a separate motion to dismiss the claims against Acadima based upon the misapplication and misinterpretation of inapplicable bankruptcy law (the "Acadima Motion to

---

[1]     A copy of Plaintiff's Second Amended Complaint, filed on February 5, 2018, ECF Doc. No. 31, is annexed hereto as Exhibit A.

[2]     See ECF Docs. Nos. 36-37.

2

Dismiss"). For the reasons set forth in Plaintiff's Oppositions, both Motions to Dismiss must be denied.

<u>STATEMENT OF FACTS</u>

Plaintiff Graduation Solutions is a Nevada limited liability company with a principal place of business in Connecticut. (*See* Sec. Am. Compl. ¶ 7.) Plaintiff is a leader in design, marketing, and on-line sales of premium graduation apparel and accessories. (*Id* at ¶ 8.) At a substantial cost, Plaintiff created the Graduation Solutions website (the "GS Website") to promote and sell its goods. (*Id.*) As set forth in detail in its Second Amended Complaint, the GS Website contains original works of authorship, including, without limitation, its graphic designs, photographs, and website design have been registered with the United States Copyright Office. (*Id.*)

As alleged in the Second Amended Complaint, Acadima is a Texas Limited Liability Company with a principal place of business located at 14241 Dallas Parkway, Suite 650, Dallas, TX 75254. (*Id.*, ¶ 11.) Acadima owns and operates the website that is located at https://Acadima.com, (the "Acadima Website") and offers apparel and accessories for graduations in the same manner as Plaintiff. (*Id.*) Loukaides ("Loukaides") is the dominant and active force behind Acadima and its various websites. (*Id.*, ¶¶ 18-19.) According to the Texas Secretary of State, Loukaides is the sole managing member and owner of Acadima. (*Id.*, ¶¶ 14-15, 71.) Additionally, Loukaides is identified as the registrant contact, the administrative contact, and the technical contact for the Acadima Website. (*Id.*, ¶ 16.)

As alleged in Plaintiff's Amended Complaint and, as demonstrated by the side-by-side screen shots of content and language therein, Defendants intentionally copied original works of authorship from the Graduation Solutions Website in order to promote its company and engage in interstate commerce. (*Id.*, ¶¶ 51-70).   There is also no question that Defendants' websites which contain the infringing material target and sell to residents of Connecticut.  As described in the Complaint, the Acadima Website provides "Domestic Shipping Rates" for orders placed within the United States including, but not limited to, customers from Connecticut.   (*Id.*, ¶ 39.) Defendants' Website also allows users to "search graduation products from your city" and provides a  allowing users to select "Connecticut."  The users then can select through GradShop's drop down menu one of the following cities in Connecticut: Bridgeport, New Haven, Hartford, Stamford and/or Waterbury.  (*Id.*, ¶ 40.) Furthermore, on the "Product Samples" page of the Acadima Website, potential customers can request "Product Samples," a "Free Planning Kit," and a "Free Graduation E-Book." (*Id.*, ¶ 39.)  To Request a "Planning Kit," customers must enter their address.  (*Id.*)  The site allows customers to "Select a State or Province" through a drop down menu that includes "Connecticut." (*Id.*, 40.)

Additionally, the Second Amended Complaint alleges numerous contacts that Loukaides had with the Chief Executive Officer of Graduation Solutions, Matthew Gordon, and other employees of Plaintiff located in Connecticut by telephone and electronic mail. (*See Sec. Am. Compl.*, ¶¶ 45-

50.) Loukaides' contacts with Mr. Gordon and his employees were specifically to discuss their mutual business of selling graduation gowns and other school regalia through their respective websites. (*Id.*) Incredibly, in one email to Mr. Gordon, Loukaides suggests that they join forces to close down a manufacturer's websites or set up a "site similar to theirs so we can complete on pricing." (*Id.*, ¶ 50.) This email is critical proof of Loukaides' intent to copy competitor websites in order to unfairly compete against them, which is exactly the basis for this lawsuit. (*Id.*)

## PROCEDURAL HISTORY

On August 9, 2017, Plaintiff filed a Complaint against Acadima and Alexander Loukaides. (*See* ECF Doc. No. 1.) That same day, the Court issued an Order on Pretrial Deadlines. (*See* ECF Doc. No. 3.) On September 29, 2017, counsel for Defendants Acadima and Loukaides entered an appearance. (*See* ECF Doc. No. 12.)

On September 30, 2017, Defendants filed a Motion to Dismiss. (*See* ECF Doc No. 15.) On October 27, 2017, Plaintiff filed an Amended Complaint. Plaintiff's Amended Complaint included additional allegations regarding jurisdiction in response to Defendants' Motion to Dismiss. (*See* ECF Doc No. 19.) On November 16, 2017, Defendants filed a Motion to Dismiss the Amended Complaint. (*See* ECF Doc. No. 21.) Shortly thereafter, on November 20, 2017, Acadima filed a Voluntary Petition for Chapter 7 bankruptcy in the Northern District of Texas. (A copy of Acadima's Voluntary

Petition for Chapter 7 Bankruptcy is annexed hereto as Exhibit A.)[3]  As set forth therein, Acadima alleges to have $81,575.00 in liabilities and only $12,144.00 in assets.  (*Id.*)  However, as further set forth therein, Acadima earned gross revenues of $1,315,356.00 in 2016 and $1,122,872.00 so far for 2017.  (*Id.*)  Also, despite filing for Chapter 7 bankruptcy, Acadima is still doing business online and therefore generating revenue.  (*See* https://www.acadima.com/.)

