UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Graduation Solutions, LLC : | | |
|     Plaintiff, : | | |
| : | No. 3:17-CV-01342 (VLB) | |
| v. : | | |
| : | | |
| Acadima, LLC and : | July 31, 2018 | |
| Alexander Loukaides : | | |
|     Defendants. : | | |
| : | | |
| : | | |
| : | | |

**MEMORANDUM OF DECISION ON DEFENDANT, ALEXANDER LOUAKDIES', MOTION TO DISMISS [DKT. 36]**

I. Introduction

Plaintiff, Graduation Solutions, LLC ("Graduation Solutions" or "Plaintiff"), initiated this action asserting the following causes of action: (1) copyright infringement under 17 U.S.C. § 101, *et. seq.*; (2) trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) a violation of Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42–110a, *et seq.*; (5) a violation of Connecticut's common law prohibition against unfair competition; and (6) unjust enrichment. Before the Court is Defendant Alexander Loukaides' ("Loukaides") Motion to Dismiss for failure to state a claim and for lack of personal jurisdiction. For the following reasons, the Motion is DENIED.

II. Background

Graduation Solutions is a Nevada limited liability company with a principal place of business in Greenwich, Connecticut. [Dkt. 31(Second Am. Compl.) ¶ 7].

Plaintiff sells graduation apparel and accessories through its online website ("GS Website"), which includes original works of authorship that have been registered with the United States Copyright Office. *See id.* ¶¶ 7-8, 53-54. The GS Website contains notifications "that the copyrights, trade dress and/or other intellectual properties contained therein are owned, controlled and/or licensed by Plaintiff." *Id.* ¶ 52.

Defendant Acadima, LLC ("Acadima") is a Texas limited liability company with a principal place of business in Dallas, Texas. *See id.* ¶ 11. Acadima owns and operates a website ("Acadima Website"), which sells graduation apparel and accessories. *See id.* ¶ 11. Filings with the Texas Secretary of State show that Acadima was formed on October 26, 2015. *See id.* ¶ 13. Based on the Texas Secretary of State's database, Loukaides is the owner and sole managing member of Acadima. *See id.* ¶¶ 14-15. Loukaides is listed as the registrant contact, administrative contact, and technical support contact.[1] *See id.* ¶ 16. Loukaides has an address in Dallas and Richardson, Texas. *See id.* ¶ 17. He is listed as the registrant contact, administrative contact and technical support contact for five additional and similar websites, known as the following: "Gradshop Website," "Graduation Cap and Gown Website," "Graduation Apparel Website," "Churchgoers Website," and "Churchlings Website" (collectively,

---

[1] The Amended Complaint indicates that this information was provided from Whois.com, but it does not provide any explanation or details about the website.

"Loukaides' Websites").[2]  *See id.* ¶¶ 22, 26, 30, 32, 34, 36.  The Second Amended Complaint asserts Acadima is the owner and operator of Loukaides' Websites.[3]  *See id.* ¶¶ 23, 28, 31, 33, 35, 37.

The Acadima Website provides a toll-free number that customers can use when making a purchase.  *See id* ¶ 39.  In addition, customers can request samples directly from the Acadima Website.  *See id.*  The process of obtaining these samples requires the requestor to enter his/her address in provided text fields.  *See id.*  The requestor must select a State from a dropdown list; this list includes Connecticut.  *See id.*  Defendants also have sales representatives across the United States, some who are believed to conduct business in Connecticut.  *See id.* ¶ 43.  Defendants run and operate a Gradshop Facebook page, where customers throughout the country can make comments and lodge complaints.  *See id.* ¶ 44.

Plaintiff's Chief Executive Officer is Matthew Gordon ("Gordon"), who lives in Connecticut and worked in Connecticut and New York during the relevant time.  *See id.* ¶ 45.  On March 2, 2014, Loukaides messaged Gordon through LinkedIn "to see whether their two companies could do business together." *Id.* ¶ 47.  On March 10, 2014, Loukaides emailed Gordon to discuss working against Plaintiff's current manufacturer.  *See id.* ¶ 48-49.  Loukaides stated "if we can't find a way of

---

[2] Again, the Amended Complaint indicates that this information was provided from Whois.com, but it does not provide any explanation or details about the website.

