**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**GRADUATION SOLUTIONS LLC,**     )
     )
     **Plaintiff,**     )
     )     **Case No. 17-cv-1342 (VLB)**
**v.**     )
     )
**ACADIMA, LLC and ALEXANDER**     )
**LOUKAIDES,**     )
     )
     **Defendants.**     )

**DEFENDANT LOUKAIDES' MOTION FOR**
**<u>JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50</u>**

Defendant Alexander Loukaides submits this Motion and Memorandum in Support of his Motion for Judgment as a Matter of Law on all counts pursuant to Federal Rule of Civil Procedure 50 and, in support thereof, states the following.

Through two days of trial, Plaintiffs have presented a tangled web of irrelevant evidence against various websites, entities, and individuals. Through the limited <u>relevant</u> evidence actually presented, however, Plaintiffs have fallen far short of meeting certain essential elements in each of the six counts asserted against Mr. Loukaides. Accordingly, judgment as a matter of law is warranted and should be entered in favor of Mr. Loukaides.

I.    <u>Legal Standard</u>

A judgment as a matter of law is warranted "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law is proper where "the evidence points so strongly in

favor of one party that a reasonable jury could reach but one conclusion, in favor of that party." *E-21 Glob., Inc. v. Second Renaissance, LLC*, 360 Fed. Appx. 172, 175 (2d Cir. 2009). And "a mere scintilla of evidence is insufficient to present a question for the jury." *Id.*; *see also SEC v. Adler*, 137 F. 3d 1325, 1340 (11th Cir. 1998) (nonmoving party "must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question'"). Finally, a Rule 50 motion "need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather, there must be a substantial conflict in evidence to support a jury question." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

II. <u>The Court Should Grant Judgment as a Matter of Law on Any Portion of any Claim based on GradShop.com.</u>

In its Second Amended Complaint, the only websites that Plaintiff alleges "contain elements that are the same as or substantially similar to original works of authority within of [sic] the GS Website that are the subject of the Copyright Registration" are "the Acadima Website and the Graduation Apparel Website." Importantly, the reference to "the Acadima Website and the Graduation Apparel Website" are capitalized and singular. The capitalization is important because it makes it evident that each is referring to a previously defined term from earlier in the Complaint. The fact that they are singular is important because if makes it clear that each is referring to *only* the *single* website as previously defined.

Gradshop.com is not identified in any count in the Amended Complaint. Indeed, Matthew Gordon, Plaintiff's own CEO *agreed* that the Amended Complaint

2

does not seek money damages from GradShop.com. Gordon Testimony, Trial Day 1. Nevertheless, Mr. Gordon continued to testify that, in his opinion, GradShop.com is included in the term "the Acadima website." This testimony is disingenuous and belies the plain language of the Complaint — which failed to give any notice to Mr. Loukaides that Plaintiff in this case sought damages based on GradShop.com. The Amended Complaint expressly limits the meaning of "the Acadima website" to the website www.acadima.com. In fact, Plaintiff went out of its way to define the term "the Acadima Website" in the Complaint:

> 11.    Upon information and belief, defendant Acadima is a Texas Limited Liability Company with a principal place of business located at 14241 Dallas Parkway, Suite 650, Dallas, TX 75254.  Acadima owns and operates the website that is located at https://Acadima.com, (the "Acadima Website") and offers apparel and accessories for graduations.

Second Am. Compl. ¶ 11 (highlighting added). Moreover, Plaintiff also separately and distinctly defined a different term to use when referring to GradShop.com:

> 12.    Upon information and belief, defendant Acadima owns and operates the website that is located at http:/www.gradshop.com (the "GradShop Website") and offers apparel and accessories for graduations.

*Id.* at ¶ 12. Indeed, Plaintiff carefully distinguished and defined terms for each of the websites it discussed in it Second Amended Complaint:

> 19.    Upon information at belief, defendant Acadima owns, and defendant Loukaides is the dominant and active force behind the "Gradshop Website and the following other websites: www.graduationcapandgown.com (the "Graduation Cap and Gown Website"); www.graduationapparel.com (the "Graduation Apparel Website"); www.churchgoers.com (the "Churchgoers Website"); and www.churchings.com ("the Churchings Website").

