## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **GRADUATION SOLUTIONS LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 17-cv-1342 (VLB)** |
| **v.** | ) | |
| | ) | |
| **ACADIMA, LLC and ALEXANDER** | ) | |
| **LOUKAIDES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT LOUKAIDES' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY FOR A NEW TRIAL PURSUANT TO F.R.C.P. 50

## Table of Contents

**INTRODUCTION** ................................................................................................ **1**

**BACKGROUND** ................................................................................................. **1**

**LEGAL STANDARD** ......................................................................................... **2**

**ARGUMENT** ...................................................................................................... **3**

**I.     Defendant Loukaides is Entitled to Judgment as a Matter of Law on any Claim Based on GradShop.com.** ............................................................. **3**

**II.    Defendant Loukaides is Entitled to Judgment on Counts 2 through 6 Because Plaintiff Neither Pled nor Presented any Evidence from Which a Reasonable Jury Could Find that the Corporate Veil Should Be Pierced to Hold Mr. Loukaides Personally Liable for the Alleged Conduct of Acadima, LLC.** .............................................................................................................. **9**

**III.   The Court Should Grant Judgment on all Counts in Favor of Mr. Loukaides Because Plaintiff Failed to Present Sufficient Evidence on All Elements of All Causes of Action.** ....................................................................................... **15**

    **A.     Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Copyright Infringement Claim (Count I).** ....................................................................................... **15**

    **B.     Plaintiff's Trade Dress Infringement Claim (Count II) is Preempted by the Copyright Act, and Plaintiff Failed to Present Evidence of Specific Trade Dress Elements that would Escape Preemption.** ...... **21**

    **C.     Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Trade Dress Infringement Claim (Count II).** .............................................................. **24**

    **D.     Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Connecticut Unfair Trade Practices Act Claim or Common Law Unfair Competition Claim Counts IV and V).** ................................................................................... **31**

    **E.     Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Unjust Enrichment Claim (Count VI).** ................................................................................... **32**

**Conclusion** ...................................................................................................... **34**

## Table of Authorities

Cases

*Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*,
　187 Conn. 544, 447 A.2d 406 (1982) ................................................................. 11
*Cohen v. Meyers*,
　175 Conn. App. 519 (2017) ................................................................. 11, 13
*Conference Archives, Inc. v. Sound Images, Inc.*,
　2010 WL 1626072 (W.D. Pa. Mar. 31, 2010) ....................... 16, 21, 22, 25
*Crown Awards, Inc. v. Trophydepot*,
　2003 WL 22208409 (E.D.N.Y. Sept. 3, 2003) ....................................... 16
*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
　539 U.S. 23, (2003) ................................................................. 21, 26
*FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, 14-CV-3685 SJF SIL,
　2015 WL 4162757 (E.D.N.Y. July 8, 2015) ....................................... 28, 31
*Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*,
　499 U.S. 340 (1991) ................................................................. 15, 16
*Frontier Group, Inc. v. Northwest Drafting & Design, Inc.*,
　493 F. Supp. 2d 291 (D. Conn. 2007) ................................................... 32
*Graham Hanson*,
　2011 WL 744801 ................................................................. 17, 19
*Hutter v. Countrywide Bank*, N.A.,
　41 F. Supp. 3d 363 (S.D.N.Y. 2014) ....................................................... 7
*Ingrid & Isabel*,
　70 F. Supp. 3d 1105 (N.D. Cal., 2014) ....................................... passim
*Jannetty Racing Enterprises, Inc. v. Site Dev. Techs., LLC*,
　CV054004820S, 2006 WL 410973 (Conn. Super. Ct. Jan. 31, 2006) ..................... 13
*Lechner*,
　2005 WL 612814 ................................................................. 17, 19
*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, LLC, 15 CIV. 8459 (LGS),
　2018 WL 3364388 (S.D.N.Y. July 9, 2018) ....................................... 13
*Matthew Bender & Co., Inc. v. W. Pub. Co.*,
　158 F.3d 693 (2d Cir. 1998) ....................................................... 18
*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
　545 U.S. 913 (2005) ................................................................. 18
*Naples v. Keystone Bldg. & Dev. Corp.*,
　295 Conn. 214 (2010) ................................................................. 12, 14
*NetTech Sols., L.L.C. v. ZipPark.com*, 01 CIV. 2683 (SAS),
　2001 WL 1111966 (S.D.N.Y. Sept. 20, 2001) ....................................... 18
*Samet & Wells, Inc. v. Shalom Toy Co., Inc.*,
　429 F. Supp. 895 (E.D.N.Y. 1977) ....................................................... 17
*SG Services Inc. v. God's Girls Inc.*,
　2007 WL 2315437 (C.D. Cal. May 9, 2007) ....................................... 25
*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
　316 F.2d 304 (2d Cir. 1963) ....................................................... 18

*Stephen v. Hanley*,
    376 Fed. Appx. 158 (2d Cir. 2010) ............................................................ 6, 7
*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
    546 U.S. 394 (2006) ................................................................................. 3, 6
*Vertex, Inc. v. City of Waterbury*,
    278 Conn. 557 (2006) ............................................................................. 32, 33
*Wal–Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) ............................................................................... 25, 26
*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001) ......................................................................... 30

Statutes

§ 301 .......................................................................................................... 21
17 U.S.C. § 102(a)(5) .................................................................................... 15
17 U.S.C. § 301(a) ........................................................................................ 21

Rules

F.R.C.P. 50 .............................................................................................. 1, 36
Rule 50(a) ................................................................................................ 1, 3
Rule 50(b) of the Federal Rules of Civil Procedure .......................................... 1, 3

Other Authorities

2012 or 2014 .............................................................................................. 22
9A Wright & Miller, *Federal Practice & Procedure* § 2533, at 319 (2d ed. 1995) .................... 3
Instructions, 4.5-13 ................................................................................ 33, 34
Look And Feel Protection Of Web Site User Interfaces; Copyright Or Trade Dress?,
    14 Santa Clara Computer & High Tech. L.J. 221 (1998) ...................................... 25

## INTRODUCTION

Under Rule 50(b) of the Federal Rules of Civil Procedure, Defendant Loukaides renews his motion for judgment as a matter of law.  In the alternative, if the Court does not grant judgment in favor of Mr. Loukaides on any portion of this case, Mr. Loukaides requests a new trial pursuant to Rule 50(b).  In a separate filing, Mr. Loukaides will also be asking for a new trial under Rule 59(a).[1]  As Mr. Loukaides has consistently argued, he was not on notice that Plaintiff was pursuing money damages related to GradShop.com – a website that, for years, operated without any complaint from Plaintiff. As a result, the Court should enter judgment in Mr. Loukaides's favor on all claims related to GradShop.com.

Further, Plaintiff did not present sufficient evidence to support each of the elements of each of the causes of action against Mr. Loukaides in this case and, accordingly, the Court should enter judgment in Mr. Loukaides's favor on each of Plaintiff's claims in this case.

## BACKGROUND

On June 24, 2019, following the close of Plaintiff's case in chief, Defendant Loukaides moved for judgment as a matter of law under Rule 50(a).  *See* ECF No. 140 at 150:9-16; ECF No. 115.  In that motion, Mr. Loukaides sought judgment as a matter of law on all counts. The Court denied that motion orally on June 25, 2019.