On November 21, 2017, Defendants filed a Notice of Bankruptcy in this action.  (*See* ECF Doc. No. 24.)  In the Notice, Defendants erroneously contended that the entire action against both Defendants Acadima and Loukaides had been stayed pursuant to 11 U.S.C. § 362 even though only Acadima filed for Chapter 7 bankruptcy.  On December 7, 2017, Plaintiff filed an opposition to Defendant Loukaides' Motion to Dismiss only.  (*See* ECF Doc. No. 25.)

On January 3, 2018, the Court issued a Ruling and Order staying the action as to Acadima only pursuant to 11 U.S.C. § 362(a) and upon consent by the parties.  (*See* ECF Doc. No. 27.)  The Court declined to stay the action against Loukaides on the ground that he failed to allege facts or provide evidence indicating "'a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.'"  (*Id.*) (*citing Queenie, Ltd. v. Nygard Int'l*, 321 F.2d 282, 287 (2d Cir. 2003); *Franco v. Ideal*

---

[3]  As set forth in the case *Costello v. Wells Fargo Bank Nat'l Assoc.*, No. 16-cv-1706, 2017 WL 3262157, at *6 (July 31, 2017), the Court may take judicial notice of documents filed in another litigation.

6

*Mortg. Bankers, Ltd.*, No. 07-CV-3956(JS)(SKT), slip op. at 2 (E.D.N.Y. Nov. 9, 2017); *Pavers & Road Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48 (Bankr. E.D.N.Y. 2015); *Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC,* No. 16 Civ. 6805 (JSR), slip op. at 9 (S.D.N.Y. Nov. 22, 2017).)

In the Ruling and Order, the Court also found that Plaintiff's Amended Complaint did not allege facts sufficient to establish alter ego liability. (*See* ECF Doc. No. 27, pp. 1-2.) The Court therefore ordered Plaintiff to file a Second Amended Complaint on or before January 18, 2018 alleging facts sufficient to establish Defendant Loukaides' liability based on alter ego theory under Texas law. (*Id.*, p. 2.) The Court further held "Defendant may then refile a Motion to Dismiss on or before February 1, 2018 addressing personal jurisdiction as well as whether the automatic stay extends to Defendant Loukaides." (*Id.*)

Plaintiff filed a Second Amended Complaint. (*See* ECF Doc. No. 31.) At the same time, Plaintiff filed a Notice of Dismissal of the Bankruptcy Case filed by Acadima. (*See* ECF Doc. No. 32.) As set forth therein, the Acadima Bankruptcy was closed on January 22, 2018. (*Id.*) Plaintiff stated that "[s]ince the Bankruptcy Case has been closed, the automatic stay . . . is no longer in effect and should be lifted." (*Id.*) On February 6, 2018, the Court issued an Order stating that "[i]f Defendants oppose lifting the stay, they shall respond to the Notice on or before 02/20/2018 with a legal and factual basis as to why the stay should not be lifted." (ECF Doc. No. 33.) Defendants

Acadima and Loukaides filed separate Motions to Dismiss the Second
Amended Complaint on February 20, 2018. (*See* ECF Doc Nos. 34-37.)

In his Motion to Dismiss, Defendant Loukaides incorrectly claims that
Graduation Solutions "elected not to contest any issue raised by Acadima
LLC's Chapter 7 bankruptcy." (Def. Mem. at p. 2.)   By this statement,
Loukaides reveals a profound misunderstanding of the effect of its Chapter 7
proceeding.

Inasmuch as no proof of claim deadline was ever set in Acadima's
Chapter 7 case (*see In re Acadima LLC,* United States Bankruptcy Court for
the Northern District of Texas, Case No. 17-34346, ECF No. 3), it was
unnecessary for Graduation Solutions to file any claim against Acadima in its
Chapter 7 proceeding, and given the reality that artificial entities such as
Acadima do not receive a bankruptcy discharge, 11 U.S.C. §727(a)(1),
Acadima's bankruptcy proceeding had absolutely no effect on the claims
asserted in this proceeding.  Thus, there were no issues to contest other than
Acadima's unlawful operation of its business after commencing its Chapter 7
proceeding,[4] and Graduation Solutions specifically advised Acadima's
Chapter 7 Trustee of that fact. (*See infra.* p. 7.)

In any event, on February 15, 2018, Graduation Solutions sent a letter
to the Chapter 7 Trustee advising him of this action and that Acadima, while

---

[4]      Only the Chapter 7 trustee in a Chapter 7 case may operate the
debtor's business during the Chapter 7 case, and even then, only after

controlled by Loukaides, directly copied Graduation Solutions' copyrighted material and trade dress in order to unfairly compete with Graduation Solutions and divert revenue from it to Acadima and that Defendants' conduct is ongoing.  (A copy of the Letter from Laura-Michelle Horgan, Esq. to Trustee Scott M. Seidel is annexed hereto as Exhibit B.)[5]

Graduation Solutions further stated in the letter that it believes that Acadima filed for Chapter 7 bankruptcy so that it could continue its misconduct and avoid judgment against it in the Federal Action.  (*Id.*, p. 2) It further stated that it believes that the representations made to the Trustee by Frank Seviane at the Meeting of Creditors were false in that: (i) he represented that Acadima was no longer operating when in fact it is still functional and selling merchandise to customers and Plaintiff submitted proof of this to the Trustee (*id.*); and (ii) that there does not appear to have been any real transfer of ownership of Acadima from Mr. Loukaides to Mr. Seviane and, even if there was, it has the earmarks of a fraudulent conveyance since Mr. Seviane testified at the Creditors' Meeting that he paid a mere $10,000.00 to purchase the company in March of 2016 (which Loukaides admits in his Motion to Dismiss at p. 2) but according to Acadima's Bankruptcy Petition, the company had gross receipts of $1,315,356.00 in 2016 and $1,122,872.00 so far for 2017 which amounts to a total of $2,438,228.00 in revenue through November 20, 2017 (*id.* at pp. 2-3).