[3] The Amended Complaint indicates that this information was provided from SSIShopper.com but it does not provide any explanation or details about the website.

getting [the manufacturer] to close down [its websites] it may be the case that we might just have to put up a site similar to theirs so we can compete on pricing." *Id.*

Plaintiff alleges that the Defendant intentionally copied language from the GS Website and placed that language on the Acadima Website. *See id.* ¶ 64. Plaintiff further alleges other elements from the GS Website were copied and used on the Acadima Website, Graduation Apparel Website, and the Gradshop Website. *See id.* ¶¶ 65-67. The Defendant's actions are believed to have caused and will continue to cause damages and irreparable harm to Plaintiff, such as past and future loss of goodwill and customer confusion. *See id.* ¶¶ 80-81.

On April 26, 2016, Plaintiff's employee, Kristoff Albanese ("Albanese"), contacted Loukaides by email alerting Loukaides that the Acadima Website is using Plaintiff's "branded images." *Id.* ¶ 83. Then on May 4, 2016, Albanese emailed Loukaides stating, in part, that "it appears that [Loukaides'] team removed the copyright materials." *Id.* ¶ 84. On January 18, 2017, after an email exchange between Loukaides and Albanese, Loukaides sent an email that stated, "Not sure I see the similarities but I am pleased that you had the opportunity to visit our sites and admire our work." *Id.* ¶ 85. On January 22, 2017, Loukaides said "[t]o be honest I don't really watch over the it side that much." *Id.* ¶ 86. From January 22, 2017 through May 17, 2017, Loukaides began sending Albanese several emails in an attempt to recruit him for employment. *See id.* ¶ 87-88.

Loukaides is purported to have transferred ownership of Acadima to Frank A. Seviane ("Seviane") in the Spring of 2016. *See id.* ¶ 101. On August 9, 2017,

Acadima filed for Chapter 7 bankruptcy under Title 11 of the United States Code. *See id.* ¶ 102. The filing was signed by Seviane and he appeared on behalf of Acadima at the meeting of creditors. *See id.* ¶¶ 103, 107. At the meeting of creditors, Seviane disclosed that Acadima generated nearly $2,500,000 in revenue up to the time of filing and that he purchased Acadima for $10,000. *See id.* ¶ 108. The Second Amended Complaint asserts this transfer of ownership was not made in exchange for fair consideration. *See id.* ¶ 109. When the Second Amended Complaint was filed, Acadima was still operating despite the Chapter 7 bankruptcy filing and the Loukaides' Websites were still misusing the Plaintiff's intellectual property. *See id.* ¶¶ 97, 114-15.

On January 10, 2018, Plaintiff received an unsolicited email from Anais Lu ("Lu")[4], which states, "Loukaides did indeed bankrupt Acadima LLC purposefully to avoid damages brought on by this lawsuit." *Id.* ¶ 99. The email from Lu also states that Loukaides has a home in Dallas, Texas and is currently residing in Irvine, California. *See id.* ¶ 99.

On February 20, 2018, Acadima by and through counsel filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedures 12(b)(6), which alleges the claims against Acadima are barred under the equitable mootness doctrine. *See* [Dkt. 35 (Acadima Mot. to Dismiss)]. The Court denied Acadima's Motion to

---

[4] Lu's connection to this case of personal knowledge of the information in the email is unknown at this time. However, the Court will construe all facts in the Amended Complaint as true for the purposes of this motion. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 118 (2d Cir. 2013) acknowledging on a 12(b)(6) motion to dismiss that a court is to accept the factual allegations as true); *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) (construing the pleadings and affidavits "in the light most favorable to plaintiffs, resolving all doubts in their favor" on a motion to dismiss for lack of personal jurisdiction).

Dismiss for failing to provide proper legal authority which could afford the requested relief. [Dkt. 44 (Order)].

Also on February 20, 2018, Loukaides by and through counsel filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedures 12(b)(2) and 12(b)(6) which the court considers now. [Dkt. 37 (Mot. to Dismiss)]. Loukaides' Motion first argues the complaint fails under Rule 12(b)(6) because (1) Loukaides is not an owner of Acadima and is not liable even if the corporate veil could be pierced, and (2) Plaintiff failed to allege sufficient facts to pierce the corporate veil. *See id.* In addition, Loukaides alleges the complaint fails under Rule 12(b)(2) because the court lacks a personal jurisdiction over him. *See id.*

### III. Standards of Review

#### A. *Personal Jurisdiction*

To successfully defeat a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The burden varies depending on the procedural posture of the case. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990); *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc.,* 312 F. Supp. 2d 247, 251 (D. Conn. 2004). A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a *prima facie* showing of personal jurisdiction. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018); *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83-84 (1st Cir. 1997); *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d