*Id.* at ¶ 19. And finally, where Plaintiff intended to make allegations related to more than one of the websites allegedly owned or operated by either of the defendants, Plaintiffs also carefully defined a term for that as well:

> Collectively the Acadima Website, the Gradshop Website, the Graduation Cap and Gown Website, the Graduation Apparel Website, the Churchgoers Website, and the Churchings Website are the "Defendants' Websites."

*Id.* Plaintiff cannot limit the meaning of a term in the body of the Complaint only to expand it (without telling anyone) when they use the same term later in the Complaint. The Plaintiff's decision to selectively and consciously not include "the Gradshop Website" or "Defendants' Websites" in certain counts in the Complaint was intentional and is controlling. Mr. Loukaides did not have notice that Plaintiff intended to pursue such claims at trial and, accordingly, it is appropriate for the Court to enter judgment as a matter of law regarding in Mr. Loukaides' favor regarding Gradshop Website on any count where the Gradshop Website is not expressly included.[1] *Stephen v. Hanley*, 376 Fed. Appx. 158, 159–60 (2d Cir. 2010)

---

[1] **For the avoidance of doubt, this applies to Counts 1-5 of the Second Amended Complaint. *See*, Count 1, ¶ 135 (allegations only against "the Acadima Website and the Graduation Apparel Website"); Count 2, ¶¶ 150, 154 (allegations only against "The Acadima Website"); Count 3, ¶ 161 (allegations only against "The**

(Affirming district court's decision to deny plaintiffs leave to introduce a new theory of liability through jury instructions because "Plaintiffs' fourth amended complaint did not give defendants notice that plaintiffs intended to pursue a "duty to intervene" theory of liability, and thus plaintiffs' proposed jury instruction would have introduced a new claim to the case"). The Second Circuit in *Stephen* explained that "[i]n essence, plaintiffs were seeking leave to amend their complaint as trial was about to commence." *Id.*; see also *Hutter v. Countrywide Bank*, N.A., 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014), aff'd in part, vacated in part, remanded, 710 Fed. Appx. 25 (2d Cir. 2018) (Denying motion to amend pleading after discovery because "a defendant that received notice in the complaint of the asserted claims and the grounds on which they rest 'may conduct . . . trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue.'"

III. <u>The Court Should Grant Judgment on Counts 2 through 6 in Favor of Mr. Loukaides Because Plaintiff Neither Pled or Presented any Evidence from Which a Reasonable Jury Could Find that the Corporate Veil Should Be Pierced to Hold Mr. Loukaides Personally Liable for the Alleged Conduct of Acadima, LLC.</u>

"Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." Cohen v. Meyers, 175 Conn. App. 519, 540–41 (2017) (quoting

---

Acadima Website"); Counts 4 and 5, ¶¶ 172, 179 (realleging the "violations of Plaintiff's rights under the Lanham Act" which were limited to allegations against "The Acadima Website" in Counts 2 and 3).

*Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*, 187 Conn. 544, 557, 447 A.2d 406 (1982)). The instrumentality rule and the identity rule are used by courts to determine whether it is proper to pierce the corporate veil. *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 232 (2010). The instrumentality rule requires proof of three elements: "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Id.*

The identity rule, on the other hand, has been stated as follows: "If the plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." *Id.*

It is undisputed that all of the allegations in the Second Amended Complaint relate to websites allegedly owned by Acadima, LLC. *See e.g.*, Second Am. Compl.