---

[1] Mr. Loukaides will be filing a motion for new trial under Rule 59(a) based on the multiple errors of law in the jury instructions and curative instructions and the erroneous submission of the case to the jury as it relates to GradShop.com. Although both motions request a new trial, and there is some overlap between the errors claimed in each, the motions are different and independent. This motion addresses the weight and insufficiency of evidence at trial, which dictate that the Court should grant judgment as a matter of law in Mr. Loukaides's favor or, in the alternative, a new trial.  The other motion, which Mr. Loukaides will file on or before the deadline of August 9, 2019, will address legal and evidentiary errors that entitle Mr. Loukaides to a new trial of Plaintiff's claims.

**ECF No. 141 at 78:2-3, 19-22; 79:16; 81:12-13; 82:2-4. During argument on that motion, the Court and Plaintiff acknowledged that Plaintiff's Amended Complaint did not encompass all of the claims on which it was suddenly seeking to recover at the trial:**

```
12            THE COURT:  So do you intend to seek -- do you intend
13   to file a Rule 15 motion to amend your complaint to conform to
14   the evidence?
15            MR. NELSON:  Yes, Your Honor.  That was part of what
16   I was -- I can do that orally or I can do that in writing.
17   That was part of what I planned on doing this afternoon.
```

**ECF No. 141 at 71:12-17. The Court granted Plaintiff's oral motion to amend its complaint to conform to the evidence, ECF No. 118, however, to date, Plaintiff has not filed such an amendment.**

**Plaintiff's counsel also acknowledged that the jury instructions submitted with the Joint Pretrial Memorandum "were not perfect by any stretch of the imagination" and that he "saw some things that definitely needed to be tightened up." ECF No. 141 at 74:6-9. Many of these jury instructions were not corrected before the case was submitted to the jury[2] and the jury returned a verdict against Mr. Loukaides for $1,615,000.00 in actual damages and $1,615,000.00 in punitive damages. ECF No. 124.**

## LEGAL STANDARD

---

**[2] The erroneous jury instructions are not the subject of this motion and will be addressed in Mr. Loukaides's forthcoming Motion for New Trial based on legal and evidentiary issues.**

Under Rule 50(a), judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The decision to grant a Rule 50(a) motion is within a district court's discretion: "[W]hile a district court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, it is not required to do so." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006). For purposes of aiding appellate review, district courts are encouraged to "'refrain from granting a [Rule 50(a)] motion for judgment as a matter of law [during a trial] despite the fact that it would be possible for the district court to do so.'" *Id.* (quoting 9A Wright & Miller, *Federal Practice & Procedure* § 2533, at 319 (2d ed. 1995)). Instead, the preferable approach is for the district court to obtain a jury verdict and "'then pass on the sufficiency of the evidence on a post-verdict motion [*i.e.*, a motion brought under Rule 50(b)].'" *Id.* (quoting 9A Wright & Miller, *supra*, § 2533, at 319). Under Rule 50(b), a party may renew after trial a motion for judgment as a matter of law brought during trial. *Id.* at 400.

## ARGUMENT

**I.    Defendant Loukaides is Entitled to Judgment as a Matter of Law on any Claim Based on GradShop.com.**

In its Second Amended Complaint, the only websites that Plaintiff alleges "contain elements that are the same as or substantially similar to original works of authority within of [sic] the GS Website that are the subject of the Copyright Registration" are "the Acadima Website and the Graduation Apparel Website." ECF No. 31 at ¶135.  Similarly, the only website that Plaintiff alleges "caused damages

3

to Plaintiff" with respect to its trade dress claim is "the Acadima Website." *Id.* at ¶ 154.   Importantly, the reference to "the Acadima Website and the Graduation Apparel Website" are capitalized and singular. The capitalization is important because it makes it evident that each is referring to a previously defined term from earlier in the Complaint.  The fact that they are singular is important because it makes it clear that each is referring to *only* the *single* website as previously defined.

Gradshop.com is not identified in any count in the Amended Complaint. Indeed, Matthew Gordon, Plaintiff's own CEO *agreed* that the Amended Complaint does not seek money damages from GradShop.com:

```
2    Q.   All right, are you aware that there is no claim for
3    damages regarding activities of gradshop.com in the complaint?
4    A.   Correct.
```

ECF No. 113 at 215:2-4. Nevertheless, Mr. Gordon continued to testify that, in his opinion, GradShop.com is included in the term "the Acadima website." This testimony is disingenuous and belies the plain language of the Complaint — which failed to give any notice to Mr. Loukaides that Plaintiff in this case sought damages based on GradShop.com. The Amended Complaint expressly limits the meaning of "the Acadima website" to the website www.acadima.com. In fact, Plaintiff went out of its way to define the term "the Acadima Website" in the Complaint:

> 11.    Upon information and belief, defendant Acadima is a Texas Limited Liability Company with a principal place of business located at 14241 Dallas Parkway, Suite 650, Dallas, TX 75254.  Acadima owns and operates the website that is located at https://Acadima.com, (the "Acadima Website") and offers apparel and accessories for graduations.

**Second Am. Compl. ¶ 11 (highlighting added). Moreover, Plaintiff also separately and distinctly defined a different term to use when referring to GradShop.com:**

> 12.    Upon information and belief, defendant Acadima owns and operates the website that is located at http:/www.gradshop.com (the "GradShop Website") and offers apparel and accessories for graduations.

*Id.* **at ¶ 12. Indeed, Plaintiff carefully distinguished and defined terms for each of the websites it discussed in its Second Amended Complaint:**

> 19.    Upon information at belief, defendant Acadima owns, and defendant Loukaides is the dominant and active force behind the "Gradshop Website and the following other websites: www.graduationcapandgown.com (the "Graduation Cap and Gown Website"); www.graduationapparel.com (the "Graduation Apparel Website"); www.churchgoers.com (the "Churchgoers Website"); and www.churchings.com ("the Churchings Website").

*Id.* **at ¶ 19. And finally, where Plaintiff intended to make allegations related to more than one of the websites allegedly owned or operated by either of the defendants, Plaintiffs also carefully defined a term for that as well:**

> Collectively the Acadima Website, the Gradshop Website, the Graduation Cap and Gown Website, the Graduation Apparel Website, the Churchgoers Website, and the Churchings Website are the "Defendants' Websites."

*Id.* Plaintiff cannot limit the meaning of a term in the body of the Complaint only to be permitted by the Court during trial to expand a defined term when Plaintiff uses the same term later in the Complaint. The Plaintiff's decision to selectively and consciously not include "the Gradshop Website" or "Defendants' Websites" in certain counts in the Complaint was intentional and is controlling.  Words and defined terms must have their specified meaning in a Complaint, or the adversarial process will become completely unwieldy and unjust.

Mr. Loukaides did not have notice that Plaintiff intended to pursue such claims at trial and, accordingly, it is appropriate for the Court to enter judgment as a matter of law in Mr. Loukaides' favor regarding the Gradshop Website on any count where the Gradshop Website is not expressly included.[3] *Stephen v. Hanley*, 376 Fed. Appx. 158, 159–60 (2d Cir. 2010) (Affirming district court's decision to deny plaintiffs leave to introduce a new theory of liability through jury instructions because "Plaintiffs' fourth amended complaint did not give defendants notice that plaintiffs intended to pursue a 'duty to intervene' theory of liability, and thus plaintiffs' proposed jury instruction would have introduced a new claim to the

---

[3] For the avoidance of doubt, this applies to Counts 1-5 of the Second Amended Complaint. *See*, Count 1, ¶ 135 (allegations only against "the Acadima Website and the Graduation Apparel Website"); Count 2, ¶ ¶ 150, 154 (allegations only against "The Acadima Website"); Count 3, ¶ 161 (allegations only against "The Acadima Website"); Counts 4 and 5, ¶ ¶ 172, 179 (realleging the "violations of Plaintiff's rights under the Lanham Act" which were limited to allegations against "The Acadima Website" in Counts 2 and 3).

case"). The Second Circuit in *Stephen* explained that "[i]n essence, plaintiffs were seeking leave to amend their complaint as trial was about to commence." *Id.*; see also *Hutter v. Countrywide Bank*, N.A., 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014), aff'd in part, vacated in part, remanded, 710 Fed. Appx. 25 (2d Cir. 2018) (denying motion to amend pleading after discovery because "a defendant that received notice in the complaint of the asserted claims and the grounds on which they rest 'may conduct . . . trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue.'")