---

receiving authority from the Bankruptcy Court to do so.  (*See* 11 U.S.C. § 721.)

Notably, in the letter, Plaintiff Graduation Solutions requests that the Trustee reopen Acadima's Chapter 7 case, which was closed on January 22, 2018,and conduct or arrange for a forensic examination as to what happened to the nearly $2.5 million in receipts that Acadima had in 2016 and 2017. (*Id.* at p. 3.) Plaintiff is presently in communications with the Chapter 7 Trustee about this issue.

For the reasons set forth herein and in Plaintiff's Opposition to Acadima's Motion to Dismiss, Defendants' Motions to Dismiss should be denied.

## ARGUMENT

### I.

### THERE IS NO BASIS FOR DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT LOUKAIDES

Defendant Loukaides does not dispute the sufficiency of any of the claims for copyright infringement, unfair competition, and unjust enrichment alleged against him as the alter ego of Acadima in the Second Amended Complaint. (Def. Mem., pp. 5-6.) Rather, he argues that he is immune from any and all claims as the alter ego of Acadima because he claims that he "has not owned membership interests in Acadima LLC since 2016" and therefore even if the corporate veil were to be pierced, he could not be held liable because he is no longer an owner. (Defs. Mem., p. 5-6.)

---

[5]    Again, the Court may take judicial notice of Plaintiff's letter. (*See Costello*, 2017 WL 3262157, at *6 (July 31, 2017).)

There is no basis for dismissal for failure to state a claim against Defendant Loukaides simply because he claims to no longer have an interest in Acadima.[6]   Indeed, if it were possible for an individual to avoid alter ego liability for his or her company's actions by simply transferring the assets of the company to someone else, any person could cause a company to commit fraud and then sell it immediately thereafter to try to avoid personal liability for the wrongdoing.   This would make it virtually impossible to hold any corporate wrongdoer liable for misconduct.   Certainly, this is not the law. (*See, e.g. Love v. State of Texas*, 972 S.W.2d 114 (Tex. App. - Houston 1998).) As stated in the *Love* case:

> As we have noted, Texas law does not require an individual to be a shareholder at the time liability is assessed if there has been a sham to perpetrate a fraud.  As often is the case, the corporation will have been dissolved, declared bankrupt, or sold by the time the case is tried and liability assessed against the individual.  In this case, there is no dispute that Love and Welch were shareholders, officers, and directors at least until December 14, 1986.   They cannot escape liability merely because they were no longer in those positions when the wells were plugged or the final orders entered.

---

[6]     It is well to note that even if Defendant Loukaides no longer owns Acadima as he claims, he would still be liable for any of his own misconduct or as an alter ego of Acadima through to 2016.  Plaintiff has alleged claims based upon ongoing copyright infringement, unfair competition, and unjust enrichment by Defendants.  (*See, e.g.*, Sec. Am. Compl., ¶¶ 47-50, 84-88.)  Contrary to his argument, Defendant Loukaides did not relieve himself of any liability for misconduct that occurred during the time that he owned the company simply by selling his interest in it. However, as alleged in Plaintiff's Second Amended Complaint, Plaintiff disputes that any transfer of interest occurred in 2016 and that the purported "sale" of Acadima to an individual named Frank Seviane was an attempt by Defendants to avoid a judgment against Acadima and Loukaides is still the owner and operator of Acadima and its related websites. (*Id.*, ¶¶ 89-121.)

(*Id.* at 117) (*citing Huff v. Harrell*, 941 S.W.2d 230, 234 (Tex. App. – Corpus Christi-Edinburg 1997); *Seaside Indus., Inc. v. Cooper*, 766 S.W.2d 566, 568-69 (Tex. App. – Dallas 1989).

Here, Plaintiff's allegation that Defendant Loukaides fraudulently transferred the assets of Acadima in order to avoid any judgment that Plaintiff could obtain against it after Plaintiff confronted Loudaides about the copyright infringement is the crux of its alter ego claim. (Am. Compl., ¶¶ 89 – 121.)   Under Texas law, this allegation is sufficient to establish alter ego liability on the part of Loukaides. (*Id.*) (*See also   Tryco Enterprises, Inc. v. Robinson,* 390 S.W.3d 497, 507 (Tex. App. - Houston 2012) (holding defendants' use of corporate forms as a "mere conduit of fraud to avoid paying the judgment awarded to him against Tryco" satisfied requirements of Texas law for alter ego liability).   Defendant Loukaides cannot be absolved from fraudulently conveying interests in Acadima to avoid judgment because he no longer has an interest in the company.   That is the entire point of Plaintiff's alter ego claim, i.e. that Loukaides' purported transfer of interests in Acadima was a sham to try to avoid personal liability for his company's torts. (*See, e.g.*, Sec. Am. Compl., ¶¶ 47-50, 84-88.)