353, 355 (2d Cir. 2005). At this early stage, the plaintiff can make this "*prima facie* showing of personal jurisdiction through [its] own affidavits and supporting materials, and all affidavits and pleadings must be construed in the plaintiff['s] favor." *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 110 (D. Conn. 1998) (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

B. *Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) allows a case to be dismissed if the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can chose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 680). "At the second step, a court should determine whether the 'wellpleaded factual allegations', assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. 680). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review of a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in brining suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

IV. <u>Analysis</u>

A. *<u>Personal Jurisdiction</u>*

Loukaides states that Plaintiff has not alleged facts that would allow the Court to exercise personal jurisdiction over him. [Dkt. 37 (Mot. to Dismiss), 11]. The Amended Complaint asserts six causes of action against both Acadima and Loukaides. While the Amended Complaint generally asserts "claims against Loukaides both individually and as the alter ego of Acadima," [Dkt. 31 ¶ 1], the facts set forth in each cause of action do not differentiate between the Defendants' respective actions. The Court will thus first address personal jurisdiction as to Loukaides as the alter ego.

Acadima did not challenge personal jurisdiction in its own motion to dismiss, filed in response to the Second Amended Complaint, on which the Court has already ruled. *See* [Dkt. 34 (Acadima Mot. to Dismiss); Dkt. 44 (Order)]. At the time, Acadima was represented by the same counsel as Loukaides, yet it nonetheless elected not to join in this Motion. The Court also notes that Acadima filed a motion to dismiss for lack of personal jurisdiction in response to the initial complaint, which prompted Plaintiff to amend its pleadings. That Acadima elected not to renew its personal jurisdiction motion is telling.

In asserting that Loukaides is the alter ego of Acadima, Plaintiff in essence is arguing that the individual and the LLC are the same for purposes of personal jurisdiction. "It is [] well established that the exercise of personal jurisdiction over an alter ego . . . does not offend due process." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (plaintiff's allegations of an alter ego relationship between corporate entities were sufficient to overcome the 12(b)(2) motion to dismiss) (citing to *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009)); *see S.E.C. v. Montle*, 65 F. App'x 749, 752 (2d Cir. 2003) ("If personal jurisdiction exists over an individual, personal jurisdiction exists also over his or her corporate alter ego.") (citing to *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 142 (2d Cir. 1991)); *N. Tankers (Cyprus) Ltd. v. Backstrom*, 901 F. Supp. 72, 78 (D. Conn. 1995) ("The long-arm statute would not be reached because alter egos would be deemed present in the jurisdiction by the presence of the [defendants who do not contest personal jurisdiction]."); *TransFirst Grp., Inc. v. Magliarditi*,

237 F. Supp. 3d 444, 454 (N. D. Tex. 2017) ("[I]t is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not otherwise be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); *see generally Bauer-Pileco, Inc. v. Scheffler Northwest, Inc.*, No. H-16-2056, slip op. at 4 (S.D. Tex. Apr. 4, 2017) (regarding the corporate veil, "the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis."). Accordingly, personal jurisdiction is appropriate if there are sufficiently alleged facts to support a *prima facie* showing under the alter ego theory.

Acadima is a Texas limited liability company. [Dkt. 31¶¶ 11, 13-14]. Connecticut choice of law principles generally apply the law of the state of incorporation in determining whether two entities are alter egos of each other. *See Chapco, Inc. v. Woodway, USA, Inc.*, 282 F. Supp. 3d 472, 481 (D. Conn. 2017) (on a motion for summary judgment, the court applied Connecticut substantive law in a patent and copyright infringement case and determined a genuine issue of material fact existed as to whether the Connecticut incorporation and limited liability company were alter egos of the individual defendant).

In Texas, as in most courts, the alter ego doctrine covers limited liability companies, like Acadima. *See McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 591 (Tex. App. 2007) ("Texas courts and other jurisdictions, have applied to LLCs the same state law principles for piercing the corporate veil that they have

applied to corporations."); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners' Ass'n*, 77 S.W.3d 487, 499 (Tex. App. 2002) (applying corporate veil piercing precedent in analyzing plaintiff's claim that the defendant-LLC is the alter ego of defendant-individual-owner). Therefore, the Court will apply Texas business organization law in determining whether the Plaintiff has pleaded sufficient facts to state a plausible claim that Loukaides is the alter ego of Acadima.