6

¶¶ 11, 12, 19, 23, 28, 31, 33, 35, 37. Indeed, Plaintiff already has secured a default against Acadima, LLC based on the allegations in the Second Amended Complaint. Nevertheless, Plaintiff seeks to hold Mr. Loukaides personally responsible but has blatantly failed to plead, let alone prove, any theory of veil piercing as required to hold Mr. Loukaides responsible for the actions of Acadima, LLC. Although a plaintiff need not pierce the corporate veil to hold an individual liable under the Copyright Act, the same is not true for the remaining counts. *See e.g.*, *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, LLC, 15 CIV. 8459 (LGS), 2018 WL 3364388, at *3 (S.D.N.Y. July 9, 2018) (requiring plaintiff to pierce the corporate veil for Lanham Act Claims); *Jannetty Racing Enterprises, Inc. v. Site Dev. Techs., LLC*, CV054004820S, 2006 WL 410973, at *5 (Conn. Super. Ct. Jan. 31, 2006) (striking CUTPA claim against individual where Plaintiff failed to adequately allege a "piercing the corporate veil count[]" against the individual defendant); *Cohen v. Meyers*, 175 Conn. App. 519, 543 (2017) (Affirming trial court's holding that Plaintiff failed to establish facts to pierce the corporate veil and hold a company's president individually liable for numerous claims, including a CUTPA claim and unjust enrichment claim).

Plaintiff has not adduced any evidence that Mr. Loukaides had complete "dominion and control" over Acadima, LLC or any other company allegedly involved in the activity complained of by Plaintiff in this case. Indeed, the only evidence of control that came out in Plaintiff's case was that the current owner of Acadima, LLC — Frank Seviane — was solely in control of Acadima, LLC and that Mr. Loukaides had nearly zero involvement in the company for the short entirety of

his ownership of the company. With respect to GradShop.com, for the reasons discussed above that website is not relevant in this case, but, in any event, Plaintiff similarly offered no evidence indicating Mr. Loukaides had complete "dominion and control" over that website either. Accordingly, Plaintiff has not presented any evidence from which a reasonable juror could pierce the corporate veil under the "instrumentality rule."

Similarly, Plaintiff has failed to adduce any evidence in its case in chief indicating that there was such a "unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice." Indeed, from Mr. Seviane's testimony, it is undisputed that Mr. Seviane ran and operated Acadima, LLC and that Acadima, LLC was sold to Mr. Seviane. It is possible that Plaintiff could have made a claim to pierce the corporate veil as to Mr. Seviane, but there has been no evidence that the same should be true against Mr. Loukaides.

### IV. The Court Should Grant Judgment on all Counts in Favor of Mr. Loukaides Because Plaintiff has Failed to Prove All Elements of All claims by a Preponderance of the Evidence.

The Court should grant judgment for Mr. Loukaides on all counts of Plaintiff's Second Amended Complaint. Plaintiff asserts six distinct causes of action in this case, and there is no evidence on which a jury could rely to find in favor of Plaintiff as to any of these counts raised in the Amended Complaint.

### A. A Reasonable Jury Would Not Have A Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Copyright Infringement Claim.

Pursuant to Rule 50(a), Alex Loukaides respectfully moves for judgment as a matter of law that Mr. Loukaides is not liable for copyright infringement.

According to Plaintiff's Second Amended Complaint, Acadima LLC (and not Alex Loukaides) owns and operates Acadima.com and GraduationApparel.com.[2] Second Am. Compl. ¶¶ 11, 28, ECF No. 31. And, as the Court is aware, Plaintiff has a default judgment against Acadima, LLC, the alleged owner of all of the allegedly infringing sites. Thus, Mr. Loukaides can only be held personally liable if Plaintiff proves that Mr. Loukaides "personally participated in the acts constituting infringement," *Graham Hanson Design LLC v. 511 9th LLC*, 10 CIV. 5493 KMW, 2011 WL 744801, at *5 (S.D.N.Y. Feb. 24, 2011) (quoting *Lechner v. Marco–Domo Internationales Interieur GmbH*, No. 03 Civ 5664, 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005)).

An individual can only be held personally liable for copyright infringement of a corporation if the plaintiff proves the individual personally participated in the acts constituting infringement by the corporate defendant. *Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F. Supp. 895, 903–04 (E.D.N.Y. 1977), aff'd, 578 F.2d 1369 (2d Cir. 1978); *see also Graham Hanson*, 2011 WL 744801, at *5; *Lechner*, 2005 WL 612814, at *6. While some cases have noted that it is not necessary to pierce the corporate veil where an individual personally participates in the infringing activity, other cases have equated this to a veil-piercing analysis. *See e.g.*, *NetTech Sols., L.L.C. v. ZipPark.com*, 01 CIV. 2683 (SAS), 2001 WL 1111966, at *12 (S.D.N.Y. Sept.