At oral argument on Mr. Loukaides' original Motion for Judgment as a Matter of Law, Plaintiff relied heavily on the fact that each of the causes of action in the Amended Complaint "include a repeat and reallege paragraph." ECF No. 141 at 77:2-10. Specifically, the allegations Plaintiff claims were realleged within the causes of action, such that Gradshop.com was included in the cause of action, are 12, 19-25, 32, 33, 40-42, 44, 47, 48, 67-69, 71, 76, 92, and 94. *Id.* at 76:16-18. The problem with this argument is that these paragraphs, without more, do not sufficiently state claims related to GradShop.com because they do not cover all of the elements of each of the causes of action. For example, for its Lanham Act trade dress claim, Plaintiff alleges only that "[b]ecause the Acadima Website infringes on the GS Trade Dress, Defendants have caused damage to Plaintiff." ECF No. 31 at ¶ 154. The Amended Complaint is completely devoid of any similar allegation that the GradShop.com website also caused damage to Plaintiff and, as discussed below, damages are an essential element to a Lanham Act claim. Similarly, the

Amended Complaint fails to allege that the GradShop.com website contains elements that are the same as or substantially similar to original works belonging to Plaintiff or that the GradShop.com website infringed on any copyright belonging to Plaintiff. And because Plaintiff based its state law CUTPA and unfair competition claims on "each of Defendants' violations of Plaintiff's rights under the Lanham Act," *id.* at ¶¶ 172 and 179, the failure to sufficiently plead a Lanham Act violation is fatal to these claims as well with respect to GradShop.com.

The error in this point cannot be overstated. Without providing notice of its intention to seek damages for allegations related to GradShop.com, Plaintiff put on a confusing assortment of comparisons and evidence with the hopes of confusing the jury into believing the Mr. Loukaides was responsible for everything. Not so. This case involves, and notably does not involve, several websites and the ownership and history of each is important. The vast majority of the damages sought in this case related to GradShop.com[4], but the claims against that site were not raised before trial and, in any event, are substantially weaker than the claims related to Acadima.com. The confusion created by this approach is highlighted by Plaintiff's witness's own testimony:

```
10    A.   The original copying -- you know, we blend gradshop and

11    Acadima, and you know, that is my -- my mental confusion on

12    which website.  acadima.com, though, you know, 2015 into 2016,

13    then.
```

---

[4] S*ee generally* Argiz testimony, ECF No. 113 at 91-120 (referencing "gradshop.com" four times on direct examination and not mentioning "Acadima.com" a single time.)

In sum, the Court should overturn the jury's verdict and find in favor of Defendant Loukaides as it pertains to the domain name GradShop.com. Thereafter, because the jury was incorrectly informed that GradShop.com was in the case, a new trial will be necessary, and Plaintiff should not be permitted to make any arguments of alleged improper activity by GradShop.com.

II. **Defendant Loukaides is Entitled to Judgment on Counts 2 through 6 Because Plaintiff Neither Pled nor Presented any Evidence from Which a Reasonable Jury Could Find that the Corporate Veil Should Be Pierced to Hold Mr. Loukaides Personally Liable for the Alleged Conduct of Acadima, LLC.**

As an initial matter, with the exception of the claim for copyright infringement which Mr. Loukaides acknowledges allows for vicarious liability[5], any claim against Mr. Loukaides as an individual would require Plaintiff to pierce the corporate veil.

Plaintiff's own witnesses testified that the owner of the GradShop.com domain was Acadima, LLC:

---

[5] The jury did not reach the question of vicarious liability with respect to Plaintiff's copyright infringement claim because the jury found that Mr. Loukaides himself "copied elements of Plaintiff's Website on GradShop.com or Acadima.com." ECF No. 124, ECF pg. 8. As discussed in more detail below, *see* Section III.A *infra*, Plaintiff presented no evidence at trial that Mr. Loukaides directly copied its websites. In fact, evidence elicited through Plaintiff's witness on cross examination made clear that Frank Seviane – and not Mr. Loukaides – had complete control over Acadima, LLC, which Plaintiff acknowledges was the owner and operator of GradShop.com and Acadima.com. *See* Seviane testimony, ECF No. 140 at 35:19-367; 37:25-38:6; 38:11-15; 79:15-21.

```
 1   A.   So that is the organization which is owning the property
 2   of this SSL certificate.  So a third party is validating that
 3   Acadima, LLC owns this domain name.
 4   Q.   Okay, so let me -- and I want to write on this so I
 5   can -- so I'm specific -- I'm specifically talking about right
 6   here, where it says "Owner".  Is that what we're talking
 7   about?
 8   A.   Yes.
 9   Q.   All right.  So now let me ask you, over here, where it
10   says "Organization, Acadima, LLC", what does that mean?
11   A.   That is the organization which the SSL certificate was
12   issued to.
13   Q.   And so again, it says Acadima, LLC is the organization.
14   Common name:  www.gradshop.com.  What does that mean?
15   A.   So an analogy you can give it's the same thing as a DBA.
16   Q.   A DBA?
17   A.   Correct.
18   Q.   Okay.  According to this SSL certification, who is the
19   owner of gradshop.com?
20   A.   Acadima, LLC.
```

ECF No. 113 at 98:1-20. To be clear, when asked "who is the owner of gradshop.com?" Plaintiff's own witness offered Plaintiff's only direct evidence on this point – he answered "Acadima, LLC." *Id.* at 98:18-20; *see also* Direct Testimony of Frank Seviane, ECF No. 140 at 35:19-36:7 (explaining that Acadima LLC controlled gradshop.com and acadima.com along with other websites)[6]. This

---

[6] Later in his testimony, Mr. Seviane did testify that Mr. Loukaides owned "the domains" personally, ECF No. 140 at 40:5-12, however this testimony is not credible. Not only is it contradictory to his earlier testimony, *see*, *e.g.*, *id.* at 35:19-36:7, but it is also self-serving in that Mr. Seviane was clearly trying to avoid his own personal liability. Furthermore, this testimony is based solely off something

testimony is also consistent with all of the allegations in the Amended Complaint relate to websites allegedly owned by Acadima, LLC. *See e.g.*, ECF No. 31 at ¶¶ 11, 12, 19, 23, 28, 31, 33, 35, 37.