Furthermore, Loukaides offers no proof to support his claim that he no longer has any ownership interest in Acadima as of 2016. However, even if he had submitted such proof, it could not be considered on his Motion to Dismiss. (*See McCullough v. World Wrestling Entertainment, Inc.,* 172 F.Supp.3d 528, 543 (D. Conn. 2016) ("In general, the Court's review on a

motion to dismiss pursuant to Rule 12(b)(6) 'is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'") (*citing McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).)   Indeed, the issue of whether he did or did not fraudulently transfer his interests in Acadima in 2016 is not properly considered on a motion to dismiss.   On a motion to dismiss, the allegations in Plaintiff's Amended Complaint must be deemed true.  (*See McCarthy*, 482 F.3d at 191 ([i]n reviewing a moton to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we accept as true all factual statements alleged in the complaint and draft all reasonable inferences in favor of the non-moving party."  (*citing In re Tamoxifen Citrate Antitrust Litigation*, 429 F.3d 370, 384 (2d Cir. 2005), *amended by* 466 F.3d 187, 200 (2d Cir. 2006).)

Here, Plaintiff alleges in its Amended Complaint that Loukaides is the owner of Acadima (Am. Compl., ¶¶14, 71); the sole managing member of Acadima (*id.*, ¶ 15); and the registrant contact, the administrative contact and technical contact for the Acadima Website (*id.*, ¶ 16).  Plaintiff further alleges that he is "a dominant and active force of Acadima and Acadima's activities in conjunction with the development and maintenance of the Acadima Website," as well as numerous other websites.  (*Id.*, ¶¶ 18-1, 22, 26, 30, 32, 34, and 36.) It is well to note that Plaintiff's allegations in this

regard are based upon public records, including filings with the Texas Secretary of State stating that Loukaides is the "'Owner'" of Acadima. (*Id.*)

AdditionallyPlaintiff has alleged that "defendant Loukaides is the alter ego of Acadima and Defendant's Websites" and that "Acadima and all Defendants' Websites all appear to be exclusively controlled by Loukaides and appear to be mere instrumentalities of their sole managing member and owner, Loukaides." (*Id.*, ¶¶ 73.) It is also well to note that Plaintiff's Complaint alleges specific conversations that Loukaides had with Plaintiff's employee in which he himself explicitly said " . . . I am pleased that you had the opportunity to visit <u>our sites</u> and admire <u>our work</u>." (*Id.*, ¶ 85.) (Emphasis added.) Plaintiff also alleges that, contrary to their representations to the Trustee in the Chapter 7 Bankruptcy Proceeding, Acadima and Loukaides' other websites have been operating since it filed for Chapter 7 bankruptcy on November 20, 2017 through to the present. (Sec. Am. Compl., ¶¶ 114-15.)

Therefore, Loukaides' unsupported claim to no longer have any ownership interest in Acadima as of 2016 is belied by his own communications with Plaintiff in 2016 which are alleged in detail in the Complaint. Again, Plaintiff's allegations (and not Loukaides' unsupported claim) must be taken as true on a motion to dismiss. *(See McCullough,* 172 F.Supp.3d at 543 (*citing McCarthy*, 482 F.3d at 191).)

II.

14

### PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO HOLD DEFENDANT LOUKAIDES PERSONALLY LIABLE FOR THE TORTIOUS MISCONDUCT <u>ALLEGED IN THE SECOND AMENDED COMPLAINT</u>

Defendant Loukaides completely misstates Texas law in support of his argument that Plaintiff has failed to allege sufficient facts to pierce the corporate veil. (Defs. Mem. at pp. 7-9.)  Indeed, as set forth below, it is not even necessary to pierce the corporate veil to hold Loukaides liable for tortious conduct that he knowingly participated in under Texas law.

In his Motion to Dismiss, Loukaides cites Tex. Bus. Orgs. Code § 21.223(b) and argues that the corporate veil may be pierced <u>only</u> if plaintiff shows that the defendant shareholder "'caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder.'" (Def. Mem. at p. 8)  (*quoting* Tex. Bus. Orgs. Code § 21.223(b).)  Loukaides argues that Plaintiff's claims against him as the alter ego of Acadima fail because Plaintiff has not sufficiently alleged "actual fraud."  (*Id.*) However, as made clear by the Court in the *In re Williams* case cited by Loukaides himself, this additional requirement applies solely to breach of contract cases.   The *Williams* Court stated "it is appropriate to distinguish between contract suits and fraud suits (for purposes of finding a corporate officer personally liable)." (*Kwasneski v. Williams (In re Williams, Adv.*, 10-05077, 2011 WL 240466, at \*3, 2011 Bankr. LEXIS, at \*7 (Bankr. W.D. Tex. Jan. 24, 2011).  As made clear by the *Williams* Court, there is an additional requirement in <u>breach of contract</u>

15

cases only, codified by Tex. Bus. Corp. Act. § 21.223.  Specifically, the Court

in *Williams* states:

> Under Texas law, the corporate veil may be pierced where '(1)
> the corporation is the alter ego of its owners and/or
> shareholders; (2) the corporation is used for illegal purposes;
> and (3) the corporation is used as a sham to perpetrate a fraud.'
> *Rimade Ltd. v. Hubbard Enters.*, 388 F.3d 138, 143 (5th Cir. 2004).
> However, section 21.223 [of] the Texas Business Organizations
> Code provides an additional requirement when a litigant seeks
> to pierce the corporate veil *for breach of contract:*  Section
> 21.223(b) provides that in a breach of contract case, 'the veil
> may be pierced where the defendant shareholder caused the
> corporation to be used for the purpose of perpetrating and did
> perpetrate an actual fraud on the obligee primarily for the direct
> personal benefit of the holder. *Id.* (quoting Tex. Bus. Corp. Act
> art. 2.21(A)(2), now codified at Tex. Bus. Org. Code § 21.223).
> Thus, *in a breach of contract case,* the veil may be pierced under
> the traditional theories listed above, but 'these doctrines must
> be supported by facts showing ''actual fraud'. *JNS Aviation, Inc.*
> *v. Nick Corp.*, 418 B.R. 898, 907 (N.D. Tex 2009) (quoting *Farr v.*
> *Sun Word Savings Association*, 810 S.W.2d 294, 296 (Tex. App.
> El Paso 1991, no writ)).

(*Id.* at *3.)

This is not a breach of contract case.  Plaintiff has solely alleged tort

claims for copyright infringement, unfair competition, and unjust enrichment

by Defendants.  (Sec. Am. Compl., ¶¶ 122-187.)  Loukaides, in fact, concedes

this in his Motion to Dismiss, stating "Plaintiff is not asserting contract-

related claims . . ."  (Def. Mem. at p. 9.)  Thus, the law cited by Defendant

Loukaides to argue that Plaintiff must make a showing of actual fraud on

plaintiff to piece the corporate veil has no applicability to this matter

whatsoever.  A showing of "actual fraud" applies only to breach of contract

cases.  (*In re Williams, Adv.*, 10-05077, 2011 WL 240466, at *3.)

In the *Williams* case, the Court rejected this precise argument and cited to the case of *Kingston v. Helm*, 82 S.W.3d 755 (Ct. of App. 2002) for the proposition that the additional requirement of a showing of "actual fraud" in breach of contract cases must be distinguished from "situations where a party seeks to hold a corporate officer personally liable for misrepresentation/fraud" and quoting *Kingston* as stating "'[b]ecause this case does not involve causes of action seeking to hold a corporate officer or agent personally liable for causing the corporation to breach a contract with a third party, we do not believe *ACS v. McGlaughlin* is particularly instructive in resolving the issue of whether Helm may be held personally liable for his own torts." (*In re Williams, Adv.*, 10-05077, 2011 WL 240466, at *3) (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426 (Tex. 1997).)

Furthermore, while Loukaides seeks to convince this Court that "Texas has some of the strictest statutes against piercing the corporate veil in the country," in fact the opposite is true. It is well-settled law in Texas that:

> A corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation. It is not necessary that the 'corporate veil' be pierced in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing. (*Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532 (Ct. of App. 1989). While this legal principal remains intact, a series of cases in the 1980s have left the law in this particular area a bit muddled.

(*Kingston*, 82 S.W.3d at 758.) (*See also Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 32 (TX Ct of App. 2003) ("[t]he longstanding rule in Texas is that 'a corporation's employee is personally liable for tortious acts which he directs

or participates in during his employment.'" (*citing Kingston,* 82 S.W.3d at 758; *Shapolsky v. Brewton,* 56 S.W.3d 120, 133 (Tex. App. Houston [14[th] Dist.] 2001, no pet.)

Thus, as a matter of Texas law, it is not necessary to pierce the corporate veil to hold Defendant Loukaides liable for his own tortious conduct. (*Id.*) Therefore, Loukaides' entire argument that Plaintiff has not alleged sufficient facts to pierce the corporate veil is completely irrelevant. (Def. Mem. at pp. 7-8.) In Texas, Loukaides can be held personally liable for any wrongdoing in which he knowingly participated. (*Id.*) As alleged in Plaintiff's Complaint, Loukaides is the sole owner and operator of Acadima and its various websites. (Sec. Am. Compl., ¶¶ 14-15, 71.) Therefore, as sole owner and operator of Acadima and its related websites, Loukaides can be held personally liable for all of the tortious misconduct of Acadima that is alleged in the Second Amended Complaint under Texas law. (*See Tabacinic v. Frazier,* 372 S.W.3d 658, 669 (TX Ct. of Appeals 2012) (*stating* "[a] corporate officer may not escape liability where he had direct, personal participation in the wrongdoing, as to be the 'guiding spirit of behind the wrongful conduct' or the 'central figure in the challenged corporate activity'") (*citing Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 173 (5th Cir. 1985).)

Again, it is well to note again that Defendant Loukaides has not disputed the sufficiency of any of Plaintiff's claims for copyright infringement (Sec. Am Compl., ¶¶ 122-144); trade dress infringement and unfair competition under Lanham Act (*id.*, ¶¶ 145-159); violation of Connecticut

Unfair Trade Practices (*id.,* ¶¶ 170-177); violation of Connecticut common law of unfair competition (*id.,* ¶¶ 178-82); and unjust enrichment (*id.,* ¶¶ 183-187). Pursuant to the foregoing law, he can be held personally liable for his tortious conduct.