Courts ordinarily cannot establish personal jurisdiction over an individual through the contacts of his employer, however this does not apply when the corporate form is disregarded because the individual is the alter ego of the corporate entity. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 787-88 (N.D. Tex. 2008); *see also Bauer-Pileco, Inc.*, slip op. at 4. In determining whether the individual is the alter ego, Texas courts consider whether "there is such unity between a corporation and an individual that the separateness of the corporation has ceased and asserting jurisdiction over only the corporation would result in an injustice." *Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468, 481 (Tex. App. 2007). Courts are to look at the total dealings of the corporation, "including the degree to which corporate and individual property have been kept separately, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Cappuccitti*, 222 S.W.3d at 481.

According to the Texas Secretary of State database, Loukaides is the owner and sole managing member of Acadima. [Dkt. 31 ¶¶ 14–15]. Loukaides is also listed as the registrant contact, administrative contact and technical contact for the Acadima Website. *See id.* ¶ 16. Loukaides' contacts with Gordon show a high level of control over Acadima; specifically, the suggestion that Gordon and Loukaides come together to create a website similar to a competitor's website in an attempt to run said competitor out of business. *See id.* ¶ 49. Last and most important, the email from Lu states Loukaides intentionally bankrupted Acadima for the purpose of avoiding liability from this suit. *See id.* ¶ 99. Considering the alleged facts and the low burden of persuasion attributed to pre-discovery jurisdictional disputes, the Court holds there has been sufficient allegations to support a *prima facie* basis for personal jurisdiction under the alter ego theory. The Court need not address personal jurisdiction for Loukaides as an individual, particularly since the substance of the allegations appear to be related to his conduct while acting within the scope of his employment or ownership of and exercise of control over Acadima.

B. *Failure to State a Claim*

Having established personal jurisdiction, the Court now turns to Loukaides' 12(b)(6) arguments. Loukaides argues that the claims against him should be dismissed because (1) he is not the *current* owner of Acadima and (2) Plaintiff has not alleged sufficient facts to pierce to corporate veil. [Dkt. 37]. With respect to the first argument, Loukaides' current ownership status does not warrant dismissal as he was an owner at the time of allegations in the Amended

Complaint and the circumstances surrounding the subsequent transfer of ownership is not relevant at this stage of the litigation. *See Love v. State*, 972 S.W.2d 114, 117 (Tex. App. 1998) ("Texas law does not require an individual to be a shareholder at the time liability is assessed.").

As for Loukaides' second argument, Texas courts evaluate the same factors when determining alter ego liability under 12(b)(2) and 12(b)(6). *Compare Rolls-Royce*, 576 F. Supp. 2d at 787–88; *Bauer-Pileco*, slip op. at 4; *to Flores v. Bodden*, 488 F. App'x 770, 776 (5th Cir. 2012); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex. 1986).[5] In considering the pleadings, the Court finds that the same facts sufficient to establish jurisdiction on an alter ego theory are also sufficient to plausibly plead that Loukaides is liable as an alter ego for the claims asserted in this case.

---

[5] Loukaides argues that the "Plaintiff's Complaint contains no factual allegations that satisfy . . . the elements for actual fraud." [Dkt. 37 at 10]. While actual fraud is required for contract claims, s*ee Spring Street Partners-IV, LP v.* Lam, 730 F.3d 427 (5th Cir. 2013) (citing to Tex. Bus. Orgs. Code §§ 21.223(a) (2), (b)), Plaintiff asserts tort claims against Acadima and Loukaides. *See* [Dkt. 31]. The Fifth Circuit, in discussing how the Texas Legislature balanced policy and economic interests in drafting its veil piercing statutes, addressed the distinction between contract and tort related claims:
> This balancing in part reflects a distinction . . . between the perceived relative equities of veil-piercing claimants who are asserting tort theories of recovery versus those suing in contract. The basic notion was that contract claimants, unlike most third parties suing in tort, had voluntarily chosen to deal with the corporation and, "[a]bsent some deception or fraud," would have had the opportunity to apportion, through negotiated contract terms, the risk that the entity would be unable to meet its obligations.

*Id.* (citing to *Shook v. Walden*, 368 S.W.3d 604, 613-14 (Tex. App. 2012)). Therefore, this argument is inapposite here.

## V. Conclusion

For the reasons set forth above, Loukaides' Motion to Dismiss is DENIED.

**IT IS SO ORDERED**

*Vanessa Lynne Bryant*  Vanessa Bryant
2018.07.31 13:41:43 -04'00'

**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: July 31, 2018**