---

[2] This same argument holds true for all websites referenced in the Second Amended Complaint. *See* e.g. Second Am. Compl. ¶¶ 12, 23, 31, 33, 35, 37.

20, 2001) ("A plaintiff may pierce the corporate veil in an action for copyright infringement and unfair competition where it is established that the corporate officer is a 'moving, active conscious force behind [the defendant corporation's] infringement.'").

"One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise the right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005); *see also Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (holding that vicarious infringement requires that defendant possess the right and ability to supervise the infringing conduct); *Matthew Bender & Co., Inc. v. W. Pub. Co.*, 158 F.3d 693, 707 n.22 (2d Cir. 1998) (stating that "plaintiffs cannot be subject to liability for vicarious infringement because they cannot control the conduct of the direct infringer").

Plaintiff has failed to show that Mr. Loukaides personally participated in any acts allegedly constituting infringement by Acadima, LLC, or that he had the requisite level of control to be held vicariously or contributorily liable for the actions of Frank Seviane and Acadima, LLC.

The testimony by Kristoff Albanese was simply that the Acadima.com website and certain other sites, in his non-expert opinion, copied elements of Plaintiff's website. He then testified that based on a series of third-party services, namely WhoIs and SSLShopper, he believed there was some connection between those sites and Mr. Loukaides. Neither Mr. Albanese nor any other witness testified that Mr. Loukaides personally participated in this alleged copying. *See generally*,

10

Day 1 Trial Transcript. In fact, there is no reliable evidence whatsoever that Mr. Loukaides ever had any control over the two websites in question, and there is no reliable evidence whatsoever that Mr. Loukaides personally participated in any sort of copying activity. The Plaintiff simply failed to meet its burden on this issue, and this case must not proceed to the jury on any of the claims in the case.

Moreover, the testimony of Frank Seviane made clear that, at all times, even before he ultimately purchased Acadima LLC from Mr. Loukaides, he — Frank Seviane — was completely running Acadima LLC. Mr. Seviane made clear that Mr. Loukaides had no operational role in Acadima LLC. There is no evidence whatsoever against Mr. Loukaides on this point, and the Plaintiff has embarked on a misguided, baseless crusade against Mr. Loukaides where all of the evidence points directly to Mr. Seviane.

Accordingly, for at least these stated reasons, Plaintiff has not adduced sufficient evidence such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides personally, vicariously, or contributorily infringed Plaintiff's copyrights with respect to Plaintiff's website.

**B. A Reasonable Jury Would Not Have A Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Trade Dress Infringement Claim.**

Pursuant to Rule 50(a), Alex Loukaides respectfully moves for judgment as a matter of law that Mr. Loukaides is not liable for copyright infringement.

To prevail on a claim of trade-dress infringement based on a website allegedly copying the "look and feel" of another website, a plaintiff must show "(1) that its trade dress is inherently distinctive or has acquired secondary meaning;

(2) that its trade dress is nonfunctional; and (3) that defendant's product creates a likelihood of consumer confusion." *Ingrid & Isabel*, 70 F. Supp. 3d 1105, 1136-37 (N.D. Cal., 2014). Plaintiff has presented no evidence on the first element of a "look and feel" trade dress infringement claim; has offered evidence specifically claiming its trade dress is functional, completely negating the second element; and the limited evidence present on the third element is insufficient for a reasonable jury to conclude that Plaintiff has proven a likelihood of confusion *based on the "look and feel"* by a preponderance of the evidence.

### 1. Plaintiff has presented no evidence that the "look and feel" of Plaintiff's website is "inherently distinctive" or that its website has acquired a secondary meaning.