As such, Plaintiff's counsel's argument that it was asserting "a direct cause of action against him [Mr. Loukaides], because there's evidence of ownership of both GradShop.com and Acadima.com," ECF No. 141 at 77:14-16, was not consistent with the evidence elicited at trial. Similarly, the Court was incorrect when it stated, "that there's evidence that he [Mr. Loukaides] owned the website before Mr. Seviane's involvement in his enterprise, [and] that he was possibly the sole owner and operator of the website." *See*, *id.* at 83:3-5. There simply is no such evidence, and Plaintiff will not be able to point to any such evidence in its opposition brief. To the extent Plaintiff alleged Mr. Loukaides's ownership at all, it was only *through his ownership of Acadima, LLC.* Thus, to be held liable in his personal capacity, Plaintiff would first have to pierce the corporate veil of Acadima, LLC, which Plaintiff did not do in this case.

"Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Cohen v. Meyers*, 175 Conn. App. 519, 540‑41 (2017) (quoting *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*, 187 Conn. 544, 557,

---

Mr. Seviane allegedly saw through discovery in Mr. Loukaides's divorce case. This is complete hearsay and should be given no weight. It is illogical that that the jury could have possibly found this testimony more persuasive than Plaintiff's own employee who gave detailed, live testimony that all documentation supported that Acadima, LLC was the owner of both GradShop.com and Acadima.com.

447 A.2d 406 (1982)). The instrumentality rule and the identity rule are used by courts to determine whether it is proper to pierce the corporate veil. *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 232 (2010). The instrumentality rule requires proof of three elements: "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Id.*

The identity rule, on the other hand, has been stated as follows: "If the plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." *Id.*

It is undisputed that all of the allegations in the Second Amended Complaint relate to websites allegedly owned by Acadima, LLC. *See*, *e.g.*, Second Am. Compl. ¶¶ 11, 12, 19, 23, 28, 31, 33, 35, 37. Indeed, Plaintiff already has secured a default against Acadima, LLC based on the allegations in the Second Amended Complaint.

12

Nevertheless, Plaintiff seeks to hold Mr. Loukaides personally responsible but has blatantly failed to plead, let alone prove, any theory of veil piercing as required to hold Mr. Loukaides responsible for the actions of Acadima, LLC. Although a plaintiff need not pierce the corporate veil to hold an individual liable under the Copyright Act, the same is not true for the remaining counts. *See e.g.*, *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, LLC, 15 CIV. 8459 (LGS), 2018 WL 3364388, at *3 (S.D.N.Y. July 9, 2018) (requiring plaintiff to pierce the corporate veil for Lanham Act Claims); *Jannetty Racing Enterprises, Inc. v. Site Dev. Techs., LLC*, CV054004820S, 2006 WL 410973, at *5 (Conn. Super. Ct. Jan. 31, 2006) (striking CUTPA claim against individual where Plaintiff failed to adequately allege a "piercing the corporate veil count[]" against the individual defendant); *Cohen v. Meyers*, 175 Conn. App. 519, 543 (2017) (affirming trial court's holding that Plaintiff failed to establish facts to pierce the corporate veil and hold a company's president individually liable for numerous claims, including a CUTPA claim and unjust enrichment claim).

Plaintiff did not (and cannot) produce any evidence at trial that Mr. Loukaides had complete "dominion and control" over Acadima, LLC or any other company allegedly involved in the activity complained of by Plaintiff in this case. Indeed, the only evidence of control that came out in Plaintiff's case was that the current owner of Acadima, LLC — Frank Seviane — was solely in control of Acadima, LLC and that Mr. Loukaides had nearly zero involvement in the company for the short five months of his ownership of the company:

13

```
15    "Q.  And what did Alex do?"

16          Mr. Seviane:  "Alex?  Not much.  Alex, as far as

17    Acadima's LLC (sic) role or function, was that of customer

18    service and fulfillment.  So, with -- related to those two

19    things, nothing really.  Maybe took a customer phone call one

20    time just to see how it went.  But with respect to the LLC,

21    nothing.
```

Seviane testimony, ECF No. 140 at 79:15-21; *see also id.* at 159:24-160:1 (Acadima, LLC formed in October 2015); 79:22-80:1 (Acadima, LLC sold to Mr. Seviane in March 2016).

With respect to GradShop.com, for the reasons discussed above that website is not relevant in this case, but, in any event, Plaintiff similarly offered no evidence indicating Mr. Loukaides had complete "dominion and control" over that website either. Accordingly, Plaintiff has not presented any evidence from which a reasonable juror could pierce the corporate veil under the "instrumentality rule."

Similarly, Plaintiff has failed to elicit any evidence in its case in chief indicating that there was such a "unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice." *See Naples*, 295 Conn. 214, 232.  Indeed, from Mr. Seviane's testimony, it is undisputed that Mr. Seviane ran and operated Acadima, LLC and that Acadima, LLC was sold to Mr. Seviane.  ECF No. 140 at 35:19-367; 37:25-38:6; 38:11-15; 79:15-21.  It is possible that Plaintiff could have made a claim to pierce the corporate veil

as to Mr. Seviane, but there has been no evidence that the same should be true against Mr. Loukaides.  Because Plaintiff failed to present any evidence whatsoever related to piercing the corporate veil as to Mr. Loukaides, and because Plaintiff did not assert a veil piercing claim, the Court should grant judgment as a matter of law in Mr. Loukaides' favor on Counts 2, 4, 5, and 6 of the Amended Complaint and overturn the jury verdict.

III.    **The Court Should Grant Judgment on all Counts in Favor of Mr. Loukaides Because Plaintiff Failed to Present Sufficient Evidence on All Elements of All Causes of Action.**

Plaintiff prevailed on five of the six causes of action in this case.  Because the evidence presented by Plaintiff was insufficient as to at least one element in each of the causes of action, the Court should grant judgment in favor of Mr. Loukaides, or in the alternative should order a new trial.

A.    **Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Copyright Infringement Claim (Count I).**

Pursuant to Rule 50(a), Alex Loukaides respectfully renews his motion for judgment as a matter of law that he is not liable for copyright infringement.

The Copyright Act grants copyright protection for "original works of authorship fixed in any tangible medium of expression," including "pictoral, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). The "sine qua non of copyright is originality," and all works must be original in order to receive copyright protection. *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). The Supreme Court has recognized that in order to be "original," the work in question must have been "independently created by the author (as opposed to copied from other works)," and it must "possess [ ] at least some

15

minimal degree of creativity." *Id.* "While certain elements of a web site would clearly fall within the subject matter of copyright, including the text of the page, software code, and certain creative graphical elements, the elements that create the look and feel of a web site may fall completely outside the subject matter of the Copyright Act." *Conference Archives, Inc. v. Sound Images, Inc.*, 2010 WL 1626072, at *12 (W.D. Pa. Mar. 31, 2010) (citations omitted).

Indeed, in a case similar to this where one promotional award company sued another for copyright and trade dress infringement based on its website, a district court in this Circuit held that the "compilation of elements" on a website is "unprotectable" under the Copyright Act. *Crown Awards, Inc. v. Trophydepot*, 2003 WL 22208409, at *13 (E.D.N.Y. Sept. 3, 2003). Specifically, the court in *Crown Awards*, held that "[t]he mere use of a three frame design, the use of a small picture of the catalogue on the upper right side and the use of promotional language stating 'SAME DAY SHIPPING [-] In Stock For Immediate Delivery' are insufficient to create an 'original' compilation of elements that forms the basis for copyright protection." *Id.*

Plaintiff's evidence presented in this case, just like the allegations in the plaintiffs' complaints in *Crown Awards* and *Conference Archives*, do not support the jury's finding "that Defendant Loukaides copied elements of Plaintiff's Website on GradShop.com or Acadima.com." ECF No. 124, ECF pg. 8. Importantly, the jury did not find that Mr. Loukaides was vicariously liable for copyright infringement. Instead, the jury found that Mr. Loukaides himself "copied elements of Plaintiff's Website." *Id.* Absolutely no evidence of this was presented by Plaintiff.