## III.

## PLAINTIFF HAS SUFFICIENTLY ALLEGED PERSONAL JURSIDCTION OVER DEFENDANT LOUKAIDES

At the pleading stage—and prior to discovery—a plaintiff need only make a *prima facie* showing that jurisdiction exists. *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.,* 722 F.ed 81, 84-85 (2d Cir. 2013); *see also Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 167-68 (2d Cir. 2015) ("'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'") (*quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir. 2013)). "It is well established that in ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." *(See McCullough,* 172 F.Supp.3d at 543 (*citing McCarthy,* 482 F.3d at 191).)

In its Second Amended Complaint, Plaintiff sufficiently alleges personal jurisdiction over Defendant Loukaides.  Connecticut's long-arm statute states in relevant part that Connecticut has jurisdiction over any

nonresident individual who in person or through an agent: (1) transacts any business within the state; (2) commits a tortious act within the state; or (3) commits a tortious act outside the state causing injury to person or property within the state, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Connecticut, or (B) expects or reasonably expects the act to have consequences in the state and derives substantial revenue from interstate or international commerce. (*See* Conn. Gen. Stat. §52-59(b).)

Here, Plaintiff has sufficiently alleged that Defendant Loukaides personally committed a tortious act within the state (*id.,* subsection (a)(2)) and that he transacts business in Connecticut (*id.,* subsection (a)(3). Therefore, Plaintiff has made a *prima facie* case that there is a basis for personal jurisdiction over Loukaides.

### A.  *Plaintiff Has Sufficiently Alleged that Defendant Loukaides Committed Tortious Acts Causing Injury to Graduation Solutions in Connecticut*

Plaintiff sufficiently alleges personal jurisdiction over Defendant Loukaides pursuant to Conn. Gen. Stat. §52-59(b)(a)(2) because Plaintiff has alleged that Loukaides committed several tortious acts outside Connecticut causing injury to person or property within Connecticut.

In order to invoke jurisdiction based upon a tortious act, "only a single act of tortious conduct need be shown." *Rios v. Fergusan*, 51 Conn. Supp. 212 (Sup. Ct. of Conn. 2008) (*citing SGI Partners v. Addison Design Company,* Superior Court, judicial district of Stamford/Norwalk at Stamford,

Docket No. 140369 (April 12, 1995) (Lewis, J.). Furthermore, "the scope of the inquiry is limited to where the acts were committed and not whether they were tortious. This does not become the type of case where the question of jurisdiction is dependent on a decision of the merits." *Rios*, 51 Conn. Supp. at 218 (*citing Olson v. Accessory Control & Equipment,* Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 525839 (April 13, 1995) (Corradino, J., 14 Conn. L. Rptr. 82) citing *Southern New England Distributing Corp. v. Berkeley Finance Corp.,* 30 FRD 43 (D.Conn.1962).

Among other things, Plaintiff has alleged Loukaides personally communicated with Plaintiff's CEO, Matthew Gordon, in Connecticut on numerous occasions by both telephone and electronically. (*See* Sec. Am. Compl., ¶¶ 46-50.) In an email sent by Defendant Loukaides to Plaintiff's CEO in Connecticut, Loukaides proposes that he and Mr. Gordon's company in Connecticut join forces to eliminate a Chinese competitor or "put up a site similar to theirs so we can compete on pricing." (*Id.,* ¶¶ 48-49.) Of course, the copying of a website to unfairly compete is precisely what Loukaides appears to have done in this case to a Connecticut company, Graduation Solutions. Plaintiff claims Defendant Loukaides purposefully, actively and individually solicited the assistance of Mr. Gordon and his company in Connecticut to assist him in a scheme to unfairly compete with another business.

Plaintiff also cites a number of emails in its Amended Complaint in which Loukaides communicated directly with Plaintiff and its employees in Connecticut regarding their respective websites and his own copying of Plaintiff's website. (*Id.*, ¶¶ 83-88.)  Indeed, after these communications, Loukaides removed the infringing material from Defendants' websites. (*Id.*). Plaintiff also specifically cites email communications between Loukaides and Plaintiff's employee, Kristoff Albanese in which Loukaides tries to poach Mr. Albanese from Graduation Solutions. (*Id.*, ¶¶ 87-88.)  All of these communications constitute instances in which Loukaides personally transacted business within Connecticut.

It is well to note that even a single one of these communications constitutes a tortious act under the Connecticut long-arm statute for the purposes of personal jurisdiction.  Several Connecticut courts have held that a nonresident "commits a tortious act within the state" for purposes of § 52–59b(a)(2) by sending a communication whose content may be considered tortious directly into Connecticut. *Rios v. Fergusan*, 51 Conn. Supp. 212 (Sup. Ct. of Conn. 2008) (*citing Horniatko v. Riverfront Associates, LLC,* Superior Court, judicial district of Hartford, Docket No. CV–04–4000332, 2005 WL 1671543 (June 21, 2005) (*Shapiro, J.*) (39 Conn. L. Rptr. 566) (allegation that defendants made solicitation telephone calls to plaintiffs in Connecticut satisfies § 52–59[a][2] ); *Doe One v. Oliver,* Superior Court, judicial district of Waterbury, Docket No. CV–99–0151679, 2003 WL 21235402 (May 19, 2003) (*Dubay, J.*) (34 Conn. L. Rptr. 634)

(allegation that a defendant sent e-mail containing offensive statements to recipients in Connecticut satisfies § 52–59b[a][2] ); *Oppenheim v. Erwin*, Superior Court, judicial district of New Haven, Docket No. CV–00–0441611, 2001 WL 419236 (April 10, 2001) (*Licari, J.*) (29 Conn. L. Rptr. 562) (allegation defendants sent threatening letter to plaintiff in Connecticut satisfies § 52–59b[a][2 ).