"A mark or dress is distinctive when it identifies the particular source of the product or distinguishes it from other products." *Id.* at 1137. "Correspondingly, a product's trademark or trade dress acquires a secondary meaning when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself." The Supreme Court has held that "design, like color is not inherently distinctive." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). Accordingly, Plaintiff cannot prevail on its trade dress infringement claim based solely on the design, layout, or color of its website. Such "design" aspects are simply not inherently distinctive. Thus, in order to prevail on this claim, Plaintiff must prove by a preponderance of the evidence that its website's look and feel is distinctive through a secondary meaning it has acquired.

Plaintiff has offered no evidence of distinctiveness, either inherent or through an acquired secondary meaning. Plaintiff likely will rely on Mr. Albanese's

testimony to argue that Plaintiff's website is distinctive, or has secondary meaning. But Mr. Albanese did not offer any testimony to that effect. Instead, Mr. Albanese only testified to the creation of the website and that he believes it has been copied by the Defendants. He testified that Graduation Solutions spent a lot of money developing its site and testing its features, but he never testified that any of this resulted in a site that was inherently distinct from other graduation apparel websites. He testified that that there were unique elements of the website such as "widgets" being on the left hand side, and promotions offered within these widgets, but he never testified that these elements identify GraduationSource.com as the particular source of goods or that or that these elements distinguishes this website from other websites. And, in any event, as stated above, even if there was such testimony, the Supreme Court has held that design is not inherently distinctive and so these design elements would be insufficient.

With regard to secondary meaning, Plaintiff offered zero evidence that the "purchasing public associates the [alleged trade dress] with a single producer or source rather than with the product itself." Plaintiff offered no evidence its website is so distinct that when consumers see it, without seeing the name of the site, they recognize it as being the site of GraduationSource.com. The secondary meaning has been held to apply in cases such as Coca-Cola's red can, where without seeing the name of the company a consumer would recognize the can as being that of Coca-Cola as opposed to one of Coca-Cola's competitors. Such dress is protected, in part, because of the value it has to the company. Indeed, if Coca-Cola changed this product dress, it would confuse customers and customers looking for Coca-

13

Cola would have a harder time finding the product.

Here, however, Plaintiff presented evidence through Mr. Albanese that when Graduation Solutions felt its website was being copied it reacted by changing its website. Albanese Testimony, Trial Day 1. Specifically, the Court will recall that at one point during his testimony, Mr. Albanese was testifying about a side-by-side comparison that was being displayed and he explained that part of the reason there were noticeable visual differences between the sites is because Graduation Solutions made changes to its design when it believed it was being copied. This testimony is completely contrary to a claim that the Plaintiff's websites had acquired a secondary meaning. If it had, Plaintiff would not have been willing or able to change the look-and-feel of its website without risking causing its own consumer confusion. In other words, the fact that a later iteration of Plaintiff's website omitted design element that it contends make its website distinct shows that those elements were not distinct and did not have secondary meaning. *See FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, 14-CV-3685 SJF SIL, 2015 WL 4162757, at *10 (E.D.N.Y. July 8, 2015) (Plaintiff's allegation that "look and feel" of its website serves to identify it as the source of its services is belied by the fact that Plaintiff has other websites that do not contain the features described as protectable trade dress).

Accordingly, Plaintiff has not adduced sufficient evidence such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides has infringed on Plaintiff's trade dress in the form of Plaintiff's website's look and feel.

14

**2.**  **Plaintiff has presented evidence specifically claiming its trade dress is functional.**

"Trade dress protection extends only to design features that are nonfunctional." *Ingrid & Isabel*, 70 F. Supp. 3d at 1137. "A product feature is functional, and cannot serve as a trademark [or trade dress], if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001).

Here, Plaintiff has presented evidence that many of the elements of its website it believes are entitled to trade dress protection are functional in that they are intentionally and carefully designed to help search engine ranking and to influence consumer engagement and interaction with the site. *See* Albanese Testimony, Trial Day 1. Indeed, Mr. Albanese testified in great detail that even seemingly minor design elements are extensively tested at great expense in order to offer enhanced functionality of the site. *Id.* As just one example of this, Mr. Albanese testified that a small icon next to the words "in stock and ready to ship" was functional in that it increased the amount of clicks on that "in stock and ready to ship" link. He further testified that there could have been tens of thousands of dollars of research going into selecting this button because of the functionality it offered. He testified that this is just one example of the many elements that are extensively tested to add to the functionality of the website. Mr. Albanese made clear that he believed the design elements allegedly copied by Defendants affected the quality of the website and, accordingly, under Second Circuit precedent, that makes those design elements functional and not protectable as trade dress.