Furthermore, even if Plaintiff did show that Mr. Loukaides personally "copied elements of Plaintiff's website," the elements on which Plaintiff presented evidence are not protectable under the law, and the few instances of alleged direct copying of words are limited to Acadima.com. *See*, *e.g.* Albanese testimony, ECF No. 113 at 87:10-88:2 (Mr. Alabanese explaining that for Acadima.com (and not for GradShop.com) he "took screenshots of pretty much every page that was a direct copy of graduationsolutions.com."); 111:3-6 (Mr. Albanese testifying that Acadima.com copied Plaintiff's website's claim that they outfit over 500,000 graduates a year); 111:12-112:22 (Mr. Albanese testifying that a portion of the Acadima.com website includes the same typographical error as one found on Plaintiff's website); 133:4-135:17 (Mr. Albanese reading a paragraph of content from Plaintiff's website and Acadima.com and testifying that there are "substantial similarities"). Indeed, counsel for Mr. Loukaides has scoured the record and not found any similar evidence of any verbatim or near verbatim copying of language on the GradShop.com website.

Furthermore, although the jury did not reach the issue of whether Mr. Loukaides was vicariously liable for copyright infringement, it was erroneous for the Court to submit this case to the jury on that issue. An individual can only be held personally liable for copyright infringement of a corporation if the plaintiff proves the individual personally participated in the acts constituting infringement by the corporate defendant. *Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F. Supp. 895, 903–04 (E.D.N.Y. 1977), aff'd, 578 F.2d 1369 (2d Cir. 1978); *see also Graham Hanson*, 2011 WL 744801, at *5; *Lechner*, 2005 WL 612814, at *6. While

some cases have noted that it is not necessary to pierce the corporate veil where an individual personally participates in the infringing activity, other cases have equated this to a veil-piercing analysis. *See e.g.*, *NetTech Sols., L.L.C. v. ZipPark.com*, 01 CIV. 2683 (SAS), 2001 WL 1111966, at *12 (S.D.N.Y. Sept. 20, 2001) ("A plaintiff may pierce the corporate veil in an action for copyright infringement and unfair competition where it is established that the corporate officer is a 'moving, active conscious force behind [the defendant corporation's] infringement.'").

"One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise the right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005); *see also Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (holding that vicarious infringement requires that defendant possess the right and ability to supervise the infringing conduct); *Matthew Bender & Co., Inc. v. W. Pub. Co.*, 158 F.3d 693, 707 n.22 (2d Cir. 1998) (stating that "plaintiffs cannot be subject to liability for vicarious infringement because they cannot control the conduct of the direct infringer").

According to the testimony offered by Plaintiff at trial, as well as its Second Amended Complaint, Acadima LLC (and not Alex Loukaides) owns and operates Acadima.com and GraduationApparel.com.[7] *See* Section II, *supra* (discussing website ownership and control with reference to piercing the corporate veil);

---

[7] This same argument holds true for all websites referenced in the Second Amended Complaint. *See* e.g. ECF No. 31 at ¶¶ 12, 23, 31, 33, 35, 37.

Second Am. Compl., ECF No. 31 at ¶¶ 11, 28. And, as the Court is aware, Plaintiff has a default judgment against Acadima, LLC, the alleged owner of all of the allegedly infringing sites. Thus, in order for the jury to find Mr. Loukaides personally liable for such infringement, Plaintiff would have had to present evidence that Mr. Loukaides "personally participated in the acts constituting infringement," *Graham Hanson Design LLC v. 511 9th LLC*, 10 CIV. 5493 KMW, 2011 WL 744801, at *5 (S.D.N.Y. Feb. 24, 2011) (quoting *Lechner v. Marco–Domo Internationales Interieur GmbH*, No. 03 Civ. 5664, 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005)). It did not, and no such evidence exists.

Plaintiff failed to present sufficient evidence to show that Mr. Loukaides personally participated in any acts allegedly constituting infringement by Acadima, LLC, or that he had the requisite level of control to be held vicariously or contributorily liable for the actions of Frank Seviane and Acadima, LLC. Not only did Plaintiff fail to produce evidence that Mr. Loukaides "personally participated in the acts constituting infringement," *Graham Hanson Design*, 2011 WL 744801, at *5, Plaintiff presented evidence directly to the contrary:

```
15   "Q.  And what did Alex do?"
16          Mr. Seviane:  "Alex?  Not much.  Alex, as far as
17   Acadima's LLC (sic) role or function, was that of customer
18   service and fulfillment.  So, with -- related to those two
19   things, nothing really.  Maybe took a customer phone call one
20   time just to see how it went.  But with respect to the LLC,
21   nothing.
```

Seviane testimony, ECF No. 140 at 79:15-21.

The testimony by Kristoff Albanese was simply that the Acadima.com website and certain other sites, in his non-expert opinion, copied elements of Plaintiff's website. *See generally*, ECF No. 113 at 49-155. He then testified that based on a series of third-party services, namely WhoIs and SSLShopper, he believed there was some connection between those sites and Mr. Loukaides. *See*, *e.g. id.* at 86:4-12 and 99:12-17 (noting that "who-is information" showed websites as registered to Mr. Loukaides, and it also showed Mr. Loukaides as the "administrative contact"). Importantly, Mr. Albanese also testified that WhoIs registrant information does not show ownership, and in fact can be used to mask ownership. *Id.* at 95:7-9 (noting that "you can register things on behalf of other companies") (emphasis added). Neither Mr. Albanese nor any other witness testified that Mr. Loukaides personally participated in this alleged copying. *See generally*, ECF No. 113 Pgs. 49-162. In fact, there is no reliable evidence whatsoever that Mr. Loukaides ever had any control over the two websites in question, and there is no reliable evidence whatsoever that Mr. Loukaides personally participated in any sort of copying activity. The Plaintiff simply failed to meet its burden on this issue, and this case should not have been submitted to the jury on any of the claims in the case.

Moreover, the testimony of Frank Seviane made clear that, at all times, even before he ultimately purchased Acadima LLC from Mr. Loukaides, he — Frank Seviane — was completely running Acadima LLC. *See* ECF No. 140 at 37:25-38:6; 78:20-22 (Mr. Seviane explaining that he did everything for Acadima, LLC and referring to himself as "chief cook and bottle washer." Mr. Seviane also made clear

that Mr. Loukaides had no operational role in Acadima LLC. *See Id.* at 79:15-21. There is no evidence whatsoever against Mr. Loukaides on this point, and the Plaintiff has embarked on a misguided, baseless crusade against Mr. Loukaides where all of the evidence points directly to Mr. Seviane.

Plaintiff failed to present any, let alone sufficient, evidence such that a reasonable jury could find, by a preponderance of the evidence, that Mr. Loukaides personally, vicariously, or contributorily infringed Plaintiff's copyrights with respect to Plaintiff's website.   This is particularly the case with respect to GradShop.com as Plaintiff did not present any evidence of copying. Therefore, judgment of law should be entered in Mr. Loukaides' favor on its Copyright Infringement claim (Count I).