Additionally, Plaintiff has sufficiently alleged that Defendant Loukaides committed tortious acts in Connecticut as an alter ego of his various websites such that an exercise of jurisdiction over him is warranted.  In its Amended Complaint, Plaintiff alleges that Loukaides is the alter ego of Acadima and various other websites which have infringed upon Plaintiff's copyrighted material and which are unfairly competing with Plaintiff.  In its Amended Complaint, Plaintiff specifically alleges that "Acadima and Defendants' Websites all appear to be exclusively controlled by Loukaides and appear to be exclusively controlled by Loukaides and appear to be mere instrumentalities of their sole managing member and owner, Loukaides." (*Id.*, ¶ 73.)  Plaintiff further alleges that "Defendant Loukaides, Defendant Acadima and Defendants' Websites under various "assumed names" are all operating as a single economic entity with funds commingled amongst Loukaides, Defendant Acadima and Defendants' Websites.  It appears that Acadima and Defendants' Websites are nothing more than a façade for defendant Loukaides." (*Id.*, ¶ 74.)  Therefore, this Court may exercise

23

personal jurisdiction over Loukaides individually as the alter ego of Acadima and his various websites.

It is worth noting that in considering whether Loukaides is the alter ego of Acadima, it is well-established law that the exercise of personal jurisdiction over an alleged alter ego requires application of a "less stringent standard" than necessary to pierce the corporate veil for purposes of liability. *In re Platinum and Palladium Antitrust Litigation*, No. 1:14-cv-9391-GHW, 2017 WL 1169626, at * 47 (S.D.N.Y. Mar. 28, 2017) (*quoting Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 WL 2283284, at * 7 (S.D.N.Y. Nov. 25, 2003).; *see also Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion") (*citing Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56 (2d Cir. 1981); *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980), cert. denied, —- U.S. ——, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Data Disc, Inc. v. Systems Technology Associa*tes, 557 F.2d 1280, 1285 (9th Cir. 1977).)  Therefore, the Court should consider Plaintiff's allegations that Loukaides is the sole managing member and owner of Acadima (Am. Compl., ¶73) and that his website under various "assumed names" are all operating as a single economic entity with funds commingled amongst Loukaides, Defendant Acadima and Defendants' Websites (*id*, ¶ 74) as

24

sufficient to establish that Loukaides is the alter ego of Acadima at the pleading stage of this case.

### B. Plaintiff Has Sufficiently Alleged that Defendant Loukaides Transacts Business in Connecticut

Plaintiff has sufficiently alleged that Defendant Loukaides transacts business in Connecticut such that an exercise of jurisdiction over him personally is warranted by Conn. Gen. Stat . §52-59(b)(a)(1). Section 52-59b(a)(1) allows courts to exercise personal jurisdiction over a foreign person or entity that "[t]ransacts any business within the state." (*Nadler v. Grayson Construction Co.*, No. CV020190015S, 2003 WL 1963158, at * 5 (Sup. Ct. of Conn., Stamford-Norwalk, April 15, 2003).) The Supreme Court has "'construed [the phrase "transacts any business"] to embrace a single purposeful business transaction.'" (*Id., quoting Rosenblit v. Danaher*, 206 Conn. 125, 138 (1988). )

Here, Plaintiff alleges that Loukaides individually transacted business in Connecticut on multiple occasions during the course of the last several years. Plaintiff cites specific communications that Loukaides had with Plaintiff's CEO, Matthew Gordon, in Connecticut on numerous occasions by both telephone and electronically. (*See* Am. Compl., ¶¶ 46-50.) Indeed, Defendant Loukaides suggests in one electronic communication that "the two of [them] jump on a the phone and have a chat and see[] if there are any type of business possibilities there may be between us . . ." (*Id.*, ¶ 47.)

In another example, in an email sent by Defendant Loukaides to Plaintiff's CEO in Connecticut, Loukaides proposes that he and Mr. Gordon's

company in Connecticut join forces to eliminate a Chinese competitor or "put up a site similar to theirs so we can compete on pricing." (*Id.*, ¶¶ 48-49.)   Of course, the copying of a website to unfairly compete is precisely what Loukaides has done in this case to a Connecticut company, Graduation Solutions.   Accordingly, Plaintiff has alleged that Defendant Loukaides purposefully, actively and individually solicited the assistance of Mr. Gordon and his company in Connecticut to assist him in a scheme to unfairly compete with another business.