Moreover, courts have held that "the fact that a trade dress is composed entirely of commonly used or functional elements might suggest that the dress should be regarded as unprotectible or 'generic,' to avoid tying up a product or marketing idea." *FC Online Mktg.*, 2015 WL 4162757, at *27. Here, the elements that Plaintiff alleges to be protected trade dress amount to nothing more than the layout of commonly used, functional elements on an ecommerce website and the website's color scheme. The fact that the elements offer similar promotions or are, in the case of Acadima.com, in the same general location is of no consequence. The generic layout of a website and the sales promotions offered within simply are not protectable trade-dress in this case.

Plaintiff has not adduced sufficient evidence such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides has infringed on Plaintiff's trade dress because the design elements allegedly infringed are functional.

### C.    A Reasonable Jury Would Not Have A Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its False Advertising Claim.

Pursuant to Rule 50(a), Alex Loukaides respectfully moves for judgment as a matter of law that Mr. Loukaides is not liable False Advertising under the Lanham Act.

In the Second Amended Complaint, Plaintiff alleges a single allegedly false claim, that Acadima.com states "WE OUTFIT OVER 500,000 GRADUATES A YEAR." Second Am. Compl., ¶ 161. Plaintiff alleges that this claim, and only this claim, "is either literally false or is misleading or deceptive to the public, and it is likely to

16

deceive a substantial segment of potential customers." *Id.* at ¶ 163.

Plaintiff has failed show that this claim is literally false or misleading, that any consumers have actually been deceived by this claim, or that this claim is material in any way to consumers' purchasing decisions. Indeed, Plaintiff has not introduced any evidence related to this claim at all aside from the allegation that it is identical to a number also recited on Plaintiff's website.

Accordingly, for these reasons, Plaintiff has not adduced sufficient evidence such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides should be liable for false advertising under the Lanham Act.

### D. A Reasonable Jury Would Not Have A Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Connecticut Unfair Trade Practices Act Claim or Common Law Unfair Competition Claim.

In its Second Amended Complaint, Plaintiff alleges that "[e]ach of Defendants' violations of Plaintiff's rights under the Lanham Act constitutes violations of Plaintiff's rights under the Connecticut Unfair Trade Practices Act," and "[e]ach of Defendants' violations of Plaintiff's rights under the Lanham Act constitutes violations of Plaintiff's rights under Connecticut common law of unfair competition." Second Am. Compl. ¶¶ 172, 179. Accordingly, for the same reasons Plaintiff has failed to adduce sufficient evidence regarding its Lanham Act claims such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides violated the Lanham Act, Plaintiff has also failed to adduce sufficient evidence with respect to its Connecticut Unfair Trade Practices claim and common law unfair competition claim.

### E. A Reasonable Jury Would Not Have A Legally Sufficient Basis to Find that

**Plaintiff Met Its Burden on All Elements of Its Unjust Enrichment Claim.**

Pursuant to Rule 50(a), Alex Loukaides respectfully moves for judgment as a matter of law that Mr. Loukaides is not liable unjust enrichment.

In its Second Amended Complaint, Plaintiff brings a claim for unjust enrichment based on Defendants' creation and operation of websites "in a manner that looks and feels the same as Plaintiff's Website." Second Am. Comp., ¶ 184. But a claim for unjust enrichment requires that the plaintiff had given or provided something of value to the defendant that requires compensation in return. *See e.g., Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006) ("Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract"). To that end, "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id.*

Furthermore, the Connecticut Civil Jury Instructions provide the following:

Any damages you award on the plaintiff's unjust enrichment claim are determined by the value of the benefit *the plaintiff provided* to the defendant. In other words, the amount of unjust enrichment is the value to the defendant of *property received or services rendered* to the defendant. The plaintiff must prove the fair and reasonable value of the *property received or services rendered* to the defendant. That value should be measured in terms of the benefit the defendant received by not providing proper compensation to the plaintiff for the *property received or services rendered*.