       **B.**    **Plaintiff's Trade Dress Infringement Claim (Count II) is Preempted by the Copyright Act, and Plaintiff Failed to Present Evidence of Specific Trade Dress Elements that would Escape Preemption.**

As an initial matter, Plaintiff's Lanham Act claim is preempted to the extent a remedy is available under the Copyright Act. See 17 U.S.C. § 301(a). While on its face § 301 does not expressly limit remedies under other federal statutes, "courts have long limited application of the Lanham Act so as not to encroach on [federal] copyright interests." *Conference Archives, Inc. v. Sound Images, Inc.*, 2010 WL 1626072, at *12 (W.D. Pa. Mar. 31, 2010) (quoting 1 Nimmer on Copyright § 1.01[D][2] at 1‑83); *see also*, *e.g. Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34, (2003). Thus, where copyright laws provide an adequate remedy, any remedy under the Lanham Act is preempted. See *Dastar Corp.*, 539 U.S. 23, 34 ("Thus, in construing the Lanham Act, we have been careful to caution against

misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright."); *see also Conference Archives*, 2010 WL 1626072, at *12 ("Claims for copyright infringement under the Copyright Act, and claims for Trade Dress Infringement under the Lanham Act are mutually exclusive.  A Plaintiff cannot receive a remedy for both. If an adequate remedy exists for the Copyright Act, no remedy lies for the Lanham Act claim.").

Moreover, "[i]f a work was granted copyright registration, this serves as strong evidence that the subject matter falls within the Copyright Act, and cannot be protected by trade dress." *Id.* (citing 2 Nimmer on Copyright § 7.16 (discussing the significance of copyright registration). In order for a trade dress claim based on a website to withstand preemption, especially where the website has been granted copyright registration, "the trade dress elements must be specifically identified and painstakingly selected." *Id.* (quoting J. Scott Anderson, PAINSTAKING SEMANTICS: SELECTING WEBSITE TRADE DRESS ELEMENTS TO SURVIVE A COPYRIGHT, 7 John Marshall Review Intellectual Property Law Review 97, 111 (2007)).

Here, Plaintiff offered testimony at trial that its website, graduationsource.com, was granted copyright registration as early as 2012 or 2014. On the first day of trial, Kristoff Albanese testified that that Plaintiff was issued its first copyright for its website in 2014:

```
14   Q.   When was the copyright?
15   A.   We issued our first copyright of graduationsource.com, I
16   believe, in 2014.  I don't know the approximate date.
17   Q.   Copyright of what?  What copyright are you talking about?
18   A.   Our website.
```

**Testimony of Kristoff Albanese, ECF No. 113 at 159:14-18.  Plaintiff's CEO, Matthew Gordon, later testified that Plaintiff had outside counsel "copyright[] the -- coding and the -- all the content in 2012:**

```
10   Q.   Are you aware of whether Graduation Solutions has done
11   anything to protect its interests in the content, design, and
12   layout of the website?
13   A.   Yes.
14   Q.   And what has it done?
15   A.   We -- we copyrighted the -- the coding and the -- all the
16   content in 2012.
17   Q.   In 2012?
18   A.   Yes.
19   Q.   Did you do that yourself, or did you hire outside
20   counsel?
21   A.   Outside counsel.
```

To the extent any of Plaintiff's claims are based on its registered copyrights, Plaintiff cannot recovery for any alleged infringement of those elements under the Lanham Act. Further, because Plaintiff failed to present evidence specifically identifying any painstakingly selecting elements that it alleged were protectable as trade dress, as opposed to protected by copyright, Plaintiff's claims should not have been submitted to the jury and the jury's verdict for Lanham Act violations should be overturned as preempted by the Plaintiff's copyright claims.

**C.    Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Trade Dress Infringement Claim (Count II).**

If the Court somehow does not find that the Lanham Act trade dress claim is preempted, then pursuant to Rule 50(a), Alex Loukaides respectfully renews his motion for judgment as a matter of law that he is not liable for trade dress infringement because Plaintiff failed to meet its burden on all elements of its trade dress infringement claim.

To prevail on a claim of trade dress infringement based on a website allegedly copying the "look and feel" of another website, a plaintiff must show "(1) that its trade dress is inherently distinctive or has acquired secondary meaning; (2) that its trade dress is nonfunctional; and (3) that defendant's product creates a likelihood of consumer confusion." *Ingrid & Isabel*, 70 F. Supp. 3d 1105, 1136-37 (N.D. Cal., 2014). Plaintiff presented no evidence on the first element of a "look and feel" trade dress infringement claim.   Plaintiff offered evidence specifically claiming its trade dress is functional, completely negating the second element.  *See* ECF No. 113 at 70:19-71:6; 93:1-6; 188:8-17 (testimony by Mr. Albanese and Mr. Gordon, discussed more thoroughly below, explaining the functionality of allegedly infringed website elements).  And, the limited evidence presented on the third element was insufficient for a reasonable jury to conclude that Plaintiff proved a likelihood of confusion *based on the "look and feel"* by a preponderance of the evidence.  *See generally*, Kovel testimony, ECF No. 113 at 162-180 (testifying generally that some purchasers from other websites would call Plaintiff's customer support, but not testifying that this confusion was caused by infringing any protectable elements of Plaintiff's website).

1. **Plaintiff presented no evidence that the "look and feel" of Plaintiff's website is "inherently distinctive" or that its website has acquired a secondary meaning.**

"A mark or dress is distinctive when it identifies the particular source of the product or distinguishes it from other products." *Id.* at 1137. "Correspondingly, a product's trademark or trade dress acquires a secondary meaning when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself." The Supreme Court has held that "design, like color is not inherently distinctive." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). Accordingly, the Plaintiff here could not prevail on its trade dress infringement claim based solely on the design, layout, or color of its website. Such "design" aspects are simply not inherently distinctive. Thus, in order to prevail on this claim, Plaintiff would have had to prove by a preponderance of the evidence that its website's look and feel is distinctive through a secondary meaning it has acquired. It did not and no such evidence exists.

With regard to a website, "[t]he 'true test' for distinctiveness is whether the look and feel causes the public to associate the look and feel of the web site with the Plaintiff's web site. *Conference Archives* 2010 WL 1626072, at *6 (citing *SG Services Inc. v. God's Girls Inc.*, 2007 WL 2315437, at *10 (C.D. Cal. May 9, 2007). One commentator has written that in order for a website's look and feel to receive protection under the Lanham Act, the design must be so "arbitrary that 'one can assume without proof that [the trade dress] automatically will be perceived . . . as an identifier of the source of the product.'" Lisa M. Byerly, Look And Feel Protection Of Web Site User Interfaces; Copyright Or Trade Dress?, 14 Santa Clara Computer & High Tech. L.J. 221, 253 (1998).

Plaintiff offered no evidence of distinctiveness, either inherent or through an acquired secondary meaning. Mr. Albanese did not offer any testimony to that regarding distinctiveness of look and feel or secondary meaning. Instead, Mr. Albanese only testified to the creation of the website and that he believes it had been copied by the Defendants. *See generally*, ECF No. 113 Pgs. 49-162. He testified that Graduation Solutions spent a lot of money developing its site and testing its features, *see*, *e.g.*, *id.* at 110:5-12[8], but he never testified that any of this resulted in a site that was inherently distinct from other graduation apparel websites. He testified that that there were unique elements of the website such as "widgets" being on the left-hand side, and promotions offered within these widgets, *see id.* at 117:9-16, but he never testified that these elements identify GraduationSource.com as the particular source of goods or that these elements distinguish this website from other websites. And, in any event, as stated above, even if there was such testimony, the Supreme Court has held that design is not inherently distinctive and so these design elements would be insufficient to support a jury finding for Plaintiff on the trade dress claim. *Wal–Mart Stores*, 529 U.S. at 212 ("design, like color is not inherently distinctive.").