Plaintiff also cites a number of emails in its Amended Complaint in which Loukaides communicated directly with Plaintiff and its employees in Connecticut regarding their respective websites which are at issue in this case in 2016 - 2017. (*Id.*, ¶¶ 83-88.)   Plaintiff also specifically cites email communications between Loukaides and Plaintiff's employee, Kristoff Albanese in which Loukaies tries to poach Mr. Albanese from Graduation Solutions. (*Id.*, ¶¶ 87-88.)  All of these communications constitute instances in which Loukaides personally transacted business within Connecticut. Additionally, Plaintiff has sufficiently alleged that Defendant Loukaides personally transacted business in Connecticut as an alter ego of his various websites such that an exercise of jurisdiction over him is warranted by C.G.S.A. §52-59(b)(a)(1).   Unquestionably, Loukaides' websites are doing business in Connecticut in that they sell goods to customers in Connecticut and target customers in Connecticut through marketing of the websites. (*See* Am. Compl., ¶¶ 38-44.)  Indeed, one of Loukaides' websites even has a

special drop-down menu for customers in Connecticut allowing them to select one of the following cities within the state: Bridgeport, New Haven, Hartford, Stamford and/or Waterbury. (*Id.*, ¶ 40.) [7]

Plaintiff further alleges in the Amended Complaint that Loukaides is the alter ego of Acadima and various other websites which have infringed upon Plaintiff's copyrighted material and which are unfairly competing with Plaintiff. In its Amended Complaint, Plaintiff specifically alleges that "Acadima and Defendants' Websites all appear to be exclusively controlled by Loukaides and appear to be exclusively controlled by Loukaides and appear to be mere instrumentalities of their sole managing member and owner, Loukaides." (*Id.*, ¶ 73.) Plaintiff further alleges that "Defendant Loukaides, Defendant Acadima and Defendants' Websites under various "assumed names" are all operating as a single economic entity with funds commingled amongst Loukaides, Defendant Acadima and Defendants' Websites. It appears that Acadima and Defendants' Websites are nothing more than a façade for defendant Loukaides." (*Id.*, ¶ 74.) Therefore, this Court may exercise personal jurisdiction over Loukaides individually as the alter ego of Acadima and his various websites since they transact business in Connecticut.

### C. An Exercise of Personal Jurisdiction Over Loukaides by This Court Does Not Offend Constitutional Due Process

---

[7] Allegations that Loukaides and his websites target Connecticut consumers for sales and targeted Plaintiff's company in Connecticut for copyright infringement and unfair competition constitutes a sufficient basis for specific jurisdiction over Loukaides.

The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the reasonableness inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Id., at 524, 923 A.2d 638. "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. '[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *United States Trust Co. v. Bohart,* 197 Conn. at 34, 41, 495 A.2d 1034 (1985), quoting *225 *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Whether sufficient minimum contacts exist for a court to have jurisdiction is clearly dependent on the facts of each particular case." *Standard Tallow Corp. v. Jowdy,* 190 Conn. at 48, 52, 459 A.2d 503 (1983). "Once minimum contacts have been established, [t]he second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of the particular case." (Internal quotation marks omitted.) *Cogswell v. American Transit Ins. Co.,* supra, 282 Conn. at 525, 923 A.2d 638.

In this case, this Court can exercise personal jurisdiction over an out-of-state individual, Loukaides, without violating the principles of due process because he plainly directed his tortious and wrongful conduct squarely at Plaintiff, a company located in Connecticut. As set forth herein, there is an overall element of injustice and unfairness to the acts of defendant Loukaides' operation of Acadima and Defendants' Websites including, but not limited to, direct copying of Plaintiff's copyrighted material and trade dress and unfair competition as set forth above, which is purposefully intended to divert customers from Plaintiff's website, unfairly poach sales from Plaintiff and trade upon Plaintiff's goodwill. Surely, Loukaides knew that his wrongful conduct would cause harm to a company located in Connecticut. Moreover, it is in the state's interest in protecting companies such as Graduation Solutions from such conduct which causes direct and substantial financial harm to a company domiciled in Connecticut.

### D. At a Minimum, Plaintiff is Entitled to Jurisdictional Discovery and/or a Hearing on the Issue of Jurisdiction

Although Plaintiff respectfully submits that it has sufficiently alleged personal jurisdiction over Defendant Loukaides individually and as the alter ego of Acadima and various related websites, if there is any doubt, this Court should allow Plaintiff to supplement its opposition to Defendant Loukaides' Motion to Dismiss once it receives the jurisdictional discovery it has requested. (*See* Exs. D and E.) Alternatively, the Court may also order an evidentiary hearing on the issue of personal jurisdiction over Loukaides as

Acadima's alter ego. (*See Nadler,* No. CV020190015S, 2003 WL 1963158, at *

5.)

## CONCLUSION

For the reasons set forth herein, Defendant Loukaides' Motion to Dismiss the Amended Complaint should be denied in its entirety.


DATED:      Hartford, Connecticut
            March 13, 2018


                                        Respectfully Submitted,

                                        Graduation Solutions LLC

                                        By:
                                        */s/ Monte E. Frank*
                                        Monte E. Frank (ct13666)
                                        Nathaniel J. Gentile (ct28860)
                                        Pullman & Comley, LLC
                                        850 Main Street, P.O. Box 7006
                                        Bridgeport, CT 06601
                                        T: (203) 330-2240
                                        F: (203) 576-8888
                                        mfrank@pullcom.com
                                        ngentile@pullcom.com


                                        OF COUNSEL:
                                        Jonathan B. Nelson (*pro hac
                                        vice* motion forthcoming)
                                        Laura-Michelle Horgan (*pro
                                        hac vice* motion forthcoming)
                                        Dorf & Nelson, LLP
                                        555 Theodore Fremd Avenue
                                        Rye, NY 10580
                                        T: (914) 381-7600
                                        F: (914) 381-7608
                                        jnelson@dorflaw.com
                                        slocke@dorflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date above, the foregoing document was filed electronically with the Clerk of Court using CM/ECF system, and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ *Monte E. Frank*
Monte E. Frank