Connecticut Civil Jury Instructions, 4.5-13 (emphasis supplied). Moreover, in

18

*Vertex*, the Supreme Court of Connecticut found harmful error in the trial court refusing to give the following instruction regarding unjust enrichment:

> To find for the plaintiff under a theory of unjust enrichment or quantum meruit, you must find that *the plaintiff has provided services to the defendant*, that the defendant benefited from these services, that the defendant unjustly did not pay for that benefit and that the defendant's failure to pay was to the plaintiff's detriment.

*Vertex*, 278 Conn. 557, 571 (2006) (emphasis supplied). Clearly, a claim for unjust enrichment requires first that Plaintiff provide something of value to the Defendant. Where, as is the case here, Plaintiff alleges that it did not provide anything to the Defendant but instead the Defendant *took* something of value, there are other civil remedies (e.g. conversion) offering protection to would-be Plaintiffs. And where the thing of value allegedly taken is intellectual property, as is the case here, there are copyright and/or trademark claims that plaintiffs can raise (as Plaintiff has done here.

Plaintiff has not offered any evidence that it provided any property or services to Mr. Loukaides for which it has not been compensated and, accordingly, Plaintiff has not adduced sufficient evidence such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides should be liable for unjust enrichment.

Finally, as the Civil Jury Instructions instruct, "[t]he plaintiff *must prove* the fair and reasonable value of the property received or services rendered to the defendant." Connecticut Civil Jury Instructions, 4.5-13 (emphasis supplied).

To the extent an unjust enrichment claim otherwise would have been allowed

to proceed in this case, judgment as a matter of law should also be entered on this claim because Plaintiff has no evidence regarding what a fair and reasonable value of its allegedly infringed property would be. Mr. Albanese only offered an imprecise estimate that Plaintiff has spent a substantial amount of time and money on web design. This does not come close to proving a "fair and reasonable value" by a preponderance of the evidence. Plaintiff has offered no evidence identifying each allegedly copied element and quantifying the value of each such element. Accordingly, a reasonable juror would not have sufficient evidence to reach a damages calculation on this count.

## V. <u>Conclusion</u>

Plaintiff has not put forth any evidence showing that Mr. Loukaides exercised any control over the websites in question during the relevant time period. In fact, the only evidence regarding "control" that has elicited during this Plaintiff's case indicated that Mr. Seviane, and not Mr. Loukaides, was in control of Acadima LLC at all times. This lack of control precludes Plaintiff from piercing the corporate veil to recover from Mr. Loukaides individually (especially since no theory of veil piercing was actually pled). Moreover, any claim (for liability or damages) related to GradShop.com is precluded because Plaintiff did not provide adequate notice that it was seeking damages based on these websites. Finally, even if the Court allowed Plaintiff to attempt to pierce the corporate veil, and even if GradShop.com were included, Plaintiff has failed to adduce sufficient evidence from which a reasonable juror could find in its favor on one or more essential elements in each of its claims. Accordingly, no reasonable juror could find for Plaintiff on any claim

20

in this case and Judgment as a Matter of Law in Mr. Loukaides' favor is appropriate.

WHEREFORE, Defendant Loukaides respectfully requests that the Court grant this Motion and enter Judgment as a Matter of Law in his favor on all counts..

Dated: June 24, 2019                              Respectfully submitted,

                                                  Alex Loukaides

                                                  By:  _/s/ Jeffrey S. Bagnell_____
                                                  Jeffrey S. Bagnell, Esq.
                                                  Federal Bar No. CT18983
                                                  55 Greens Farms Road, #200-60

                                                  Westport, Connecticut 06880
                                                  (t) (203) 984-8820
                                                  (f) (203) 557-8768
                                                  jbagnell@bagnell-law.com


                                                  *Attorney for Defendant*
                                                  *Alexander Loukaides*

21