---

[8] This testimony is exemplary of the overarching issues in Plaintiff's case, *i.e.* trying to protect that which is not protectable. Mr. Albanese discusses testing a grid on a product purchase page that "allows for multiple sizes to be ordered at a single time." *First*, this grid has absolutely no secondary meaning. Even Mr. Albanese did not go so far as to testify that customers would see this grid and instantly know they must be shopping on Plaintiff's website. *Second*, this grid is completely functional. Without the grid, the website cannot function in the same way and customer's cannot place orders in the same way. The benefit provided by this element is the utility it offers. *Third*, and finally, to the extent this could be protectable as copyrighted code, for the reasons discussed earlier, this claim under the Lanham Act is preempted.

With regard to secondary meaning, trade dress acquires secondary meaning when the "purchasing public associates the [alleged trade dress] with a single producer or source rather than with the product itself." *Ingrid & Isabel*, 70 F. Supp. 3d at 1136-37.  Plaintiff offered no evidence in this case that online purchasers of caps and gowns associate any protectable elements of trade dress within Plaintiff's website with Plaintiff itself as supplier of those goods. Indeed, no evidence was presented that Plaintiff's website is so distinct that when consumers see it, without seeing the name of the site, they recognize it as being the site of GraduationSource.com.

Here, however, Plaintiff presented evidence through Mr. Albanese that when Graduation Solutions felt its website was being copied it reacted by changing its website. ECF No. 113 at 110:18-20. Specifically, at one point during his testimony, Mr. Albanese was testifying about a side-by-side comparison that was being displayed and he explained that part of the reason there were noticeable visual differences between the sites is because Graduation Solutions made changes to its design when it believed it was being copied:

```
13   Q.   Do you notice anything else, any other similarities?
14   A.   Similarities? I mean, it's -- you've got this size chart
15   here which, you know, we have above our grid.  They have their
16   little size chart here.  Similarities here, the navigation,
17   again, this is similar to our website at the given time in
18   2011.  But from these two screenshots, not many similarities
19   because of the time we produced the iteration on the left to
20   move away from the copy.
```

*Id.* at 110:13-20.  This testimony is completely contrary to a claim that Plaintiff's websites had acquired a secondary meaning as required to prevail on a trade dress infringement claim.  *See FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, 14-CV-3685 SJF SIL, 2015 WL 4162757, at *10 (E.D.N.Y. July 8, 2015) (Plaintiff's allegation that "look and feel" of its website serves to identify it as the source of its services is belied by the fact that Plaintiff has other websites that do not contain the features described as protectable trade dress).  If it had acquired a secondary meaning, Plaintiff would not have been willing or able to change the look-and-feel of its website without risking causing its own consumer confusion. In other words, the fact that a later iteration of Plaintiff's website omitted design elements that it now contends make its website distinct shows that those elements were not distinct in the first place and that the website's look and feel did not have secondary meaning. *See id*.

Finally, the only evidence of confusion Plaintiff presented was the testimony of Joann Kovel. *See generally*, ECF No. 113 at 162-180.  Ms. Kovel testified generally that from 2014 to 2017 she had seen a trend of an increasing number of purchasers from other websites calling Plaintiff's customer support regarding orders placed GradShop.com. *See id.* at 170:1-4; 173:4-14.  Notably, Ms. Kovel did not testify that she had any knowledge that this perceived confusion was caused by infringing any protectable elements of Plaintiff's website.  Plaintiff utterly failed to identify a specific protectable element of its website and then causally connect that element with any actual or likely consumer confusion. This failure is fatal to Plaintiff's Lanham Act Claim.

28

Moreover, Ms. Kovel, the only witness who testified regarding confusion, only testified as to GradShop.com. *See* ECF No. 113 at 170:1-4.  But, as discussed above, Plaintiff did not raise a Lanham Act claim related to GradShop.com, *see* Section I *supra*, and so any analysis of Plaintiff's Lanham Act claim is necessarily limited to Acadima.com.  To the extent the Court somehow finds that any portion of Plaintiff's Lanham Act claim related to Acadima.com is not preempted by the Copyright Act, Plaintiff would have had to show specifically identified, protectable elements caused actual consumer confusion between Acadima.com and Plaintiff's website. *See Ingrid & Isabel*, 70 F. Supp. 3d at 1136-37 (consumer confusion is an essential element of a website trade dress claim under the Lanham Act).  And there was absolutely zero evidence presented to the jury related to consumer confusion between Academia.com and Plaintiff's website.  *See generally* Kovel testimony, ECF No. 113 at 162-180.  Accordingly, Plaintiff's failure to offer any evidence or testimony that consumers confused specific elements of the Acadima website for Plaintiff's website based on confusingly similar "look and feel" is fatal to Plaintiff's claim for trade dress infringement as to Acadima.com.

Accordingly, Plaintiff did not present sufficient evidence to demonstrate, by a preponderance of the evidence, that Mr. Loukaides personally infringed on Plaintiff's trade dress in the form of Plaintiff's website's look and feel, and therefore judgment as a matter of law should be entered in favor of Mr. Loukaides on the trade dress infringement claim.

       2. **Plaintiff presented evidence specifically claiming its trade dress is functional.**

"Trade dress protection extends only to design features that are nonfunctional." *Ingrid & Isabel*, 70 F. Supp. 3d at 1137. "A product feature is functional, and cannot serve as a trademark [or trade dress], if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001).

Here, Plaintiff presented evidence that many of the elements of its website that it believes are entitled to trade dress protection are functional in that they are intentionally and carefully designed to help search engine ranking and to influence consumer engagement and interaction with the site. *See* ECF No. 113 at 70:19-71:6 (explaining that certain elements of the webpage are "extremely important . . . for when ranking the pages [on Google]"). Indeed, Mr. Albanese testified in great detail that even seemingly minor design elements are extensively tested at great expense in order to offer enhanced functionality of the site. *Id.* at 93:1-6; *see also*, testimony of Matthew Gordon at *id.* at 188:8-17 (explaining that a design element "like a button that's off to the right-hand side, I mean, that literally could be hundreds of thousands of dollars of research on why that button is there and why one ecommerce site is successful and another one is not."). As just one example of this, Mr. Albanese testified that a small icon next to the words "in stock and ready to ship" was functional in that it increased the number of clicks on that "in stock and ready to ship" link. *Id.* at 93:1-20.  Mr. Albanese and Mr. Gordan both made clear that they believe the design elements allegedly copied by Defendants affected the quality of the website and, accordingly, under Second Circuit precedent, that makes those design elements functional and not protectable as trade dress.

Moreover, courts have held that "the fact that a trade dress is composed entirely of commonly used or functional elements might suggest that the dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea." *FC Online Mktg.*, 2015 WL 4162757, at *27. Here, the elements that Plaintiff alleges to be protected trade dress amount to nothing more than the layout of commonly used, functional elements on an ecommerce website and the website's color scheme. The fact that the elements offer similar promotions or are, in the case of Acadima.com, in the same general location, is of no consequence. The generic layout of a website and the sales promotions offered within simply are not protectable trade-dress in this case.

Plaintiff did not present sufficient evidence to demonstrate, by a preponderance of the evidence, that Mr. Loukaides infringed on Plaintiff's trade dress because the design elements allegedly infringed are functional.  Therefore, for this independent reason, the Court should grant judgment as a matter of law in favor of Mr. Loukaides on the trade dress infringement claim.

D.      **Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Connecticut Unfair Trade Practices Act Claim or Common Law Unfair Competition Claim Counts IV and V).**

In its Second Amended Complaint, Plaintiff alleged that "[e]ach of Defendants' violations of Plaintiff's rights under the Lanham Act constitutes violations of Plaintiff's rights under the Connecticut Unfair Trade Practices Act," and "[e]ach of Defendants' violations of Plaintiff's rights under the Lanham Act constitutes violations of Plaintiff's rights under Connecticut common law of unfair competition." ECF No. 31 at ¶¶ 172, 179. Accordingly, for the same reasons Plaintiff

failed to elicit sufficient evidence regarding its Lanham Act claims, Plaintiff also failed to elicit sufficient evidence with respect to its Connecticut Unfair Trade Practices claim and common law unfair competition claim.   Similarly, just as Plaintiff's Lanham Act claim is preempted by the Copyright Act, *see* Section III.B *supra*, Plaintiff's Copyright Act claim preempts Plaintiff's CUTPA claim as well. *Frontier Group, Inc. v. Northwest Drafting & Design, Inc.*, 493 F. Supp. 2d 291, 301 (D. Conn. 2007).  Judgment as a matter of law should enter in Mr. Loukaides' favor on the CUTPA claim and the unfair competition claim.

        **E.**    **Plaintiff Failed to Present a Legally Sufficient Basis to Find that Plaintiff Met Its Burden on All Elements of Its Unjust Enrichment Claim (Count VI).**

Pursuant to Rule 50(a), Alex Loukaides respectfully renews his motion for judgment as a matter of law that he is not liable for unjust enrichment.

In its Second Amended Complaint, Plaintiff brought a claim for unjust enrichment based on Defendants' creation and operation of websites "in a manner that looks and feels the same as Plaintiff's Website." ECF No. 31 at ¶ 184. But a claim for unjust enrichment requires that the plaintiff had given or provided something of value to the defendant that requires compensation in return. *See e.g.*, *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006) ("Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract"). To that end, "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id.*

Furthermore, the Connecticut Civil Jury Instructions provide the following:

> Any damages you award on the plaintiff's unjust enrichment claim are determined by the value of the benefit _the plaintiff provided_ to the defendant. In other words, the amount of unjust enrichment is the value to the defendant of _property received or services rendered_ to the defendant. The plaintiff must prove the fair and reasonable value of the _property received or services rendered_ to the defendant. That value should be measured in terms of the benefit the defendant received by not providing proper compensation to the plaintiff for the _property received or services rendered_.

Connecticut Civil Jury Instructions, 4.5-13 (emphasis supplied). Moreover, in _Vertex_, the Supreme Court of Connecticut found harmful error in the trial court refusing to give the following instruction regarding unjust enrichment:

> To find for the plaintiff under a theory of unjust enrichment or quantum meruit, you must find that _the plaintiff has provided services to the defendant_, that the defendant benefited from these services, that the defendant unjustly did not pay for that benefit and that the defendant's failure to pay was to the plaintiff's detriment.

_Vertex_, 278 Conn. 557, 571 (2006) (emphasis supplied). Clearly, a claim for unjust enrichment requires first that Plaintiff provide something of value to the Defendant. Where, as is the case here, Plaintiff alleges that it did not provide anything to the Defendant but instead the Defendant allegedly _took_ something of value, there are other civil remedies offering protection to would-be Plaintiffs. And where the thing of value allegedly taken is intellectual property, as is the case here, there are copyright and/or trademark claims that plaintiffs can raise (as Plaintiff has done here).

Plaintiff did not offer any evidence that it provided any property or services to Mr. Loukaides for which it has not been fairly compensated and, accordingly,

Plaintiff did not adduce sufficient evidence to demonstrate that Mr. Loukaides should have been held liable for unjust enrichment and therefore judgment as a matter of law should enter in his favor on the unjust enrichment claim

Moreover, as the Civil Jury Instructions instruct, "[t]he plaintiff *must prove* the fair and reasonable value of the property received or services rendered to the defendant." Connecticut Civil Jury Instructions, 4.5-13 (emphasis supplied).

To the extent an unjust enrichment claim otherwise would have been allowed to proceed in this case, judgment as a matter of law should also be entered on this claim because Plaintiff presented no evidence regarding what a fair and reasonable value of its allegedly infringed property would be. Mr. Albanese and Mr. Gordon only offered an imprecise estimate that Plaintiff spent a substantial amount of time and money on web design. *See*, *e.g.*, ECF No. 113 at 78:13-16; 110:5-12; 188:10-17. Plaintiff's damages expert did not provide any testimony related to the fair and reasonable value of the intellectual property allegedly infringed. This does not come close to proving a "fair and reasonable value" by a preponderance of the evidence. Plaintiff offered no evidence identifying each allegedly copied element or quantifying the value of each such element. Accordingly, Plaintiff failed to adduce sufficient evidence for a damages calculation on this count and judgment on this count should be entered in favor or Mr. Loukaides.

### CONCLUSION

Plaintiff did not put forth any evidence showing that Mr. Loukaides exercised any control over the websites in question during the relevant time period. In fact, the only evidence regarding "control" that was elicited during Plaintiff's case indicated that Mr. Seviane, and not Mr. Loukaides, was in control of Acadima LLC

at all times. This lack of control precludes Plaintiff from piercing the corporate veil to recover from Mr. Loukaides individually (especially since no theory of veil piercing was actually pled). Moreover, any claim (for liability or damages) related to GradShop.com is precluded because Plaintiff did not provide adequate notice that it was seeking damages based on these websites. Finally, even if the Court allowed Plaintiff to attempt to pierce the corporate veil where no claim was ever asserted or pled, and even if GradShop.com were included (incorrectly) in the claims for relief, Plaintiff failed to present sufficient evidence on one or more essential elements in each of its claims. Accordingly, Judgment as a Matter of Law in Mr. Loukaides' favor on Count I, II, IV, V and VI in the case is appropriate for the reasons stated herein.

WHEREFORE, Defendant Loukaides respectfully requests that the Court grant this Motion and enter Judgment as a Matter of Law in his favor on all counts.

Dated: August 5, 2019                          Respectfully submitted.

                                               DOWD BENNETT LLP

                                               By:  Adam J. Simon
                                                   Matthew E. Johnson, (phv10179)
                                                   Adam J. Simon, (phv10180)
                                                   7733 Forsyth Blvd., Suite 1900
                                                   St. Louis, Missouri 63105
                                                   Telephone: (314) 889-7300
                                                   Facsimile:  (314) 863-2111
                                                   mjohnson@dowdbennett.com
                                                   asimon@dowdbennett.com

                                                   Jonathan M. Shapiro (ct24075)
                                                   Shapiro Law Offices, LLC
                                                   32 Washington Street
                                                   Middletown, Connecticut 06457

Telephone:   (860) 347-3325
Facsimile:   (860) 347-3974
jshapiro@shapirolawofficesct.com

*Attorneys for Defendant Alexander Loukaides*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2019, a copy of the foregoing Renewed Motion for Judgment as a Matter of Law or Alternatively for a New Trial Pursuant to F.R.C.P. 50 was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Adam J. Simon
Adam J. Simon (phv10180)
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone:   (314) 889-7300
Facsimile:   (314) 863-2111
asimon@dowdbennett.com

36